IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ASSOCIATION OF ADMINISTRATIVE LAW JUDGES, INTERNATIONAL FEDERATION OF PROFESSIONAL AND TECHNICAL ENGINEERS, AFL-CIO,<br>    6218 Georgia Avenue, NW, Suite 1-447,<br>    Washington, DC 20011, Plaintiff,<br><br>    v.<br><br>FEDERAL SERVICE IMPASSES PANEL,<br>    1400 K Street, NW,<br>    Washington, DC 20424,<br><br>MARK ANTHONY CARTER, in his official capacity as Chairman of the Federal Service Impasses Panel,<br>    1400 K Street, NW,<br>    Washington, DC 20424, Defendants. | Case No. 20-1026<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

### INTRODUCTION

Under the Constitution's Appointments Clause, "Officers of the United States" may be appointed by the President only "by and with the Advice and Consent of the Senate." The members of the Federal Service Impasses Panel are officers of the United States appointed by the President. Yet not one of the Panel's ten members have been confirmed by the Senate. Despite this serious constitutional defect, the Panel is wielding substantial government power: It is asserting jurisdiction over federal labor unions, issuing final orders that are purportedly binding on those unions, and imposing long-term contract provisions on the unions against their will—including restrictions that go even further than those requested by employers. And the Panel's unconstitutional exercise of these broad governmental powers is more egregious still because, unlike most federal agencies, its actions are unchecked—the merits of the Panel's actions generally are not subject to any further administrative or judicial review.

There are approximately 1.2 million federal employees organized into 2,200 bargaining units, all potentially subject to the Panel's unchecked and unconstitutional exercise of federal-government power. Here, the Panel has purported to assert the power to issue decisions binding on one of those federal-sector unions: the Association of Administrative Law Judges. Because the Panel lacks authority to do so, the Association brings this constitutional challenge. The Association asks this Court to issue a declaration that the Panel is unconstitutionally composed and that its actions are null and void and an injunction to prevent any of the Panel's unconstitutional actions from taking effect.

## **PARTIES**

1. The Association of Administrative Law Judges was founded in 1974 as a professional association of federal administrative law judges and has served since 1999 as the exclusive bargaining unit for non-management administrative law judges at the Social Security Administration. Since its inception, AALJ has enjoyed a robust membership of judges dedicated to defending judicial independence and due process in administrative hearings and advancing the professionalism of administrative law judges. In 1999, AALJ was certified as a local of the International Federation of Professional and Technical Engineers, AFL-CIO, joining other judges and professional employees to advocate for its members. Today, AALJ represents approximately 1,200 administrative law judges across 163 offices who preside over Social Security disability hearings throughout the United States.

2. The Federal Service Impasses Panel is a federal entity tasked with resolving bargaining impasses between federal agencies and unions representing federal employees.

3. Mark Anthony Carter is the Chairman of the Federal Service Impasses Panel.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 2201 because it arises under the Constitution of the United States and seeks appropriate declaratory and injunctive relief. *See Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 489 (2010); *Nat'l Air Traffic Controllers Ass'n v. Fed. Serv. Impasses Panel*, 606 F.3d 780, 787–88 (D.C. Cir. 2010).

5. Venue is proper in this district under 28 U.S.C. § 1391(e).

## CONSTITUTIONAL AND STATUTORY BACKGROUND

### *The Appointments Clause*

6. The United States Constitution provides "the exclusive means" for appointing officers of the United States. *Lucia v. S.E.C.*, 138 S. Ct. 2044, 2051 (2018). Specifically, the Constitution's Appointments Clause requires that principal officers first be nominated by the President and then confirmed to their positions "by and with the Advice and Consent of the Senate." U.S. Const. Art. II, § 2, cl. 2.

7. The Senate's advice and consent power "is a critical 'structural safeguard [ ] of the constitutional scheme.'" *N.L.R.B. v. SW Gen., Inc.*, 137 S. Ct. 929, 935 (2017) (quoting *Edmond v. United States*, 520 U.S. 651, 659 (1997)). It "serves both to curb Executive abuses of the appointment power . . . and 'to promote a judicious choice of [persons] for filling the offices of the union.'" *Edmond*, 520 U.S. at 659 (quoting The Federalist No. 76, pp. 386–87 (M. Beloff ed. 1987) (A. Hamilton)).

8. The "dispositive feature" identifying whether a federal official is a principal officer, as opposed to an "inferior" officer, is whether the officer is directed and supervised by others who were appointed by presidential nomination with the advice and consent of the Senate. *Ass'n of Am. Railroads v. U.S. Dep't of Transp.*, 821 F.3d 19, 38 (D.C. Cir. 2016). And "it is

common ground that an officer without a supervisor must be principal." *Dep't of Transp. v. Ass'n of Am. Railroads*, 575 U.S. 43, 63–64 (2015) (Alito, J., concurring).

### *The Federal Service Labor-Management Relations Statute*

9. In 1978, Congress enacted a comprehensive set of laws regulating labor relations between federal agencies and their employees, known as the Federal Service Labor-Management Relations Statute. *See* 5 U.S.C. §§ 7101–7135. The statute was prompted by Congress's findings that "labor organizations and collective bargaining in the civil service are in the public interest," and that protecting employees' right to self organize "facilitates and encourages the amicable settlements of disputes between employees and their employers involving conditions of employment." 5 U.S.C. § 7101(a).

10. To "provide leadership in establishing policies and guidance relating to matters" under this statute, Congress created the Federal Labor Relations Authority. 5 U.S.C. § 7105(a)(1). The Authority is composed of three members who are appointed by the President and confirmed by the Senate for five-year terms, and a member can be removed "only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 7104(a)–(c).

11. The Authority is a quasi-judicial body that promulgates regulations and guidance; assists federal agencies and unions in understanding their rights and responsibilities under federal labor law; and adjudicates disputes arising under the Civil Service Reform Act, including appeals from unfair-labor-practice disputes and grievance-arbitration awards. A person "aggrieved by any final order" of the FLRA may petition for judicial review in the federal courts of appeals. 5 U.S.C. § 7123(a).

12. The same statutory provision creating the Authority also created its Office of the General Counsel, which is responsible for investigating and prosecuting alleged unfair labor practices. *See* 5 U.S.C. § 7104(f). Like the Authority, the General Counsel must be appointed by

4

the President with the advice and consent of the Senate. The Office of the General Counsel has been vacant since November 16, 2017.

### *The Federal Service Impasses Panel*

13. In enacting the Federal Service Labor-Management Relations Statute, Congress also established the Federal Service Impasses Panel as an independent "entity" within the Authority, "the function of which is to provide assistance in resolving negotiation impasses between agencies and exclusive representatives." 5 U.S.C. § 7119(c)(1).

14. The statute requires that the Panel consist of a Chairman and "at least" six other members. 5 U.S.C. § 7119(c)(2). These members must be appointed by the President, "solely on the basis of fitness to perform the duties and functions involved, from among individuals who are familiar with Government operations and knowledgeable in labor-management relations." *Id.*

15. When an agency and its employees' labor representative reach an impasse in negotiations, either party may request that the Panel resolve the dispute. 5 U.S.C. § 7119(b)(1). The Panel must promptly investigate any impasse presented to it, and then either (1) decline to assert jurisdiction if it finds that no impasse exists or that there is good cause for not asserting jurisdiction, or (2) assert jurisdiction. *See* 5 U.S.C. § 7119(c)(5)(A); 5 C.F.R. § 2471.6(a).

16. Upon exercising jurisdiction, the Impasses Panel may use any dispute-resolution techniques to resolve the impasse, including informal conferences, additional mediation, fact-finding, written submissions, recommendations for settlement, and mediation-arbitration. *See, e.g.*, 5 U.S.C. § 7119(c); 5 C.F.R. §§ 2471.1, 2471.6.

17. If the parties cannot reach a settlement, then the Panel may "take whatever action is necessary and not inconsistent with this Chapter to resolve the impasse," including imposing contract terms on the parties. 5 U.S.C. § 7119(5)(B)(ii).

18. The Panel's final action "shall be binding on [the] parties during the term of the

agreement, unless the parties agree otherwise." 5 U.S.C. § 7119(5)(C).

19. The statute specifies no procedure by which the parties can appeal a final decision of the Panel. *See Council of Prison Locals v. Brewer*, 735 F.2d 1497, 1499 (D.C. Cir. 1984).

20. An agency's or labor organization's failure to comply with a Panel decision constitutes an unfair labor practice. *See* 5 U.S.C. § 7116(a)(6), (8), (b)(6), (8).

## FACTUAL ALLEGATIONS

### *The Impasses Panel's current composition*

21. Several months into his administration, President Trump unilaterally removed all seven members of the Federal Service Impasses Panel. He has replaced them with his own appointees over the last three years.

22. As of today, the Panel is comprised of ten members, including Chairman Mark Anthony Carter. Every one of the Panel's current members was appointed without the Senate's advice and consent.

23. Every one of the current members of the Panel represents a management-side or anti-union perspective. Many have dedicated their careers to anti-union efforts, and efforts to harm public-sector unions in particular.

24. For example, Panel member David R. Osborne is President and General Counsel of the Fairness Center, a "nonprofit public-interest law firm" he helped launch that "offer[s] free legal services to those hurt by public employee union officials."[1]

25. Patrick Wright, another Panel member, is the Vice President for Legal Affairs at the Mackinac Center for Public Policy and director of the Mackinac Center Legal Foundation,

---

[1] *Federal Service Impasses Panel Biographies*, Fed. Lab. Relations Auth., https://perma.cc/3366-4ZJW.

which highlights its "strategic litigation" against public-employee unions on its website.[2]

26. A third member, F. Vincent Vernuccio, is a full-time "labor policy consultant" and a senior fellow at the Mackinac Center. He has written numerous articles and op-eds criticizing labor unions, even while serving as a Panel member. For example, in March 2020, he published a blog post on the Mackinac Center's website attacking recent coronavirus-relief legislation for providing "a handout to unions."[3]

27. The remaining Panel members all are engaged in the practice of management-side labor law and/or similarly affiliated with other self-described "free market," "limited government," and "libertarian" research organizations and advocacy groups, many of which have express anti-union platforms. These include the Mercatus Center and Law & Economics Center at George Mason University, the Freedom Foundation, and the Goldwater Institute.

### *The Association's path to the Impasses Panel*

28. The Association of Administrative Law Judges is the national federal-sector labor union serving as the exclusive bargaining unit for approximately 1,200 federal administrative law judges who work at the Social Security Administration throughout the United States.

29. The administrative law judges adjudicate over 700,000 cases each year, primarily appeals from denials of Social Security disability benefits. More than eight million Americans received Social Security disability benefits in 2019, totaling more than $140 billion.[4]

30. For several months in 2019, the Association and the Social Security Administration negotiated the terms of a successor collective-bargaining agreement. The parties agreed on numerous articles of the new contract, but they were unable to reach agreement on nine of them.

---

[2] Mackinac Center Legal Found., https://perma.cc/JX7K-P5RY
[3] F. Vincent Vernuccio, *Union Handout in the Coronavirus Stimulus Act*, Mackinac Center for Public Policy, https://perma.cc/BHQ6-34QY (March 25, 2020).
[4] Center for Budget & Policy Priorities, *Chart Book: Social Security Disability Insurance* (Sept. 6, 2019).

In June 2019, the Federal Mediation and Conciliation Service certified the parties' negotiations on the remaining articles at impasse

31. Several months later, in October 2019, the Social Security Administration requested that the Federal Service Impasses Panel assert jurisdiction over the dispute. The Association objected, arguing that the Panel lacked authority to assert jurisdiction or to otherwise issue a decision because the Panel members' appointments violated the Appointments Clause. In its response, the Social Security Administration contended that "[t]he Union's Constitutional argument is not properly before the Panel, as the Panel is not empowered to render a decision on such an issue."

32. On January 9, 2020, the Association received an email from a Panel attorney-advisor asserting jurisdiction over the impasse. The email did not acknowledge any of the Association's jurisdictional objections.

33. The following day, the Association filed a motion with the Federal Labor Relations Authority to stay the proceedings before the Panel pending resolution of its jurisdictional objections. The Association also asked the Panel's Executive Director to refrain from taking any further actions in the case until the Authority ruled on the motion to stay, but received no response.

34. Despite the Association's continued objections, the Panel issued a formal procedural determination letter to the parties the following week in which it officially asserted jurisdiction over the impasse. Once again, the Panel's letter did not address, acknowledge, or even mention any of the Association's jurisdictional arguments.

35. Just a few weeks ago, the Federal Labor Relations Authority denied the Association's request for a stay. *See* 71 FLRA No. 123 (March 31, 2020). In its order, the Authority acknowledged the Association's objection that "the Panel's members are not constitutionally

appointed" but declined to address it.

### *The Impasses Panel's final decision*

36. On April 15, 2020, the Panel issued its final decision on the impasse, which imposes binding and unreviewable contract articles on the Association.

37. In its decision, the Panel states that it "considered and rejected all of the Union's objections prior to asserting jurisdiction over this matter," including the argument that "the Panel's composition violates the Appointments Clause of the United States Constitution." The decision provides no reasoning or explanation for why the Panel rejected this argument.

38. The Panel adopted the Social Security Administration's proposals on the majority of the key disputed terms. For example, the Association had proposed that the duration of the new collective-bargaining agreement be three years, consistent with the duration of the parties' previous agreements. But, accepting the agency's proposal, the Panel imposed a seven-year contract simply because the agency asserted that a shorter contract would require it to spend more money on negotiations.

39. Likewise, the Association had proposed that administrative law judges be permitted to telework when they are not in the office conducting hearings, as permitted by the Telework Enhancement Act of 2010, 5 U.S.C. § 6501 *et seq.* Yet the Panel adopted the agency's proposal to allow judges to telework only at the agency's discretion, limiting and possibly eliminating a critical tool that judges use to manage their arduous caseload.

40. In one of the contract articles, the Panel imposed terms that went even further than those proposed by the Social Security Administration. In accordance with governing law, the Association had proposed that the agency's employees should be afforded a "reasonable amount of official time" to perform union-representation activities. The agency, by contrast, urged the Panel to impose a 2,000-hour annual cap on official time and to authorize the agency

to dictate the amount of time that each individual union official could use to represent employees. But the Panel imposed a 1,200-hour annual cap on official time—far less than what even the agency had proposed. Given that the Association's yearly official-time usage for the past 19 years has ranged between 19,000 and 22,000 hours, the Panel's decision renders the Association incapable of meaningfully representing its members or performing its statutory duties. It would reduce the staff that the Association would have to represent its members or perform its statutory duties from 10 full-time equivalents to one-half of a full-time equivalent.

## **CLAIM FOR RELIEF**
### *Violation of the Appointments Clause of the United States Constitution, U.S. Const. Art. II, § 2, cl. 2.*

41. The Constitution empowers the President to appoint "Officers of the United States" only "by and with the Advice and Consent of the Senate." U.S. Const. Art. II, § 2, cl. 2.

42. The Appointments Clause thus requires that principal officers be nominated by the President and confirmed by the Senate. *See Edmond v. United States*, 520 U.S. 651, 659 (1997); *Ass'n of Am. Railroads v. U.S. Dep't of Transp.*, 821 F.3d 19, 38 (D.C. Cir. 2016).

43. The members of the Federal Service Impasses Panel are principal officers within the meaning of the Appointments Clause. They exercise significant authority pursuant to the laws of the United States, including the power to issue final and unreviewable decisions imposing binding contract terms on federal agencies and their employees. And they are not supervised or directed by any other Senate-confirmed officers.

44. Because the Panel members were not appointed with the advice and consent of the Senate, their appointment violates the Appointments Clause.

**PRAYER FOR RELIEF**

The plaintiffs request that the Court:

a. Declare that the appointment of the Federal Service Impasses Panel violates the Appointments Clause of the U.S. Constitution;

b. Declare that any decisions issued or actions taken by the Panel are null and void in violation of the U.S. Constitution;

c. Enjoin the Panel, and any persons or entities acting in concert or participation with the Panel from issuing, giving effect to, or otherwise enforcing a Panel decision or order;

d. Award all other appropriate relief, including attorneys' fees and costs.

Respectfully submitted,

*/s/ Deepak Gupta*
DEEPAK GUPTA (D.C. Bar No. 495451)
**GUPTA WESSLER PLLC**
1900 L Street, NW, Suite 312
Washington, DC 20036
(202) 888-1741
*deepak@guptawessler.com*

NEIL K. SAWHNEY (*pro hac vice application forthcoming*)
**GUPTA WESSLER PLLC**
100 Pine Street, Suite 1250
San Francisco, CA 94111
(415) 573-0336
*neil@guptawessler.com*

*Counsel for Plaintiff*

April 20, 2020