**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, National Council of HUD Locals Council 222, AFL-CIO, 451 7th St. SW, Washington D.C. 20410; | ) ) ) ) |
|                Plaintiff, | ) |
| v. | ) |
| FEDERAL SERVICE IMPASSES PANEL, 1400 K St. NW, Washington, D.C. 20424; | ) ) Civil Action No. 1:19-cv-1934(RJL) |
|          and | ) |
| MARK ANTHONY CARTER, In his official capacity as Chairman of the Federal Service Impasses Panel, 1400 K St. NW, Washington, D.C. 20424; | ) ) ) ) |
|          and | ) |
| FEDERAL LABOR RELATIONS AUTHORITY, 1400 K St., NW, Washington, D.C. 20424; | ) ) |
|              Defendants. | ) |

| | |
|---|---|
| NATIONAL VETERANS AFFAIRS COUNCIL, 3441 Brandon Ave. SW, Roanoke, VA 24018; | ) ) |
|          Plaintiff, | ) |
| v. | ) |
| FEDERAL SERVICE IMPASSES PANEL, 1400 K St. NW, Washington, D.C. 20424; | ) ) Civil Action No. 1:20-cv-837(CJN) |
|          and | ) |
| MARK ANTHONY CARTER, In his official capacity as Chairman of the Federal Service Impasses Panel, 1400 K St. NW, Washington, D.C. 20424; | ) ) ) ) |
|          and | ) |
| FEDERAL LABOR RELATIONS AUTHORITY, 1400 K St., NW, Washington, D.C. 20424; | ) ) |
|              Defendants. | ) |

| | |
|---|---|
| NATIONAL LABOR RELATIONS BOARD PROFESSIONAL ASSOCIATION, 13217 New Hampshire Avenue, P.O. Box 15048, Silver Spring, MD 20904; | ) ) ) ) |
|          Plaintiff, | ) |
| v. | ) |
| FEDERAL SERVICE IMPASSES PANEL, 1400 K St. NW, Washington, D.C. 20424; | ) ) Civil Action No. 1:20-cv-888(ABJ) |
|          and | ) |

MARK ANTHONY CARTER,                                    )
In his official capacity as Chairman of the Federal Service)
Impasses Panel,                                         )
1400 K St. NW, Washington, D.C. 20424;                  )
                        and                             )
FEDERAL LABOR RELATIONS AUTHORITY,                      )
1400 K St., NW, Washington, D.C. 20424;                 )
                        and                             )
National Labor Relations Board                          )
1015 Half Street SE, Washington, D.C. 20570             )
                        Defendants.                     )
ASSOCIATION OF ADMINISTRATIVE                           )
LAW JUDGES, INTERNATIONAL                               )
FEDERATION OF PROFESSIONAL AND                          )
TECHNICAL ENGINEERS, AFL-CIO,                           )
6218 Georgia Avenue, NW, Suite 1-447                    )
Washington, D.C.  20011                                 )
                        Plaintiff,                      )
v.                                                      )
FEDERAL SERVICE IMPASSES PANEL,                         )
1400 K St. NW, Washington, D.C. 20424;                  ) Civil Action No. 1:20-cv-1026 (ABJ)
                        and                             )
MARK ANTHONY CARTER,                                    )
In his official capacity as Chairman of the Federal Service)
Impasses Panel,                                         )
1400 K St. NW, Washington, D.C. 20424;                  )
                                                        )
                        Defendants.                     )

## STATEMENT OF POINTS OF LAW AND AUTHORITIES
## IN SUPPORT OF DEFENDANTS' MOTION TO CONSOLIDATE

NOAH PETERS                          Federal Labor Relations Authority
Solicitor                            1400 K Street, N.W.
REBECCA J. OSBORNE                    Washington, D.C. 20424
Deputy Solicitor                     (202) 218-7999
SARAH C. BLACKADAR
Attorney

## TABLE OF CONTENTS

TABLE OF CONTENTS.....................................................................................................i

TABLE OF AUTHORITIES ...........................................................................................ii

SUMMARY OF THE PARTIES, CASES, AND ABBREVIATIONS THEREOF ...................... v

INTRODUCTION ..........................................................................................................1

BACKGROUND ............................................................................................................5

    I.    STATUTORY BACKGROUND ..............................................................5

    II.    FACTUAL BACKGROUND....................................................................7

        A.  AFGE-HUD (19-cv-1934-RJL) ........................................................7

        B.  NVAC (20-cv-837-CJN)....................................................................9

        C.  NLRBPA (20-cv-888-ABJ) ............................................................10

        D.  AALJ (20-cv-1026-ABJ) ................................................................12

ARGUMENT................................................................................................................12

    I.    STANDARD FOR CONSOLIDATION ................................................12

    II.    CONSIDERATIONS OF JUDICIAL EFFICIENCY AND LEGAL CLARITY WARRANT CONSOLIDATION OF THE CASES ...................................................13

        A.  Consolidating the four cases best serves the interest of judicial efficiency.................14

        B.  Consolidation would avert conflicting mandates that could confuse the federal-sector labor-management community. ...........................................17

        C.  Consolidation will not prejudice the Unions, even to the extent that there are minor differences in their claims. ................................................19

        D.  Consolidation will not delay proceedings or cause confusion....................................21

CONCLUSION.............................................................................................................25

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Adam Corps. v. Fed. Deposit Ins. Corp.*,
    585 F. Supp. 2d 13 (D.D.C. 2008) ........................................................................... 4

*Am. Fed'n of Gov't Emps., AFL-CIO v. FLRA*,
    778 F.2d 850 (D.C. Cir. 1985) ................................................................................ 7

*Am. Postal Workers Union v. U.S. Postal Serv.*,
    422 F. Supp. 2d 240 (D.D.C. 2006) ....................................................................... 13

*Arnold v. E. Air Lines, Inc.*,
    681 F.2d 186 (4th Cir. 1982) ................................................................................. 18

*Bureau of Alcohol, Tobacco & Firearms v. FLRA*,
    464 U.S. 89 (1983) ........................................................................................... 5, 6

*Chang v. United States*,
    217 F.R.D. 262 (D.D.C. 2003) ............................................................... 4, 13, 14, 15

*City of New Orleans v. Sec. Exch. Comm'n*,
    137 F.3d 638 (D.C. Cir. 1998) .............................................................................. 20

*Clayton v. Dist. of Columbia*,
    36 F. Supp. 3d 91 (D.D.C. 2014) ........................................................... 13, 19, 20, 23

*Council of Prison Locals v. Brewer*,
    735 F.2d 1497 (D.C. Cir. 1984) .............................................................................. 6

*Dep't of Def. Domestic Dependent Elementary & Secondary Sch. Fort Buchanan, P.R.*,
    71 FLRA 127, 134 (2019) (2019) ............................................................................ 7

*Devlin v. Transp. Commc'ns Int'l Union*,
    175 F.3d 121 (2d Cir. 1999) ............................................................................... 5, 14

*En Fuego Tobacco Shop LLC v. Food & Drug Admin.*,
    356 F. Supp. 3d 1 (D.D.C. 2009) ....................................................................... 19, 20

*Hall v. Hall*,
    138 S. Ct. 1118 (2018) ....................................................................................... 20

*Hanson v. District of Columbia*,
    257 F.R.D. 19 (D.D.C. 2009) .........................................................................Passim

*Horn v. Raines,*
  227 F.R.D. 1 (D.D.C. 2005) ............................................................................. 15

*Judicial Watch, Inc. v. U.S. Dep't of Energy,*
  207 F.R.D. 8 (D.D.C. 2002) ................................................................ 4, 21, 23, 24

*Kentucky v. Graham,*
  473 U.S. 159 (1985) ........................................................................................... 1

*Lewis v. Clarke,*
  137 S. Ct. 1285 (2017) ....................................................................................... 1

*National Labor Relations Board,*
  19 FSIP 045 (Nov. 29, 2019) ............................................................................ 10

*Nat'l Air Traffic Controllers Ass'n v. FSIP,*
  606 F.3d 780 (D.C. Cir. 2010) ........................................................................... 5

*Nat'l Air Traffic Controllers Ass'n AFL-CIO v. FSIP,*
  437 F.3d 1256 (D.C. Cir. 2006) ...................................................................... 5, 6

*Nat'l Ass'n of Mortg. Brokers v. Bd. of Governors of the Fed. Reserve Sys.,*
  770 F. Supp. 2d 283 (D.D.C. 2011) ............................................................ 4, 22, 23

*Nat'l Labor Relations Bd. Prof'l Ass'n v. FSIP,* No. 8:20-CV-00078-PX,
  2020 WL 1638410 (D. Md. Apr. 2, 2020) ................................................... 3, 11, 17

*New York v. Microsoft Corp.,*
  209 F. Supp. 2d 132 (D.D.C. 2002) ................................................................ 4, 5

*Owen v. Labor Ready Inc.,*
  146 Fed. App. 139 (9th Cir. 2005) .................................................................... 21

*Patent Office Prof'l Ass'n v. FLRA,*
  26 F.3d 1148 (D.C. Cir. 1994) ........................................................................... 7

*PEMEX Exploración y Producción v. BASF Corp.,*
  2011 WL 13134611 (S.D. Tex. Oct. 4, 2011) ..................................................... 18

*Saiyed v. Council on Am.-Islamic Relations Action Network, Inc.,*
  742 F. Supp. 2d 84 (D.D.C. 2010) ...................................................................... 4

*Scarborough v. Nat'l Ass'n of Sur. Bond Producers,*
  474 F. Supp. 64 (D.D.C. 2007) .......................................................................... 13

*Singh v. Carter*,
    185 F. Supp. 3d 11 (D.D.C. 2016) ................................................................. 15, 24

*Steele v. United States*,
    2015 WL 4121607 (D.D.C. Jun. 30, 2015) ............................................................. 15

*U.S. Bank Nat'l Ass'n v. Springfield Prairie Props., LLC*,
    2015 WL 13333510 (C.D. Ill. Dec. 6, 2015) ........................................................... 18

*U.S. Dep't of Def. Educ. Activity, Arlington, Va.*,
    56 FLRA 119 (2000) .............................................................................................. 7

*U.S. Dep't of Hous. and Urban Dev.*,
    18 FSIP 075 (Feb. 14, 2019) (Feb. 14, 2019) ......................................................... 8

**STATUTES**

5 U.S.C. § 7104 ...................................................................................................... 5

5 U.S.C. § 7105 ...................................................................................................... 6

5 U.S.C. § 7114 ...................................................................................................... 5

5 U.S.C. § 7116 ...................................................................................................... 5

5 U.S.C. § 7119 ........................................................................................... 5, 6, 10, 17

5 U.S.C. § 7311 ............................................................................................... 6, 17

18 U.S.C. § 202 ...................................................................................................... 6

18 U.S.C. § 1918 ............................................................................................. 6, 17

**RULES**

Fed. R. Civ. P. 42(a) ..................................................................................... 12, 16, 25

**REGULATIONS**

5 C.F.R. § 2471.6(a) ................................................................................................ 7

## OTHER AUTHORITIES

*Delegation of Removal Authority Over the Federal Service Impasses Panel*,
  84 Fed. Reg. 63789 (Nov. 12, 2019) ............................................................................................ 6

*Executive Order 11491*,
  34 Fed. Reg. 17605 ..................................................................................................................... 3

1978 U.S.C.C.A.N. 2723 ........................................................................................................... 6, 18

124 Cong. Rec. H. 9640 (daily ed. Sept. 13, 1978) ................................................................. 6, 17

S. Rep. 95-969 ........................................................................................................................... 6, 18

## **SUMMARY OF THE PARTIES, CASES, AND ABBREVIATIONS THEREOF**

This motion concerns four complaints filed by the following four unions (collectively "the Unions" or "Plaintiffs"):

- The American Federation of Government Employees, National Council of HUD Locals, Council 222, AFL-CIO ("AFGE-HUD"),
- The National Veterans Affairs Council ("NVAC"),
- The National Labor Relations Board Professional Association ("NLRBPA"), and
- The Association of Administrative Law Judges ("AALJ").

The collective "FLRA" defendants in these matters are:

- The Federal Labor Relations Authority (the "Authority"),
- The Federal Service Impasses Panel (the "Panel"), and
- Panel Chairman Mark Anthony Carter ("Panel Chairman Carter").

The National Labor Relations Board (the "Board") is named as a defendant in one case. The Department of Housing and Urban Development ("HUD") intervened in the AFGE-HUD case. The FLRA, Board, and HUD are collectively referred to as Defendants.

The four cases that are the subject of this motion are the following, beginning with the first-filed action:

- *AFGE-HUD v. the Panel, Panel Chairman Carter, and the Authority*, 19-cv-1934-RJL, Second Amended Complaint (D.D.C. Aug 27, 2019) ("AFGE-HUD SAC");

- *NLRBPA v. the Panel, the Authority, and the Board*, 20-cv-888-ABJ, Complaint, (D.D.C. January 10, 2020) ("NLRBPA Compl.");

- *NVAC v. the Panel, Panel Chairman Carter, and the Authority*, 20-cv-837-CJN Complaint, (D.D.C. Mar. 27, 2020) ("NVAC Compl."); and

- *AALJ v. the Panel and Panel Chairman Carter*, 20-cv-1026-ABJ, Complaint (D.D.C. April 21, 2020) ("AALJ Compl.").

## INTRODUCTION

Four cases pending before this Court raise two common questions of law. *First*, the four cases each raise the question whether the District Court has jurisdiction to directly review Panel orders. *Second*, each raises the issue of whether the method Congress designed to appoint Panel members when it drafted the Federal Labor-Management Relations Statute, 5 U.S.C. §§ 7101-7135 (2018) (the "Statute"), violates of the Appointments Clause of the United States Constitution. (*See* AFGE-HUD SAC ¶¶ 50-61; NVAC Compl. ¶¶ 39-45; NLRBPA Compl. ¶¶ 49-65; AALJ Compl. ¶¶ 41-44).

The FLRA[1] moves to consolidate these four cases brought by the federal public-sector unions AFGE-HUD, NVAC, NLRBPA, and AALJ so that this Court may efficiently adjudicate the common legal questions in the cases; serve the interests of judicial economy by concentrating all four cases before a single Court, thereby lessening the docket burden for two other Courts in this district; and avoid the potential of three conflicting rulings on those questions. The Board and HUD, each represented by the Department of Justice, join in this motion.

The core claim in each of these cases is an Appointments Clause challenge. In each case, the Plaintiffs request that this Court declare that the Panel members are unconstitutionally appointed, invalidate the Panel's prior decisions, and enjoin the Panel from rendering new

---

[1] Panel Chairman Carter may assert, in response to the Unions' claims against him in his Official Capacity, the same immunities and defenses that are available to the Panel as a whole. *Lewis v. Clarke*, 137 S. Ct. 1285, 1291 (2017) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)). That is because a claim brought against a federal government employee in his or her official capacity "is only nominally against the official and in fact is against the official's office and thus the sovereign itself. . . . The real party in interest is the government entity, not the named official." *Id.* (citations omitted). The arguments presented in support of Defendants' Motion to Consolidate thus apply equally to the Panel Chairman Carter and all other Defendants.

decisions.  Two of the cases include additional causes of action, which are derivative of the

primary, Appointments Clause claim:

- AFGE-HUD's primary cause of action is an Appointments Clause challenge to the Panel. (AFGE-HUD SAC ¶¶ 50-61.)  It asserts two additional causes of action: that the Panel acted *ultra vires* when it issued a decision without a full complement of members (*id.* ¶¶ 44-49) and that it violated the Administrative Procedure Act ("APA") when it did so.  (*Id.* ¶¶ 62-67.)

- NVAC's primary cause of action is an Appointments Clause challenge to the Panel. (NVAC Compl. ¶¶ 39-45.)  It also claims that the composition of the Panel violates the Statute (*id.* ¶¶ 46-50) and the Fifth Amendment's Due Process Clause.  (*Id.* ¶¶ 51-54.)

- NLRBPA's single cause of action is an Appointments Clause challenge to the Panel. (NLRBPA Compl.  ¶¶ 49-65.)

- AALJ's single cause of action is an Appointments Clause challenge to the Panel.  (AALJ Compl. ¶¶ 41-44.)

Despite the identical legal issues raised by the predominating claim in each of these four

cases, and despite AFGE-HUD's previous consent to consolidate its Appointments Clause

challenge with that brought by another union (AFGE-SSA) last year, all of the Unions now

object to consolidation.  There is little if any principled basis for that shared objection, a

conclusion is supported by the Unions' numerous admissions concerning the interrelated nature

of these cases:

- AFGE-HUD previously consented to the consolidation of its case challenging the appointment of Panel members under the Appointments Clause with an Appointments Clause challenge brought by another union, even though the cases involved two different Panel decisions and did not assert all of the same causes of action.  (*See* Unopposed Mot. to Consolidate Cases 1:19-cv-1934 and 1:19-cv-1976; AFGE-HUD 19-cv-1976 (D.D.C. Aug. 15, 2019), ECF 7.)

- NVAC filed a Notice of Related case indicating that it believed that its case was related to the AFGE-HUD case.  (*See* Notice of Designation of Related Civil Cases, NVAC, 20-cv-837 (D.D.C. Mar. 27, 2020), ECF 2.)

- In November 2019, AALJ became an *amicus* in the AFGE-HUD case.  It cited the impasse that forms the basis of its current complaint as the reason for its interest in the AFGE-HUD case.  (*Compare* AALJ Compl. *with* Amicus Brief at 1, AFGE-HUD, 19-cv-1934 (D.D.C. Nov. 20, 2019), ECF 28.))  It further claimed, "the Court's disposition of

the issues presented [in the AFGE-HUD case] will profoundly affect the AALJ, as well as many other federal sector labor unions who appear at impasse before the [Panel]." (Amicus Brief at 1.)  Despite this admission, when the AALJ filed its current complaint, it filed a notice identifying only the NLRBPA case as related to its own.  (*See* Notice of Designation of Related Civil Cases, AALJ, 20-cv-1026 (D.D.C. Apr. 21, 2020), ECF 2.)

This background shows that the Unions have freely acknowledged the interrelation of their common Appointments Clause challenge to the Panel in the past.  The Unions' present opposition to consolidation contradicts their prior respective acknowledgements of common legal questions, and does not appear to have any principled basis.

Consolidation will eliminate the burdens of duplicative proceedings on the parties and the Court, and the potential for conflicting rulings on the same legal questions.  *Hanson v. District of Columbia*, 257 F.R.D. 19, 21-22 (D.D.C. 2009).  In each case, the Unions ask the Court to declare that the composition of the Panel is unconstitutional and enjoin it from performing its statutory duties until the Senate confirms the Panel members—something which is not required by the Statute and has *never* been required throughout the Panel's 50-year history.  (*See* AFGE-HUD SAC at 12; NVAC Compl. at 18; NLRBPA Compl. ¶ 66; AALJ Compl. at 11; Executive Order 11491 § 5, 34 Fed. Reg. 17605, 3 C.F.R., 1966-1970 Comp., p. 861 (Oct. 29, 1969).)  This means that if *one* Union succeeds in obtaining such broad relief, *all* of the Unions succeed.  The District of Maryland recognized this when it transferred the case to this Court, explaining:

> The **identical** appointments clause challenge against the Panel is currently pending in the D.C. district court which has yet to rule on dispositive motions. *See American Federation of Government Employees v. Federal Service Impasses Panel*, 19-cv-1934-RJL (D.D.C.).  The Panel and FLRA are also defendants in the D.C. case. *Id.*  Accordingly, transfer will not only conserve judicial resources by allowing the forum currently wrestling with this important constitutional question to address both matters . . . but will also avoid inconsistent determinations.

*Nat'l Labor Relations Bd. Prof'l Ass'n v. FSIP*, No. 8:20-CV-00078-PX, 2020 WL 1638410, at *4 (D. Md. Apr. 2, 2020) (emphasis added).

Further, the cases are procedurally ripe for consolidation.  Each case sits at the same stage of litigation.  Dispositive motions have been filed but not decided in AFGE-HUD's case, while motions to dismiss are shortly due to be filed in the NVAC, NLRBPA, and AALJ cases. Consolidation will not prejudice the Unions because their separate causes of action (and arguments in favor of those claims) remain after consolidation.  Further, it will not be difficult for the Court to address the Unions' derivative claims in decisions addressing their primary Appointments Clause claims.  *Nat'l Ass'n of Mortg. Brokers v. Bd. of Governors of the Fed. Reserve Sys.*, 770 F. Supp. 2d 283, 287 (D.D.C. 2011) (despite differences in two complaints "conceded overlap in issues presented by both matters confirms the sound basis for consolidation"); *see New York v. Microsoft Corp.*, 209 F. Supp. 2d 132, 147-48 (D.D.C. 2002) (observing that cases were consolidated although one "presented issues which were wholly absent from" the other, and defendants could assert different challenges in each case).

Indeed, this Court has found consolidation to be appropriate even in cases, such as these, where plaintiffs or defendants differ, so long as the cases present a central and common question of law or fact that can be efficiently and effectively addressed through consolidation without undue prejudice.  *See, e.g.*, *Saiyed v. Council on Am.-Islamic Relations Action Network, Inc.*, 742 F. Supp. 2d 84 (D.D.C. 2010) (granting opposed motion to consolidate where two different plaintiffs alleged substantially similar allegations of fraud against a common defendant); *Adam Corps. v. Fed. Deposit Ins. Corp.*, 585 F. Supp. 2d 13, 16 (D.D.C. 2008) (granting unopposed motion to consolidate two cases that presented nearly identical issues of law and fact); *Chang v. United States*, 217 F.R.D. 262, 265 (D.D.C. 2003) (consolidating multiple cases when the Court was "persuaded that consolidation would not result in any undue delay"); *Judicial Watch, Inc. v. U.S. Dep't of Energy*, 207 F.R.D. 8, 9 (D.D.C. 2002) (granting opposed consolidation motion

where one plaintiff's claims against multiple agencies would not cause prejudicial delay to the other plaintiff's claims brought against only one defendant).

Thus, by consolidating the cases, the "savings of expense and gains of efficiency can be accomplished without sacrifice of justice." *Hanson*, 257 F.R.D. at 21-22 (quoting *Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999). Consolidating such similar cases presents no risk of prejudice, delay or confusion. Instead, it will conserve judicial resources by relieving "the parties and the Court of the burden of duplicative pleadings and Court orders." *Microsoft*, 209 F. Supp. 2d at 147-48. Equally important, it will eliminate the potential for severe prejudice arising from conflicting rulings on common legal questions. Defendants therefore respectfully request that this Court grant their Motion to Consolidate.

## **BACKGROUND**

### I.  STATUTORY BACKGROUND

In the Statute, "Congress established a distinct regulatory framework for collective bargaining between federal agencies and their employees." *Nat'l Air Traffic Controllers Ass'n v. FSIP*, 606 F.3d 780, 783 (D.C. Cir. 2010). The Statute "grants federal agency employees the right to organize, provides for collective bargaining, and defines various unfair labor practices." *Id.*; *see also* 5 U.S.C. §§ 7114(a)(1), 7116.

The Statute created a three-Member, independent, and bipartisan adjudicative body within the FLRA known as the Authority. 5 U.S.C. § 7104. Authority members are appointed by the President with the advice and consent of the Senate. 5 U.S.C. § 7119(c)(2)-(4). The Authority's role is analogous to that of the Board in the private sector. *Bureau of Alcohol, Tobacco & Firearms v. FLRA*, 464 U.S. 89, 92-93 (1983) ("*BATF*"). The Authority "is primarily responsible for administering" the Statute. *Nat'l Air Traffic Controllers Ass'n AFL-CIO v. FSIP*, 437 F.3d 1256, 1258 (D.C. Cir. 2006) ("*NATCA 2006*"). It is also responsible for

providing "leadership in establishing policies and guidance" under the Statute.  5 U.S.C. § 7105(a)(1); *BATF*, 446 U.S. at 93.

The Panel is "an entity within" the FLRA.  5 U.S.C. § 7119(c)(1).  It the serves the narrow function of "providing assistance in resolving negotiation impasses between agencies and exclusive representatives."  *Id.*  Congress created the Panel to resolve impasses without the need for strikes, which are prohibited in federal-sector employment.  *See* 124 Cong. Rec. H. 9640 (daily ed. Sept. 13, 1978) (discussing the Statute's effect on 5 U.S.C. § 7311 and 18 U.S.C. § 1918, which bar federal worker strikes).  In the absence of the Panel, there would be no mechanism to resolve federal-sector collective-bargaining agreement ("CBA") impasses.  S. Rep. 95-969, 13, 1978 U.S.C.C.A.N. 2723, 2735 (Jul. 10, 1978) ("Strikes by federal employees are prohibited, bargaining impasses are resolved through" the Panel).

Panel members are subject to supervision, and ultimately removal, by the Authority at any time, with or without cause.  *See Delegation of Removal Authority Over the Federal Service Impasses Panel*, 84 Fed. Reg. 63789 (Nov. 12, 2019).  The Panel is currently composed of a Chairman and nine members, each of whom is a Special Government Employee performing Panel duties on a part-time basis.  5 U.S.C. § 7119(c)(4); 18 U.S.C. § 202(a); *see also* https://www.flra.gov/components-offices/components/federal-service-impasses-panel-fsip-or-panel.

Functionally, the Panel "serves as a form 'of last resort in the speedy resolution of disputes' between a federal agency and the exclusive representatives of its employees 'after negotiations have failed.'" *NATCA 2006*, 437 F.3d at 1257-58 (quoting *Council of Prison Locals v. Brewer*, 735 F.2d 1497, 1501 (D.C. Cir. 1984)).  It must "promptly investigate any impasse presented to it." 5 U.S.C. § 7119(c)(5)(A).  Based on its findings, it must either assert jurisdiction

when impasses are found or decline when none exist. 5 C.F.R. § 2471.6(a).  If the Panel asserts

jurisdiction, then it may "take whatever action is necessary and not inconsistent with [the

Statute] to resolve the impasse."  5 U.S.C. § 7119(c)(5)(B)(iii).  "Panel impasse-resolving action

often takes the form of ordering the parties to adopt particular contract provisions.  The

Authority and the courts consider such Panel-imposed terms to be part of the collective

bargaining agreement."  *Am. Fed'n of Gov't Emps., AFL-CIO v. FLRA*, 778 F.2d 850, 863 (D.C.

Cir. 1985).

The Panel lacks the power to enforce its decisions.  Only the Authority can order

compliance with Panel decisions, and it can refuse to do so if it finds that the Panel has acted

beyond its limited jurisdiction or has disregarded the Constitution.  5 U.S.C. § 7119(c)(1);

*Patent Office Prof'l Ass'n v. FLRA*, 26 F.3d 1148, 1153 (D.C. Cir. 1994) (Authority finding that

Panel and arbitrator acting on Panel-delegated authority lacked jurisdiction to impose CBA

provisions); *Dep't of Def. Domestic Dependent Elementary & Secondary Sch. Fort Buchanan,*

*P.R.*, 71 FLRA 127, 134 (2019) (Authority review of Panel-imposed contractual terms

challenged in an unfair labor practice proceeding); *U.S. Dep't of Def. Educ. Activity, Arlington,*

*Va.*, 56 FLRA 119, 120, 122 (2000) (finding that a Panel order violated the Constitution).

## II.  FACTUAL BACKGROUND

### A.  AFGE-HUD (19-cv-1934-RJL)

This suit, filed June 27, 2019, arises out of negotiations between AFGE-HUD and HUD

over a new collective bargaining agreement ("CBA").  (AFGE-HUD SAC ¶¶ 20-33.)  AFGE-

HUD and HUD were renegotiating the CBA after the previous contract expired on July 23, 2018,

though its terms remain in effect pursuant to a rollover provision.  (*Id.* ¶ 20.)  On June 19, 2018,

AFGE-HUD and HUD began bargaining over the "ground rules" that would govern their

substantive CBA negotiations.  However, on July 30, 2018, HUD submitted a request for Panel

assistance because the parties had reached impasses in these negotiations.  (*Id.* ¶¶ 22-24.)

The Panel asserted jurisdiction over the impasses on November 15, 2018, and ordered

additional mediation.  (*Id.* ¶¶ 25-26.)  The parties were unable to resolve all of impasses through

mediation.  Thus, on February 14, 2019, the Panel issued a decision setting ground rules for the

parties' renegotiations of the CBA.  *See U.S. Dep't of Hous. and Urban Dev.*, 18 FSIP 075 (Feb.

14, 2019) ("*HUD Panel Decision*").

AFGE-HUD asks the Court to vacate the Panel's order because, they allege, the

appointment of Panel members violates that the Appointments Clause of the U.S. Constitution.

AFGE-HUD urges that Panel members are "principal officers of the United States" who must be

appointed by the President with the advice and consent of the Senate. They also claim that the

Panel acted "*Ultra Vires*" because it was comprised of less than seven members when it issued

the *AFGE-HUD Panel Decision*.  Finally, they allege that the Panel violated the APA, asserting

that the Panel is not authorized to take any action unless it is composed of at least Chairman and

six members.  (*Id.* ¶¶ 44-67.)  AFGE-HUD asks this Court to:

1) Vacate "the Panel's decision in [the *AFGE-HUD Panel Decision*] in its entirety;"

2) Declare "the Panel's decision in [the *AFGE-HUD Panel Decision*] to be *ultra vires* and void, and in violation of the [APA];"

3) Declare "that the Panel may not exercise its powers unless it is composed of a Chairman and at least six other members;"

4) Declare "the Panel's assertion of jurisdiction over the matters at issue in [the *AFGE-HUD Panel Decision*] void in violation of the Appointments Clause of the United States Constitution;" and

5) Declare "that the Panel may not exercise its powers absent members who have been appointed 'by and with the Advice and Consent of the Senate. . . .'"

(*Id.* at 12.)

The FLRA filed a motion to dismiss the AFGE-HUD complaint.  (*See* Mot. to Dismiss for Lack of Jurisdiction, AFGE-HUD, 19-cv-1934 (D.D.C. Oct. 11, 2019) ECF 20.)  AFGE-HUD filed a motion for summary judgment.  The Court stayed proceedings on that motion pending the outcome of the motion to dismiss.  (*See* Minute Order, AFGE-HUD, 19-cv-1934 (D.D.C. Dec. 5, 2019).)

 B. <u>NVAC (20-cv-837-CJN)</u>

This case, filed on March 27, 2020, arises out of the negotiation of a new CBA between NVAC and the Department of Veterans Affairs ("VA").  (NVAC Compl. ¶ 35.)  The parties' previous agreement expired on March 15, 2014, and they are operating under an indefinite extension until they reach a new agreement.  (*Id.* ¶ 34.)  NVAC and VA entered into a ground rules agreement on April 2, 2019, and proceeded with substantive negotiations.  (*Id.* ¶¶ 36-37.)  In December 2019, VA asserted that the parties were at impasse and requested the assistance of the Panel.  (*Id.* ¶ 36.)

On March 18, 2020, the Panel asserted jurisdiction over the impasses.  (*Id.* ¶ 37.)  Nine days later, NVAC filed its complaint in this matter.  NVAC contends that the Panel's current composition is deficient for three reasons.  *First*, like the Plaintiffs in AFGE-HUD, NLRBPA and AALJ, NVAC alleges that Panel members are principal officers and that their selection, without the advice and consent of the Senate, violates the Appointments Clause of the U.S. Constitution.  (Id. ¶¶ 39-45.)  *Second*, NVAC alleges that the Panel is not a neutral tribunal because some of the current members work for entities that "advocate for and pursue anti-union policies" and have authored opinion pieces on labor-management issues that NVAC considers "anti-union."  (*Id.* ¶¶ 30, 53.)  *Third*, NVAC alleges that the current Panel members lack what it considers adequate "background, training, certification, or credential in arbitration or mediation," in violation of Statute's requirement that Panel members should be "individuals who are familiar

with government operations and knowledgeable in labor-management relations." (*Id.* ¶¶ 46-50

(quoting 5 U.S.C. § 7119(c)(2)).)  NVAC asks the Court to:

1) "Declare that the Panel is improperly constituted because its members are not appointed with the advice and consent of the Senate…"

2) "Declare that the Panel is improperly constituted because its members do not meet the requirements for appointment under 5 U.S.C. § 7119(c)(2);"

3) "Declare that the Panel is improperly constituted because its members do not provide an impartial tribunal…"

4) "Declare that the rulings of the improperly constituted Panel are null and void;" and

5) "Enjoin the Panel from issuing any decisions regarding Plaintiff until its members are properly appointed."

(*Id.* at 18.)

C.     NLRBPA (20-cv-888-ABJ)

On January 10, 2020, the NLRBPA filed suit in the District of Maryland[2] concerning a

Panel decision arising out of NLRBPA and the Board CBA renegotiations.  (NLRBPA Compl. ¶

17).  The suit arose from a May 2019, Board request for Panel assistance in resolving the

bargaining impasses between the agency and NLRBPA.  (*Id.* ¶ 23.)  In August 2019, the Panel

issued an order asserting jurisdiction over the parties' impasses.  (*Id.* ¶ 28.)  In November 2019,

the Panel issued an Order settling the remaining disputed terms of the parties' ground rules for

new CBA negotiations.  *National Labor Relations Board*, 19 FSIP 045 (Nov. 29, 2019) ("*NLRB*

*Panel Decision*").

In its complaint, the NLRBPA asserts one cause of action: that the Panel's members

appointments violated the Constitution's Appointments Clause.  (NLRBPA Compl. ¶ 49-58, 62).

Although NLRBPA's Complaint also raises questions about the alleged bias of a Panel Member,

---

[2] Complaint, *NLRBPA*, 8:20-cv-00078-PX (D. MD. Jan. 10, 2020).

it does not assert a cause of action based on bias.  (*Id.* ¶¶ 43-45.)  NLRBPA asks the Court for,

*inter alia*:

1) "A declaration that the Panel members do not lawfully hold office, and that all acts the Panel members have taken affecting the NLRBPA in [the *NLRBPA Panel Decision*] are null and void;"

2) "The entry of a permanent injunction restraining the Panel, the NLRB, and any persons acting in concert of participation with them from giving effect to the Decision or any other act take by the Panel or its members;" and

3) "The entry of a permanent injunction restraining the Panel, the NLRB, and any person acting in concert or participation with them from issuing any future decisions or taking any acts with respect to the NLRBPA until such time as the Panel possesses Senate-confirmed members."

(*Id.* ¶ 66.)

The FLRA moved to transfer venue of the case from the District of Maryland to the

District Court for the District of Columbia, which the court granted on April 2, 2020.  *Nat'l*

*Labor Relations Bd. Prof'l Ass'n v. FSIP*, 8:20-cv-00078-PX, 2020 WL 1638410, at *4 (D. Md.

Apr. 2, 2020).  This was the first step in facilitating consolidation with AFGE-HUD's pending

litigation.  Indeed, the possibility that transferring venue would facilitate consolidation of the

NLRBPA case with the AFGE-HUD case was a significant factor in the court's decision:

> The identical appointments clause challenge against the Panel is currently pending in the D.C. district court which has yet to rule on dispositive motions.  *See American Federation of Government Employees v. Federal Service Impasses Panel*, 19-cv-1934-RJL (D.D.C.).  The Panel and FLRA are also defendants in the D.C. case. *Id.*  **Accordingly, transfer will not only conserve judicial resources by allowing the forum currently wrestling with this important constitutional question to address both matters, but will also avoid inconsistent determinations.**  This Court cannot predict or promise that this case will be consolidated with the one presenting pending in the D.C. district court.  But absent transfer, there would be no such opportunity for either party to request, or for the court to consider, consolidation.  **The Court concludes that the interest of justice weighs heavily in favor of transfer.**

*Id.* (emphasis added, citations omitted).

D.     AALJ (20-cv-1026-ABJ)

On April 21, 2020, the AALJ filed suit in the District Court for the District of Columbia

concerning Panel decisions arising out of a 2019 impasse in CBA successor agreement

negotiations between AALJ and Social Security Administration ("SSA").  (AALJ Compl. ¶ 30-

40.)  AALJ contests the Panel's assertion of jurisdiction over the impasse and its decision

concerning the impasse.  (*Id.*)  Nevertheless, AALJ asserts only a single cause of action:

violation of the Appointments Clause.

AALJ made similar legal arguments in November 2019, in an *amicus* brief that it filed in

support of AFGE-HUD in the AFGE-HUD case.  (*Amicus* Brief by AALJ, AFGE-HUD, 19-cv-

1934 (D.D.C. Nov. 20, 2019), ECF 28.)  Moreover, AALJ's current suit follows on the heels of a

Petition for Review asserting almost identical claims that the Fourth Circuit recently dismissed.

(*See* Petition for Review, *AALJ v. FLRA*, 20-1110 (4th Cir.  Jan. 30, 2020), ECF 2; Order

Dismissing Petition for Review, (Mar. 9, 2020), ECF 28.)

In its case before this Court, AALJ seeks, *inter alia*, the following relief:

1) A declaration "that the appointment of the . . .  Panel violates the Appointments Clause of
   the U.S. Constitution;"

2) A declaration "that any decisions issued or actions taken by the Panel are null and void in
   violation of the U.S. Constitution;" and

3) Enjoining "the Panel, and any persons or entities acting in concert or participation with
   the Panel from issuing, giving effect to, or otherwise enforcing a Panel decision or
   Order."

(*Id.* at 11.)

## **ARGUMENT**

## I.   STANDARD FOR CONSOLIDATION

This Court consolidates multiple actions where they raise "a common question of law or

fact."  Fed. R. Civ. P. 42(a).  To determine "whether consolidation is appropriate, 'courts weigh

considerations of convenience and economy against considerations of confusion and prejudice." *Scarborough v. Nat'l Ass'n of Sur. Bond Producers*, 474 F. Supp. 64, 71 (D.D.C. 2007) (quoting *Am. Postal Workers Union v. U.S. Postal Serv.*, 422 F. Supp. 2d 240, 245 (D.D.C. 2006); *see also Chang v. United States*, 217 F.R.D. 262, 265 (D.D.C. 2003) ("[c]onsolidation may increase judicial efficiency by. . . eliminating the need for more than one judge to familiarize themselves with the issues presented"). "The party requesting consolidation bears the burden of showing that the balance weighs in favor of consolidation." *Clayton v. Dist. of Columbia*, 36 F. Supp. 3d 91, 94 (D.D.C. 2014) (quotation omitted). In this case, considerations of judicial economy, the risk of conflicting rulings, and a lack of risk of confusion or prejudice weigh in favor of consolidation.

II.     CONSIDERATIONS OF JUDICIAL EFFICIENCY AND LEGAL CLARITY
        WARRANT CONSOLIDATION OF THE CASES

This Court should consolidate the cases because doing so will enhance judicial efficiency without the risk of prejudicial delay or confusion. Indeed, consolidation would foster clarity by avoiding the risk of inconsistent judgments concerning this Court's jurisdiction and the ultimate question of whether statutory provisions concerning the appointment of Panel members are constitutional.

Judicial efficiency considerations favor consolidation because each case involves administratively unexhausted claims that raise the same Appointments Clause issues, implicate the same jurisdictional concerns, and seek the same relief. In addition, each case is at the same early stage of litigation. Thus, there is no risk of prejudicial delay or confusion arising from consolidation.

On the other hand, allowing four cases to proceed individually would require three different District Court judges to resolve the same legal issues four times. This would

unnecessarily tax the Court and subject Defendants and the AALJ (as *amicus* in the AFGE-HUD case and Plaintiff in its own case) to unnecessary burdens associated with litigating the same issues across multiple dockets.

Moreover, the separate adjudication of these cases could significantly prejudice the federal labor-management community as a whole.  Each case seeks to enjoin the Panel's ability to carry out its statutory mandate to resolve impasses between federal agencies and unions.  Denying consolidation risks proceedings on multiple tracks and conflicting decisions that could confuse all members of the federal-sector labor-management community concerning the role of the Panel, the only body Congress explicitly authorized to resolve bargaining impasses.  Such an outcome would eviscerate the body Congress created to resolve bargaining impasses without public employee strikes.  In the absence of a Panel, federal-sector bargaining impasses would be allowed to fester, undermining labor peace—which is the primary goal of the Statute.

This Court should therefore grant Defendants' Motion to Consolidate all cases.

A.      Consolidating the four cases best serves the interest of judicial efficiency.

Judicial efficiency is best served by consolidation as it allows the Court to consider the same jurisdictional question, and the same constitutional question, without the need for duplicitous proceedings and motion practice.  "Consolidation may increase judicial efficiency by reducing presentation of duplicative proof at trial, eliminating the need for more than one judge to familiarize themselves with the issues presented, and reducing excess cost to all parties and the government." *Chang*, 217 F.R.D. at 265.  When cases involve a common question of law or fact, consolidation is a "valuable and important tool of judicial administration." *Hanson v. District of Columbia*, 257 F.R.D. 19, 21-22 (D.D.C. 2009) (quoting *Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999)).

In *Hanson*, the Court granted the defendant's motion for consolidation when the defendant was the same in both cases and plaintiffs, though different individuals, both challenged the same Washington, D.C. law prohibiting them from purchasing handguns.  *Id.* Similarly in this case, Plaintiffs are four federal-sector public unions and, while they challenge different orders of the Panel, they all seek the same result: to have the Court find the current composition of the Panel unconstitutional and enjoin it from further action until the Panel's members are appointed by the President with the advice and consent of the Senate.  (AFGE-HUD SAC at 2; NVAC Compl. at 18; NLRBPA Compl. ¶ 66; AALJ Compl. at 11).

Here, as in *Hanson*, the most expedient way to proceed with all four cases is through consolidation, which would avoid duplicative proceedings on the common jurisdictional and constitutional questions presented in each case.  *See* 257 F.R.D. at 21-22; *see also Singh v. Carter*, 185 F. Supp. 3d 11, 18 (D.D.C. 2016) (consolidation is "appropriate when it 'would promote convenience and judicial economy, simplify management of the cases, . . . facilitate global resolution of the . . . claims[,] and conserve judicial resources.'" (quoting *Steele v. United States*, No. 14-cv-1523, 2015 WL 4121607 at *2 (D.D.C. Jun. 30, 2015))); *Horn v. Raines*, 227 F.R.D. 1, 3 (D.D.C. 2005) ("Therefore, without consolidation there is a significant risk of duplicative efforts and expenses on the part of the parties.").  Each of these cases will require resolution of the same jurisdictional issue, which has been raised in a pending motion to dismiss in the AFGE-HUD case, and will be raised in a motion to dismiss in the remaining three cases. If those motions are not granted, then the parties will likely file summary judgment motions to resolve the remaining legal issues in the cases.  A consolidated briefing schedule for these dispositive motions across challenges to the Panel's orders would be the most efficient use of the Court and the parties' time and resources.  *See Chang*, 217 F.R.D. at 265-67 (consolidating cases

to "reduc[e] the possibility of duplicative discovery and []achiev[e] judicial economy in the adjudication of potentially dispositive motions").

Indeed, AALJ appeared as an *amicus* in the AFGE-HUD case, asserting an interest in that case that is **identical** to the claim that it asserts in this case.  (*See Amicus* Brief of AALJ, AFGE-HUD, 20-cv-837 (D.D.C. Nov. 20, 2019), ECF 28.)  The opening paragraph of AALJ's *amicus* brief entitled, "Statement of Interest" reads:

> [The AALJ] . . . has a strong interest in this case because the Court's disposition of the issues presented will profoundly affect the AALJ, as well as many other federal sector labor unions who appear at impasse before the [Panel]. . . . On October 2, 2019, SSA requested the Panel's assistance with the issues certified at impasse and on October 18, 2019, AALJ filed its jurisdictional opposition to the Panel providing the requested assistance as the panel is not constitutionally or statutorily constituted, and is thus a nullity incapable of legally providing the assistance requested.  *Amicus curiae* now seeks to join the Plaintiffs in asserting the Panel is neither constitutionally nor statutorily constituted and wants to ensure these issues central to the Plaintiffs' arguments receive a thorough and comprehensive review by this Court.

(*Id.* at 1.)  When it filed its current action, AALJ indicated that it believes that its newly-filed Complaint is related to the NLRBPA case.  (*See* Notice of Designation of Related Civil Cases, AALJ, 20-cv-1026 (D.D.C. Apr. 21, 2020), ECF 2.)  Similarly, NVAC has admitted that its case is related to the AFGE-HUD case.[3]  (*See* Notice of Designation of Related Civil Cases, NVAC,

---

[3] The Court found that the NLRBPA, NVAC and AFGE-HUD cases were not related and reassigned the cases to judges via random assignment on April 3, 2020.  (Case Reassignment Notice, NVAC, 20-cv-837 (D.D.C.), ECF 5; Case Reassignment Notice NLRBPA, 20-cv-888 (D.D.C.), ECF 28.)  Under Local Rule 40.5, the cases do not necessarily meet the criteria for "related case" treatment: they do not involve common property or the exact same transaction (because each case arises from a different Panel decision).  The standard for consolidation, however, is much broader than that for finding a "related case," allowing cases to be consolidated when they involve a common issue of law, not just fact.  Fed. R. Civ. P. 42(a).  The cases at issue in this consolidation motion *undoubtedly* center around a common issue of law: whether the Panel is constitutionally appointed or not.

20-cv-837 (D.D.C. Mar. 27, 2020), ECF 2.)  Thus, NVAC and AALJ have both admitted that

their cases share common issues of fact and law with AFGE-HUD.

The District of Maryland came to the same conclusion with respect to the NLRBPA case.

In granting Defendants' Motion to Transfer, the Court reasoned:

> The identical appointments clause challenge against the Panel is currently pending
> in the D.C. district court which has yet to rule on dispositive motions.  *See
> American Federation of Government Employees v. Federal Service Impasses
> Panel*, 19-cv-1934-RJL (D.D.C.).  The Panel and FLRA are also defendants in the
> D.C. case. *Id*.  **Accordingly, transfer will not only conserve judicial resources
> by allowing the forum currently wrestling with this important constitutional
> question to address both matters, but will also avoid inconsistent
> determinations.**

*Nat'l Labor Relations Bd. Prof'l Ass'n v. FSIP*, 8:20-cv-00078-PX, 2020 WL 1638410,

at *4 (D. Md. Apr. 2, 2020).

 As each of those cases will turn on the same legal questions, granting Defendants'

Motion to Consolidate will promote judicial efficiency and conserve the time and resources of

this Court and the parties.

 B. <u>Consolidation would avert conflicting mandates that could confuse
the federal-sector labor-management community.</u>

Congress created the Panel as part of a comprehensive administrative scheme to ensure

labor peace between federal agencies and their employees represented by unions.  5 U.S.C.

§ 7119.  The Statute seeks to balance the requirements of an effective and efficient government

and the rights of employees to organize and bargain collectively.  *Id* at § 7101.  The Panel's

ability to resolve impasses that arise in collective bargaining between federal agencies and

unions is an essential part of this system.  Congress created the Panel to resolve impasses without

the need for employee strikes, which are prohibited in the federal government.  124 Cong. Rec.

H. 9640 (daily ed. Sept. 13, 1978) (discussing the effect of the Statute on 5 U.S.C. § 7311 and 18

U.S.C. § 1918 barring striking by federal workers).  In the absence of the Panel, there is no

statutory or other mechanism to resolve federal bargaining impasses.  S. Rep. 95-969, 13, 1978

U.S.C.C.A.N. 2723, 2735 ("Strikes by federal employees are prohibited, bargaining impasses are

resolved through . . . the Federal Services Impasses Panel.").

The lawsuits that Defendants seek to consolidate go to the very heart of whether the

Panel, as presently constituted, can continue to fulfill that essential role.  The public interest in

ensuring that there is a single and definitive answer to the jurisdictional, constitutional and

statutory questions raised in these suits militates strongly in favor of consolidation.  *See Citizens*

*for Responsibility and Ethics in Wash. v. U.S. Dep't of the Treasury*, 13-cv-732 (JDB), 013 WL

12310810, at *1-2 (D.D.C. Sept. 6, 2013) (granting a motion for consolidation to avert

potentially conflicting rulings when "both . . . plaintiffs [sought] declaratory, injunctive, and

mandamus relief," against the same agency); *see also Arnold v. E. Air Lines, Inc.*, 681 F.2d 186,

192-93 (4th Cir. 1982) ("The critical question for the district court in the final analysis was

whether the specific risk of prejudice and possible confusion were overborne by the risk of

inconsistent adjudications of common factual and legal issues."); *U.S. Bank Nat'l Ass'n v.*

*Springfield Prairie Props., LLC*, No. 3:15–cv–3199, 2015 WL 13333510, at *2 (C.D. Ill. Dec. 6,

2015) (granting a motion to consolidate and holding that the interests of justice and judicial

economy were not served by allowing duplicative proceedings before two different judges

because it could produce inconsistent outcomes); *PEMEX Exploración y Producción v. BASF*

*Corp.*, NO. H–10–1997 & NO. H–11–2019, 2011 WL 13134611, at *4 (S.D. Tex. Oct. 4, 2011)

(holding that consolidation would avoid inconsistent rulings on both procedural and substantive

issues of law).

Declining to consolidate these claims would potentially leave the Panel with conflicting

rulings as to its constitutionality, creating chaos and uncertainty and paralyzing the Panel.

Federal bargaining impasses would be left to fester unresolved, imperiling harmonious and constructive labor-management relations throughout the federal government.  Unconsolidated proceedings are additionally likely to prolong not only the various Court proceedings, but also union and agency CBA processes that have already stretched out for several years.  This would leave agencies, unions and the employees they represent without new CBAs, as the Panel's constitutionality is contested in multiple proceedings before multiple judges.

Thus, there is a significant cost in allowing these actions to proceed separately—to the Court, the parties, and ultimately many federal-sector employees.  *Hanson*, 257 F.R.D. at 22 (consolidating cases, *inter alia*, because "it is the court's duty to consider not only the delay that consolidating the cases might cause for the plaintiffs, but also the delay that not consolidating the cases would cause for the defendants and for the court"); *Clayton*, 36 F. Supp. 3d at 94 (holding that the Court also considers "what injury would be suffered by failure to consolidate").

Consolidation would benefit all parties by bringing expedient and definitive resolution to this litigation, and producing a single answer to the common questions of jurisdiction and constitutional law they present.  It would further avert the prejudice that agencies, unions, and the employees that they represent would suffer from inconsistent rulings.  This Court should therefore grant Defendants' motion.

C.     Consolidation will not prejudice the Unions, even to the extent that
       there are minor differences in some of their claims.

Consolidation is appropriate even where, as here, the causes of action raised by the Plaintiffs are not absolutely identical.  That is because consolidated cases still retain their status as individual actions, and the Court can address different causes of action (and arguments) without prejudice or confusion to the parties.  *En Fuego Tobacco Shop LLC v. Food & Drug Admin.*, 356 F. Supp. 3d 1, 11 (D.D.C. 2009) ("The fact that one set of plaintiffs advances

different claims or theories does not, without more, defeat the benefits of a single judge deciding related challenges."); *see also Hall v. Hall*, 138 S. Ct. 1118, 1130-31 (2018) (consolidated cases retain individual causes of action).

In *En Fuego Tobacco*, plaintiffs in two different actions challenged a Food and Drug Administration's ("FDA") rule regarding tobacco product packaging, claiming it was unconstitutional.  356 F. Supp. 3d at 9-10.  However, there were "differences between the claims and theories" asserted in the two actions: the two sets of plaintiffs made different arguments on the constitutional claim, and one advanced a claim that the other set of plaintiffs "deferred."  *Id.* The District Court found that the "differences do not, however, diminish the commonality of the legal issues presented in both cases," and granted consolidation.  *Id.* at 11.

Here, Plaintiffs are each challenging different actions of the Panel: Panel orders resolving a bargaining impasse in AFGE-HUD, NLRBPA, and AALJ, and the Panel's mere assertion of jurisdiction over an impasse in NVAC.  While the NVAC case may raise additional jurisdictional questions, such as whether the suit is incurably premature, these are ultimately part and parcel of the first of the two common question presented in all cases: whether the District Court has jurisdiction to directly review any Panel orders.  *See City of New Orleans v. Sec. Exch. Comm'n*, 137 F.3d 638, 639 (D.C. Cir. 1998) (holding administrative agency discussions are not final where the proceedings are ongoing); *Clayton*, 36 F. Supp. 3d at 93-94 (holding that the parties in consolidated cases retain their individual rights of actions and can advance different arguments even in consolidated cases).

Similarly, the additional claims AFGE-HUD and NVAC raise are derivative of the second common question presented in all cases: whether the Panel is legally and constitutionally constituted.  AFGE-HUD's derivative claims go to the issue of whether the Panel could legally

conduct business with less than seven members.  NVAC's derivative claims focus on whether

Panel member qualifications pass statutory and constitutional muster.  At bottom, all claims in all

four cases relate to whether the Panel, as currently constituted, may legally and constitutionally

carry out the functions Congress assigned to it.

The relief sought by the parties, despite slight differences, also militates in favor of

consolidation.  Each party seeks the same core relief: enjoining the Panel from taking any further

action to resolve impasses between any federal public-sector union and agency until Panel

members are appointed by the President and confirmed by the Senate.  (*See* AFGE-HUD SAC at

12; NVAC Compl. at 18; NLRBPA Compl. ¶ 66; AALJ Compl. at 11.)  Differences in the

various prayers for relief are variants of that central theme.  (*Id.*)

Such minor differences among the complaints do not support continuing four separate

cases that offer slight nuances on the same legal question.  *Judicial Watch, Inc. v. U.S. Dep't of

Energy*, 207 F.R.D. 8, 9 (D.D.C. May 9, 2002) (rejecting the argument that consolidation would

cause prejudice because one plaintiff raised different and broader arguments than the other

plaintiff).  All four cases raise the same basic constitutional challenge to the Panel, and that

question will be decided based on the same factual record regarding the appointment of Panel

members and the same law.  Moreover, all cases are at the same stage of litigation, with

dispositive motions either filed or soon to be filed but not decided.  Consolidation will promote

expeditious resolution of the four cases before the same judge, on the same briefing schedule,

and using the same docket.  Granting the motion is therefore appropriate.

D.    Consolidation will not delay proceedings or cause confusion

Consolidation will neither delay the proceedings or inject confusion into the proceedings.

*See Hanson*, 257 F.R.D. at 22 (rejecting plaintiffs' argument that they could not fully develop

additional arguments in consolidated proceedings); *Owen v. Labor Ready Inc.*, 146 Fed. App.

139, 141 (9th Cir. 2005) (affirming decision to consolidate cases because an unnecessary stay in proceedings, not consolidation, caused delay in that case).  Instead, consolidation will expedite the proceedings and clarify the ultimate decisions reached by the Court.

As described more fully above, differences between the claims can easily be addressed in addition to the common legal questions without creating confusion.  All of these cases are in the same stage of litigation before the Court.  *Cf.* 9 Charles Alan Wright & Arthur R. Miller, *Fed. Practice and Procedure* § 2383 (noting that "the fact that the actions are at different stages of trial preparation does not preclude consolidation automatically.").  The FLRA's motion to dismiss the AFGE-HUD case for lack of jurisdiction is now fully briefed and awaits the Court's decision.[4]  While NLRBPA initially filed suit in the District of Maryland, the case was transferred to this Court, and Defendants' response to the Complaint is due April 30, 2020.  (*See* Minute Order granting Unopposed Mot. for Extension of Time, NLRBPA, 20-cv-888 (D.D.C. Apr. 9, 2020), ECF 29).  NVAC filed its Complaint on March 27, 2020, and Defendants' response to the Complaint is due June 5, 2020.  (*See generally* NVAC Compl.; Return of Service of Affidavit and Complaint, NVAC, 20-cv-837 (D.D.C. April 20, 2020), ECF 9.)  Finally, AALJ filed its Complaint on April 21, 2020, and Defendants' response is due June 22, 2020.  (*See generally* AALJ Compl.)

Consolidation would expedite dispositive motions in NVAC and AALJ and (if the cases are not dismissed) any further proceedings on the Appointments Clause challenge, as well.  *Nat'l Ass'n of Mortg. Brokers v. Bd. of Governors of the Fed. Reserve Sys.*, 770 F. Supp. 2d 283, 287

---

[4] (*See* Mot. to Dismiss for Lack of Jurisdiction, AFGE-HUD, 19-cv-01934 (D.D.C. Oct. 11, 2019) ECF 20); Mem. in Opp'n, (Nov. 1, 2019), ECF 22; Reply to Opp'n to Mot. (Dec. 4, 2019), ECF 32.)

(D.D.C. 2011) ("*NAMB*") ("Moreover, both cases are in the same procedural posture and stage of litigation. . . . Under the circumstances, the Court finds that the gains in terms of convenience, efficiency, prompt resolution of demands for injunctive relief, and reduced burdens on the time and resources of both the Court and the litigants militate strongly in favor of consolidation.").

Consolidated proceedings would also be more expeditious.  In *NAMB*, though the plaintiff "argue[d] that its 'members are being immediately and irreparably harmed with each passing day and [plaintiff] cannot wait until the end of the month to be heard on its motion for a temporary restraining order," the Court rejected this argument as a ground for denying consolidation.  770 F. Supp. 2d at 287.  It noted that, because both parties raised the same statutory challenges, "[b]oth actions will be based upon the same administrative record and much of the same law."  *Id*.  "Thus, consolidation will promote the interests of judicial economy, consistency, timeliness and convenience, without being likely to trigger any substantial risk of inconvenience, prejudice, delay or expense for the Court or the litigants."  *Id*.  "Moreover, both cases are in the same procedural posture and stage of litigation, with requests from both plaintiffs for issuance of a temporary restraining order and preliminary injunctive relief."  *Id*.

In addition, Defendants are all federal agencies or an individual sued in his official capacity, and there is thus no risk of confusion in consolidation of these actions.  *Clayton*, 36 F. Supp. 3d at 93-94; *Judicial Watch*, 207 F.R.D. at 9.  For the three common defendants (the Panel, the Authority, and Panel Chairman Carter), as well as the labor-management community as a whole, consolidation is essential to protect against prolonged proceedings and potentially inconsistent rulings interfering with the Panel's crucial role in settling bargaining impasses in the federal sector.

These cases stand in stark contrast to cases where the Court has rejected consolidation because it would create confusion and hinder the Court's resolution of common issues.  In *Singh*, the Court ultimately rejected consolidation because the plaintiffs were in very different positions that rendered the legal questions in each case dissimilar.  185 F. Supp. 3d at 25-26.  While all of the plaintiffs in *Singh* were individuals seeking exceptions to the U.S. Army's personal grooming standards because they were practicing Sikhs who wanted to wear a turban and beard, their positions within the Army differed in an outcome-determinative way.  *Id.*  Singh was a graduate of West Point, a commissioned officer, and already assigned to a combat-ready unit.  *Id.*  In addition, Singh sought a permanent, not merely temporary, exemption from the standards, and the Army raised concerns that both Singh's beard and turban would interfere with safety equipment he was required to wear in the event his unit was deployed.  *Id.*  The other plaintiffs, by contrast, were still in in the process of induction into various National Guard units, and some held non-combat roles.  *Id.*  The Court found that these distinctions would frustrate review of these cases as raising common legal issues in consolidated proceedings.  *Id.*

In the instant case, by contrast, all the Unions seek to have the District Court directly review an order by the Panel and enjoin the Panel from taking any further action to resolve bargaining impasses until Panel members are appointed by the President with the advice and consent of the Senate.  (*See* NVAC SAC at 22; NVAC Compl. at 18; NLRBPA Compl. at ¶ 66; AALJ Compl. at 11).  The Court's determination as to whether it has jurisdiction or not over the constitutional questions, and its potential resolution of those constitutional questions, will vary little based on the specific Panel orders the Unions challenge.  Thus, consolidation will enhance the efficient disposition of each case without delay or confusion of the issues.  *See Hanson*, 257 F.R.D. at 22; *Judicial Watch, Inc.*, 207 F.R.D. at 9.

## **<u>CONCLUSION</u>**

For the foregoing reasons, Defendants respectfully request that the Court grant their

motion to consolidate the AFGE-HUD (19-cv-1934-RJL); NVAC (20-cv-837-CJN); NLRBPA

(20-cv-888-ABJ); and AALJ (20-cv-1026-ABJ) cases pursuant to Federal Rule of Civil

Procedure 42(a).

Respectfully submitted,

/s/ Noah Peters
NOAH PETERS (#1023748)
Solicitor

REBECCA J. OSBORNE
Deputy Solicitor

SARAH C. BLACKADAR
Attorney

Federal Labor Relations Authority
1400 K Street, NW
Washington, D.C. 20424
Telephone: (202) 218-7999
Facsimile: (202) 343-1007
Email: npeters@flra.gov

Dated: April 27, 2020

**CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of April 2020, I electronically filed the foregoing

with the Clerk of the Court for the United States District Court for the District of Columbia by

using the CM/ECF system.  I also certify that the foregoing document is being served on counsel

of record and that service will be accomplished by the CM/ECF system.

/s/ Noah Peters
NOAH PETERS (#1023748)
Solicitor
Federal Labor Relations Authority
1400 K Street, NW
Washington, DC  20424
Telephone: (202) 218-7908
Email: npeters@flra.gov

26