# Exhibit A

```
1              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLUMBIA
2

3       ASSOCIATION OF ADMINISTRATIVE    )
        LAW JUDGES, INTERNATIONAL        )
4       FEDERATION OF PROFESSIONAL       ) Civil Action
        AND TECHNICAL ENGINEERS,         ) No. 20-cv-1026
5       AFL-CIO,                         )
                                         ) Telephone Scheduling
6                       Plaintiffs,      ) Conference
                                         )
7       vs.                              ) Washington, DC
                                         ) April 28, 2020
8       FEDERAL SERVICE IMPASSES         ) Time:  3:30 p.m.
        PANEL, ET AL.,                   )
9                                        )
                        Defendants.      )
10      _____

11         TRANSCRIPT OF TELEPHONE SCHEDULING CONFERENCE
                          HELD BEFORE
12          THE HONORABLE JUDGE AMY BERMAN JACKSON
                  UNITED STATES DISTRICT JUDGE
13      _____

14                     A P P E A R A N C E S

15      For Plaintiffs:    Deepak Gupta
                           GUPTA WESSLER PLLC
16                         1900 L Street, NW
                           Suite 312
17                         Washington, DC 20036
                           (202) 888-1741
18                         Email: Deepak@guptawessler.com

19                         Neil Sawhney
                           GUPTA WESSLER PLLC
20                         100 Pine Street
                           Suite 1250
21                         San Francisco, CA 94111
                           415-573-0336
22                         Email: Neil@guptawessler.com

23                         Matthew Wessler PLLC
                           GUPTA WESSLER PLLC
24                         1035 Cambridge Street, Suite One
                           Cambridge, MA 02141 (617) 286-2392
25                         Email:  Matt@guptawessler.com
```

```
 1     For Defendants:        Noah Barnett Peters
                              Rebecca Jean Osborne
 2                            Sarah Catherine Blackadar
                              FEDERAL LABOR RELATIONS AUTHORITY
 3                            1400 K Street, NW
                              Suite 300
 4                            Washington, DC 20424
                              (202) 218-7908
 5                            Email: Npeters@flra.gov
                              Email: Rosborne@flra.gov
 6
       Also appearing:        Kyla Snow
 7                            Christopher Hall

 8     _____

       Court Reporter:           Janice E. Dickman, RMR, CRR, CRC
 9                               Official Court Reporter
                                 United States Courthouse, Room 6523
10                               333 Constitution Avenue, NW
                                 Washington, DC  20001
11                               202-354-3267

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          THE COURTROOM DEPUTY:  Good afternoon, Judge, ladies

2   and gentlemen.  This is civil action No. 20-1026.  Association

3   of Administrative Law Judges, International Federation of

4   Professional and Technical Engineers, AFL-CIO and the federal

5   service impasses panel et al.

6          Will speaking counsel for the plaintiffs please

7   identify himself and his colleagues for the record.

8          MR. GUPTA:  Good afternoon, Your Honor.  This is

9   Deepak Gupta for the Association of Administrative Law Judges.

10  And I'm joined on the call by my colleagues Matt Wessler and

11  Neil Sawhney.

12         THE COURTROOM DEPUTY:  Would counsel for the

13  defendants identify himself and his colleagues for the record.

14         MR. PETERS:  Yes.  This is Noah Peters, as well as

15  Rebecca Osborne and Sarah Blackadar on behalf of the Federal

16  Services Impasses Panel and Chairman Carter.

17         THE COURTROOM DEPUTY:  Will counsel for the interest

18  of the Social Security Administration identify themselves for

19  the record and their colleague?

20         Hello?

21         MS. SNOW:  Sorry.  I was on mute.  This is Kyla Snow

22  with Christopher Hall from the Department of Justice for SSA.

23         THE COURTROOM DEPUTY:  That's everybody, Your Honor.

24         THE COURT:  All right.  Thank you.

25         Good afternoon, everyone.  As far as I can tell from

1     the docket, this is still my case and I'm trying to come up

2     with a rational schedule to go forward that enables us to vet

3     all the issues that we have to vet.

4          So, the first question would be whether the

5     Department of Justice has an answer to the question as to

6     whether the Social Security Administration is willing to delay

7     implementation of the newly approved contract while we rule on

8     the challenge to the agency's constitution?

9          MS. SNOW:  Yes, Your Honor, we do.  We have the

10    answer on that.  So, SSA is agreeable to holding off on the

11    implementation of the nine articles in the contract that are

12    the subject of the panel decision in this case and the decision

13    which SSA had planned to implement on May 5th.  So, SSA is

14    willing to hold off implementation of those articles from the

15    panel decision.

16          And I just want to clarify and make sure the parties

17    are all on the same page, that these nine articles of the panel

18    decision are distinct from another 20 articles in the contract

19    that the parties had agreed to before the other nine articles

20    went to the panel.  And so those 20 articles that the parties

21    had agreed to them are not submitted to the panel and,

22    therefore, are not implicated by the panel's order or this case

23    at all.

24          Those 20 articles are still teed up for potential

25    union ratification by May 4th.  And if that doesn't happen,

1  then, you know, further negotiations -- or, further proceedings

2  on those 20 articles.  And SSA would like to move forward with

3  their original plans.  You know, they want to move forward with

4  those articles because they are not at issue in this case.

5          But, again, SSA will agree to hold off on

6  implementing the articles that are subject to the panel

7  decision.

8          But I also would like to just express SSA's concern

9  with how long it would be withholding implementation.  So when

10  we spoke with them, you know, that was one of their main

11  concerns, that right now they would be willing to withhold

12  implementation of those articles until, you know, perhaps, you

13  know, around the end of May or so, depending on what, you know,

14  the parties can agree to and what kind of briefing schedule is

15  set.

16          But that's kind of, you know, the timeframe that they

17  would have in mind that they would be willing to -- that

18  they've communicated to us that they're willing to agree to at

19  this time.

20          THE COURT:  All right.  Well, I think it's going to

21  be hard to guarantee when the matter is going to be ruled on

22  and it's hard to imagine the two-step briefing process that the

23  defense favored yesterday if we're going to try to meet that

24  kind of schedule for expedition.  And I think it may make

25  sense, in any event, to brief the constitutional question, as

1    well as the jurisdictional question, having looked very

2    cursorily at what the nature of the jurisdictional objection

3    is, which, as I understand it, is the statutory bar on judicial

4    review of panel decisions, which is not what I think I'm being

5    asked to do here.

6         But before we get to that -- I'm not going to

7    prejudge anything -- do the plaintiffs agree that the only

8    aspect of the contract are the nine articles that were

9    submitted to the panel and that nothing that was not submitted

10   to the panel -- that anything that was not submitted to the

11   panel isn't implicated by this lawsuit?

12        MR. GUPTA:  Thank you, Your Honor.  Actually, we do

13   think it's a little bit -- unfortunately -- I was hoping that

14   we would just be able to tell you we have -- the parties are on

15   exactly the same page.  I didn't get a chance to speak to DOJ

16   before this call, but I did speak to counsel for FSIP and I

17   thought we were all on the same page.

18        I think -- here's -- so Your Honor is clear, what the

19   Social Security Administration was planning to do next week was

20   to do two things:  To have a ratification vote on Monday, and

21   ratification votes on CPAs are typically for an entire CPA.

22   And there's, you know, a great deal of uncertainty in those

23   cases.  Where there's an uncertainty about whether the panel's

24   decision is implemented, that can't be undone.  And then the

25   very next day, what the panel was going to do was to

1    unilaterally impose the articles that were imposed by -- sorry,

2    what the SSA was planning to do was impose the articles imposed

3    by the panel.

4            And so what I was hoping I would hear from SSA is

5    that they would agree to suspend any implementation of the

6    panel's orders pending the disposition of the preliminary

7    injunctive motion by this Court.  And I think what we thought

8    that would mean is, at a minimum, suspension of the

9    ratification vote on the collective bargaining agreement on

10   Monday and the imposition of the panel-imposed articles on

11   Tuesday.  I'm now hearing that's not what SSA is saying.  And

12   so, you know, I don't know --

13           THE COURT:  I don't even see how what's happening on

14   Monday, even if I granted your TRO in part -- it has nothing to

15   do -- it's not even part of this case.

16           MR. GUPTA:  Well, I mean, we're not asking for relief

17   with respect to the other articles.

18           THE COURT:  Right.

19           MR. GUPTA:  But SSA is moving forward with this

20   ratification vote because of the panel decision, and the two

21   things are happening in sequence with one another.  So I don't

22   know -- I mean, if -- whether you would seek to -- the

23   ratification vote and --

24           THE COURT:  You're going in and out.  I'm only

25   catching every other syllable of what you're saying.

1        MR. GUPTA:  Oh, I'm sorry.  I can try calling in on a

2     different line.

3            (Pause.)

4        MR. GUPTA:  Can you hear me now?

5        THE COURT:  Yes.

6        MR. GUPTA:  I was calling from a landline.  I thought

7     that would be better.  I'm sorry, Judge.

8        THE COURT:  It may have been just that you had

9     something that was cutting you off, some sort of feedback.

10       MR. GUPTA:  Okay.  So, I guess I just -- a question

11    for SSA, whether they can agree that the suspension includes

12    the events on Monday and Tuesday.  But, you know, I don't want

13    to stand in the way of an agreement.  I mean, I'm encouraged

14    that SSA is coming to the Court and agreeing to hold off on

15    implementation of the order.  And I think we also have an

16    agreement -- at least with counsel for FSIP, I haven't talked

17    to SSA -- on the briefing schedule at well.  And I think we

18    would agree that the -- subject, of course, to whatever Your

19    Honor prefers, we would agree to brief the motion under the

20    ordinary procedures under the local rules.

21       THE COURT:  Well, the local rules aren't going to get

22    you close to the schedule that DOJ wants.  And nothing may get

23    you to the schedule that DOJ wants.  But here's what I'm

24    hearing:  You were hoping for the suspension of any

25    implementation of the Collective Bargaining Act, the Monday

1    agreement, the Monday activities over which this Court has not

2    been asked to take jurisdiction and for which no relief is

3    pending in this court.  And so you all, as far as I'm

4    concerned, are free to continue to negotiate and agree among

5    yourselves to do whatever you want to do with respect to that.

6         But with respect to DOJ's representation that the

7    Social Security Administration is willing to agree to hold off

8    on what it was going to do on Tuesday, which is implement the

9    panel decision in this case, that that renders the request for

10   a temporary restraining order moot and we can consolidate the

11   request for preliminary injunction in the complaint with the

12   merits and brief the merits and decide this case, which

13   presents one issue, which is the appointments clause from

14   issue, and that breaks out into two aspects.

15        One is whether I have jurisdiction to hear it.  And,

16   second, is if I do have jurisdiction to hear it, whether the

17   Constitution has something to say about the appointment of the

18   panel members and whether it's been violated in this case.

19        And those seem to be pretty discrete issues.  And I

20   think that consolidating this case with the merits would be

21   a -- panel decision being held in abeyance is exactly the way

22   to move forward.

23        MR. PETERS:  Your Honor, we would prefer -- we spoke

24   before the call with the plaintiff.  We would prefer to go

25   separately with respect to the motion to dismiss or any summary

1    judgment or anything like that.  We would prefer to decide to

2    just set out -- to just brief, now that we have agreement from

3    SSA to hold off implementing the panel's decision until, you

4    know, there's been a ruling on the PI motion, we would feel

5    comfortable, and we spoke with plaintiff's -- we're

6    comfortable --

7           MR. GUPTA:  Hold on.  Hold on.  We don't have an

8    agreement on that.  I mean, I understand that's your position,

9    but we think -- I just want to be clear, I think the procedure

10   that the Court spelled out makes sense to us.

11          MR. PETERS:  We did have a discussion before the call

12   where I said we feel comfortable briefing the PI issue

13   according to the local rules, being given one week.  We're

14   happy to file a response by Friday to the PI motion.  We would

15   prefer to have -- to just proceed on other motions, other

16   issues pursuant to rule, pursuant to the normal rules.

17          We are not comfortable consolidating on the merits at

18   this time.  We would prefer to move with respect to just the

19   preliminary injunction issue.  Now that there's been an

20   agreement -- and this had been our original call on Friday and

21   our original discussion, was a greater briefing schedule on the

22   PI and whether SSA would agree to hold off implementation until

23   such time as the PI issue had been decided.  I'm hearing that

24   SSA is willing to do that.

25          We're happy to file something on Friday and, you

1    know, if the Court needs more time to decide the PI issue.  But

2    we are not comfortable with resolving other issues under a kind

3    of omnibus briefing schedule at this time.  We would prefer to

4    just move forward with briefing the PI on an expedited

5    normal --

6             THE COURT:  Well, wait.  Let me stop you right there.

7    Because what we specifically talked about yesterday was

8    dispositive motion briefing.  We never talked about briefing

9    the PI.  You said you wanted to move for lack of jurisdiction,

10   you wanted a ruling on that before we ruled on the merits of

11   the constitutional question.  You were clear about that.  I

12   talked about consolidation with the merits from the start.  And

13   you didn't say, oh, we just want to brief the PI.  Because what

14   is the difference?  The PI is the irreparable harm and the

15   merits.  We just solved irreparable harm because nothing is

16   about to happen pending my decision on the case.

17            So I don't understand what you're talking about,

18   since yesterday you told me that you wanted to brief a motion

19   to dismiss on jurisdictional grounds.

20            MR. GUPTA:  My apologies if there was any confusion

21   on that.  We were -- we both were prepared to brief the issue

22   and we would prefer to simply brief the PI issue at this time,

23   but not to -- and leave the -- have the normal amount of time,

24   just given the workload in our office right now, and have the

25   normal amount of time for the motion to dismiss for lack of

1   jurisdiction.  You know, we --

2          THE COURT:  What are you going to brief on the PI

3   issue if you're not going to brief my lack of jurisdiction?  I

4   don't have jurisdiction to hear a PI if I don't have

5   jurisdiction.  So what are you going to tell me --

6          MR. GUPTA:  Sure.  We think there are a couple issues

7   here that are a little bit deeper.  First off, I think that

8   whether the -- whether there's jurisdiction to stay a panel

9   ruling when there's specific authority, when the authority

10  itself, the FLRA, which was not named as a party, has the

11  ability to stay panel ruling.  It raises a different issue,

12  whether the Court has the jurisdiction to order the panel and

13  the authority to stay ruling raises additional issues, in

14  addition to the garden variety -- the other jurisdictional

15  issues, under *Thunder Basin* and under other decisions as to

16  whether there's an implied statutory bar.  I think there are

17  other issues as to whether the Court can require the

18  extraordinary remedy of the Court, and in fact requiring FISA

19  to stay its own ruling --

20         THE COURT:  We're not.  I don't understand where

21  that's implicated anymore.  Yesterday you said you didn't want

22  to do that, so I asked the Department of Justice to talk to the

23  Social Security Administration to see if they would be willing

24  to hold up on implementing it while we ruled on this action,

25  and they said yes, as long as it's a reasonable amount of time

1     and we get to this promptly.  And so I had no idea why we would

2     be briefing issues that just became moot, which is my authority

3     to stay things and irreparable harm and all of that.

4          I mean, under Rule 65 I don't need the parties'

5     consent to accelerate the hearing on the merits or the hearing

6     on the PI.  But it seems to me in this case it takes a lot of

7     the hard issues off the table and get to a crisp resolution

8     of -- two crisp legal issues.  And I don't understand -- you're

9     not briefing those issues, it just no longer needs to be

10    discussed.

11         MR. GUPTA:  Your Honor, there's also an issue with --

12    the ALJ previously moved for a stay of the panel asserting

13    jurisdiction before the Fourth Circuit Court of Appeals on it.

14    So the panel first asserted jurisdiction, I believe, in January

15    or February.  SSA moved, filed a petition for review and filed

16    a motion for stay for an injunction before the Fourth Circuit

17    and said, hey, you know, the panel is unconstitutionally

18    appointed.  They're now seeking the same relief here with

19    respect to an injunction, basically saying, you know, the panel

20    should not assert jurisdiction, should, you know, undo its

21    ruling.

22         So I think there's very difficult res judicata issues

23    presented by ALJ asking for the same relief before the Fourth

24    Circuit and also before the authority.  They also moved for a

25    stay before the authority, before the panel issued its ruling.

1    So there's also res judicata issues that are raised by the

2    current request for injunction which has been made now to both

3    the authority and to the Fourth Circuit.

4            THE COURT:  Well, did the Fourth Circuit rule on the

5    constitutional question or just on the authority to enjoin?

6            MR. PETERS:  The Fourth Circuit --

7            MR. GUPTA:  The Fourth Circuit, Your Honor, issued a

8    one-sentence order dismissing for lack of jurisdiction.  So

9    an --

10           MR. PETERS:  The issue was fully briefed before the

11   constitutional issue was briefed.  And the preliminary

12   injunction issue was also briefed.  Irreparable harm was

13   briefed.  All of those issues were fully briefed before the

14   Fourth Circuit.  Issues were also briefed before the authority,

15   which issued a ruling in April -- or, March of 31st, saying --

16   declining to -- or, unanimously declining to enjoin FISA's

17   assertion of jurisdiction.  Once again irreparable harm was

18   briefed and constitutional issues were briefed.  There was no

19   petition for review filed of the authority ruling in that case

20   either.

21           So there are at least two different res judicata

22   issues that are presented by the fact that the ALJ is now

23   making the same request for relief a third time before a

24   different tribunal and there are distinct res judicata issues

25   that are presented by ALJ, essentially asking for a third bite

1    at the apple on that things that have been fully briefed and

2    decided twice, at a minimum.

3              THE COURT:  All right.  Well, you'll tell me that.

4    What, I'm -- I'm looking at the complaint and the complaint

5    asks for three things:  One, declare -- that's not injunctive

6    relief, equitable relief, but it's different -- declare the

7    appointment violates the Appointment clause.  Two, declare that

8    the decision taken by the allegedly illegally,

9    unconstitutionally appointed panel are null and void, in

10   violation of the Constitution.  And, three, enjoin them from,

11   in effect, enforcing the panel's decision.  You know, I'm not

12   sure -- so that's what they're asking for.

13             MR. GUPTA:  Right.  And, Your Honor, we would also

14   suggest that the panel doesn't have the ability to enforce its

15   own ruling.  So the third request for relief doesn't really

16   make sense because the panel --

17             THE COURT:  Right.  But the whole issue that I have

18   to decide, if we get to the merits and past the preliminary

19   injunction, which I didn't think we could even address without

20   the Social Security Administration being part of the case,

21   is -- is this -- does this violate the appointments clause or

22   not?  And do I have jurisdiction to decide the question on

23   whether it violates the appointments clause or not?  Which

24   doesn't have anything to do with the power of the panel, for me

25   to issue injunctive relief.  And I just don't understand why we

1    shouldn't just get to that question.

2             MR. GUPTA:  Well, I think, Your Honor, I think we

3    should -- the merits of -- so, I mean, the request for relief

4    in the preliminary injunction motion is an injunction, and, so,

5    we would -- you know, we understand --

6             THE COURT:  I want to consolidate that with the

7    merits.  I'm not talking about the merits.

8             MS. SNOW:  You Honor --

9             THE COURT:  If you don't do that, then you don't even

10   have to get to all of the factors for a preliminary injunction.

11            It sounds like the lawyer from the Department of

12   Justice wants to say something.  Go ahead.

13            MS. SNOW:  Yes.  This is Kyla from the Department of

14   Justice.  So, we would just emphasize that, you know, no, we're

15   not a party in the case, but, whether this is -- whether the

16   issues are adjudicated on a PI motion or motion to dismiss or

17   however the briefing is received, we -- it's our position that

18   *Thunder Basin* and *AFSCME versus Trump* present pretty clear

19   basis for the Court to decide just truly the jurisdictional

20   question first and that under *Sealco* the Court should determine

21   whether it has jurisdiction over the case before proceeding to

22   the merits.

23            And so, however briefing is -- whatever briefing

24   schedule is set, it makes -- you know, we would urge the Court

25   to address the --

1            THE COURT:  Don't worry, the Court has to decide

2      whether it has jurisdiction before it reaches the merits.

3      That's a given.  The only question is whether you have to brief

4      it.

5            MS. SNOW:  Exactly, yes.  And that is the only point

6      I was trying to make, is that we would -- we would just ask the

7      Court to set briefing on only the jurisdictional issue first,

8      and then set briefing on the merits issue only after resolving

9      the jurisdictional issue.

10           THE COURT:  Well, you understand that there's some

11     disconnect between your wanting my -- this to be over in a

12     month and calling for two rounds of briefing.  As long as you

13     understand that, I'm happy to do what everybody asked me to do

14     yesterday; to take up jurisdiction first and then maybe we

15     never have to take up the merits.  But, there's a little

16     tension between the two positions.  You understand that?

17           MS. SNOW:  Yes.  I understand that.  And, you know,

18     we -- I guess we were hopeful that a briefing schedule on the

19     jurisdictional issue could proceed, you know, fairly quickly

20     and then we could, you know, have further discussions with SSA

21     as the case goes along on holding off implementation of the

22     panel decision, depending on where things are at.

23           THE COURT:  All right.  All I'm saying is it's April

24     28th, so even if the briefing schedule was a week and a week

25     and a week, you're already getting close to the end of May.  So

1    we're going to set a reasonable schedule and we're going to

2    expect the agency to be reasonable.

3              Are you seeking to intervene, or not?

4              MS. SNOW:  So, on that issue I will defer to my

5    colleague, Christopher Hall.

6              MR. HALL:  Thank you, Your Honor.  If I may, just to

7    kind of set the table for this event, SSA learned about this

8    case yesterday.  So they have had literally 24 hours to --

9              THE COURT:  So have I.  That's nobody's excuse

10   anymore.

11             MR. HALL:  Understood, Your Honor.  Understood, Your

12   Honor.  But we're working very hard to get SSA up to speed and

13   get their views on important questions, and so we'll keep

14   working just as hard to get that done as quickly as we possibly

15   can.

16             In terms of whether or not SSA would intervene, I

17   would say a couple of points:  One, intervention would require

18   authorization by the solicitor general, and that, as the Court

19   is probably very familiar with, is not the quickest process in

20   the world.  I would only add to that by saying that, you know,

21   we're just a week or so into the filing of the case.  I'm not

22   even sure, honestly, that the U.S. attorney has even been

23   served with the complaint yet.  I don't think he has been as

24   of -- she has been as of -- the acting attorney has been as of

25   yesterday.  I don't know if that's changed since then, but I

1    think we would definitely need to seek service of process on

2    the U.S. Attorney.

3            But in terms of SSA being involved in the case, I

4    would only say that, you know, plaintiff is still within its

5    window to amend the complaint to add a defendant.  And if the

6    plaintiff wants to do that, we have no basis to object,

7    procedurally speaking.  And that's all I would say.  I mean,

8    we're happy to kind of continue being a nonparty to the case.

9    And in all fairness, I think that might be helpful.  Or if the

10   complaint is amended to add a claim against SSA, we would take

11   the complaint as it is filed and served.

12           THE COURT:  Well, I don't know if they have to be a

13   defendant to seek to intervene.  I'm not asking you to commit

14   to whether you're going to intervene.  It seems that if we were

15   going to have to get to the question of preliminary injunctive

16   relief, they were a necessary party; but they may not be, given

17   the government's willingness to make a representation that

18   they're going to await further litigation before implementing

19   the rule that's being challenged.  That's a representation

20   that's been made to me by a lawyer from the United States of

21   America and so I think they're bound by it.

22           MR. HALL:  That's so, Your Honor, and -- I'm sorry.

23   Please go ahead.

24           THE COURT:  I think the issue is coming up with a

25   rational schedule, but I don't agree that the pleadings I

1      should be seeing can just be in opposition to the preliminary

2      injunction motion.  It seems to me that what I should be seeing

3      would be the motion to dismiss for lack of jurisdiction,

4      opposition and a reply, which is what I thought you said

5      yesterday you wanted anyway.

6           MR. PETERS:  Your Honor, it sounds like -- I don't

7      know that we expressed a -- I mean, you were optimistic that

8      that might be one way forward, but I don't know that we

9      committed to agreeing -- I mean, we would be happy to just do a

10     briefing schedule where we would, you know, file a motion like

11     we did in the other case, and in that case where we filed a

12     motion to dismiss for lack of jurisdiction and then held off a

13     briefing on the merits until jurisdiction was decided.

14          We could do that on a slightly faster schedule.  I

15     mean, we've briefed this issue now.  This has now been, you

16     know, at least the second or third time that ALJ has brought

17     this claim.  We've now briefed it -- we would be happy to brief

18     the jurisdictional issue on a slightly accelerated schedule, if

19     that's what the Court would want; do a two-stage briefing where

20     if the Court finds it has jurisdiction, we reach the merits.  I

21     think -- or, we then do briefing on the merits.  We would be

22     happy to do that.

23          We have -- I have perhaps thought that we could

24     just -- that the preliminary injunction issue could be set on

25     its own briefing schedule, but if the Court would like to go

1    further and do a two-stage process like I described, we would

2    be happy to do that as well.

3         THE COURT:  I think the need for preliminary

4    injunction -- the whole point of the injunctive relief was to

5    stop the implementation of the decision.  So the immediate

6    issue that needed to be dealt with pending the resolution of

7    the merits of the challenge to the constitution of the panel

8    has been rendered moot by the good graces of the Social

9    Security Administration.  And so that changes what we need to

10   do first and second and third.

11        MR. GUPTA:  Your Honor, this is Deepak Gupta for the

12   plaintiffs.  If I may, I think we agree with the Court that

13   consolidation makes sense.  This is a -- both issues, the

14   jurisdictional question and the constitutional question are

15   purely legal questions.  There isn't any need for any fact

16   development.  And we mentioned this in our brief at page 22.

17        This recently came up in another case in the D.D.C.,

18   I believe before Judge Moss, and he did the same thing Your

19   Honor is suggesting, he treated the motion as, in effect, a

20   kind of expedited summary judgment motion because the legal

21   issues were purely legal.  It was also an appointments clause

22   challenge.

23        And I think -- you know, the SSA has said they want

24   this resolved quickly.  I assume that the panel would like this

25   resolved quickly so that there is no cloud over the panel.  So

1      I'm not quite sure what sense it would make to have multiple

2      rounds of briefing --

3              MR. PETERS:  Your Honor, Your Honor, we would like to

4      have two rounds of briefings, as we did in the *AFSCME* case.  We

5      do think that -- we feel strongly that the jurisdictional

6      issues and also the res judicata issues in this case are

7      insurmountable, especially with the ALJ having moved before the

8      authority unsuccessfully for a stay and also having moved

9      before the Fourth Circuit of the stay in this exact same case

10     pretty much, and now trying to have a third bite at the apple.

11             There are many, many -- the jurisdictional issues in

12     this case run even deeper than they do in *AFSCME*.  And we would

13     like to have another round of briefing on jurisdiction and

14     other issues before we go to the merits.

15             THE COURT:  All right.  I'm going to do it in a two-

16     step fashion.  Since -- I don't believe there's any harm to the

17     plaintiffs from that, since it was the Social Security

18     Administration that wanted expedition and it wants the two

19     steps.  I'm with that.  I'm fine with only having to think

20     about one thing at a time.  I have a lot of things to think

21     about.

22             So, when do you want to file your motion to dismiss?

23             MR. PETERS:  We can do it on -- in -- I mean, I think

24     that this might -- well, I mean, we can do it -- how about a

25     week from this Friday?

1          THE COURT:  A week from Friday.  So essentially you

2     need two weeks to do this thing that you've already done three

3     times before?

4          MR. PETERS:  I mean, that's what -- I mean, it's a

5     pretty -- we would ordinarily have two months to do this, so --

6     under the rules.  But --

7          THE COURT:  All right.

8          MR. PETERS:  I think two weeks is a pretty expedited

9     schedule for us filing this motion.  We could do it on May 8th.

10          THE COURT:  All right.  When does the plaintiff want

11     to respond?  You need two weeks to reply?

12          MR. GUPTA:  No.  I mean, Your Honor, I just want to

13     be clear that this panel has studiously avoided saying anything

14     about the merits anywhere, and the jurisdictional issue is not

15     complex and we do not need very much time to reply to it.  We

16     really think, you know, what we need is to move quickly to the

17     merits.  And so maybe --

18          THE COURT:  There's no -- the clock is not ticking

19     anymore for you.  So you can be working on it --

20          MR. GUPTA:  Okay.

21          THE COURT:  -- in the meantime.

22          MR. GUPTA:  Okay.  We've already filed what we need

23     to file on the merits.  We don't need to file anything more.

24     So we would ask -- and if you need us to file something, we can

25     do this.  We would like our motion, just to be clear, to be

1    construed as an expedited summary judgment motion.  And so that

2    motion has been filed already and now it's up to the government

3    to decide when they want to oppose it.  We don't need to file

4    anything new.  And, you know, we can reply very, very quickly.

5    We feel quite confident about the merits.  And, like, I think

6    ultimately this is all going to end up in the D.C. Circuit and

7    it's a purely legal question.  So I'm not sure why it's in the

8    interest of the government to delay the inevitable.

9            THE COURT:  All right.  Well, I guess res judicata

10   issues are new.  I think I've heard enough from everybody and

11   I'm going to issue an order with a schedule.  I think some of

12   this briefing can be overlapping so that we have everything we

13   need, even if we don't end up needing it.  But we'll start with

14   the jurisdictional question and if the government wants to have

15   until May 8th, it can have until May 8th now that it has

16   accommodated my request to hold off on moving forward with the

17   new contract.

18           So, rather than hearing argument on a schedule for

19   another half an hour, I'm going to issue one.  But I hear what

20   everybody is saying and I'm going to try to do it quickly, but

21   not so quickly that it's not well done.

22           MR. GUPTA:  Your Honor, can I just ask one clarifying

23   question, if you don't mind?

24           THE COURT:  Yes.

25           MR. GUPTA:  If it would be helpful for us to file a

1    piece of paper that re-characterizes the motion we have already

2    filed as an expedited summary judgment?

3                    THE COURT:  No.  No.  I can do that.

4                    MR. GUPTA:  Okay, okay.

5                    THE COURT:  I don't want any more unsolicited pieces

6    of paper.  And I believe that your motion to expedite is moot,

7    given what we've done today.  I'm not even sure the rule

8    applies to this situation.  It looks like it applies to TROs

9    that are issued without notice.

10                   But in any event, I will issue an order giving

11   everybody a schedule, and anybody who wants to file something

12   before it's due is welcome do that, and anybody who needs an

13   extension is welcome to ask for one.

14                   MR. PETERS:  Thank you, Your Honor.

15                   THE COURT:  All right.  Thank you, everybody.

16                   MS. SNOW:  Thank you.

17                              *   *   *

18

19

20

21

22

23

24

25

1

2                  CERTIFICATE OF OFFICIAL COURT REPORTER

3

4        I, JANICE DICKMAN, do hereby certify that the above and

5    foregoing constitutes a true and accurate transcript of my

6    stenographic notes and is a full, true and complete transcript

7    of the proceedings to the best of my ability.*

8                       Dated this 29th day of April, 2020

9

10

11                      _____

12                      Janice E. Dickman, CRR, CMR, CCR
                        Official Court Reporter
13                      Room 6523
                        333 Constitution Avenue, N.W.
14                      Washington, D.C.  20001

15    *This hearing occurred during the COVID-19 pandemic and is
      subject to the limitations of technology of remote reporting.
16

17

18

19

20

21

22

23

24

25