IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ASSOCIATION OF ADMINISTRATIVE
LAW JUDGES,

*Plaintiff,*

v.

FEDERAL SERVICE IMPASSES PANEL,
and MARK ANTHONY CARTER, in his
official capacity as Chairman of the Federal
Service Impasses Panel,

*Defendants.*

Case No. 1:20-cv-01026-ABJ

The Honorable Amy Berman Jackson

**ASSOCIATION OF ADMINISTRATIVE LAW JUDGES'
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

MATTHEW W.H. WESSLER
GUPTA WESSLER PLLC
1035 Cambridge Street, Suite One
Cambridge, MA 02141
(617) 286-2392
matt@guptawessler.com

DEEPAK GUPTA
GUPTA WESSLER PLLC
1900 L Street, NW, Suite 312
Washington, DC 20036
(202) 888-1741
deepak@guptawessler.com

NEIL K. SAWHNEY
GUPTA WESSLER PLLC
100 Pine Street, Suite 1250
San Francisco, CA 94111
(415) 573-0336
neil@guptawessler.com

*Counsel for Plaintiff*

May 11, 2020

# TABLE OF CONTENTS

Table of authorities ...................................................................................................................... ii

Introduction ................................................................................................................................. 1

Argument ..................................................................................................................................... 2

      I.      Under binding D.C. Circuit precedent, district courts have jurisdiction over claims challenging the Panel's authority, as opposed to the merits of the Panel's decisions. ............................................................................................................. 2

            A.     *National Air II* controls this case. ..................................................................... 3

            B.     Cases involving statutory challenges to the merits of specific Panel decisions do not bear on the Court's jurisdiction here. ................................. 5

      II.     As in *Free Enterprise*, the statutory scheme here offers the Association no meaningful judicial review of its Appointments Clause claim. ............................... 8

      III.    Accepting the government's position—and thereby effectively preventing the Association from having its constitutional challenge heard in *any* judicial forum—would raise serious constitutional problems. ............................................ 12

Conclusion .................................................................................................................................. 14

## TABLE OF AUTHORITIES

**Cases**

*Allen v. Milas,*
  896 F.3d 1094 (9th Cir. 2018) .................................................................................................... 14

*American Federation of Government Employees v. Federal Labor Relations Authority,*
  593 F. Supp. 1203 (D.D.C. 1984) ................................................................................................ 6

*American Federation of Government Employees v. Trump,*
  929 F.3d 748 (D.C. Cir. 2019) .................................................................................................... 7

*Association of American Railroads v. U.S. Department of Transportation,*
  821 F.3d 19 (D.C. Cir. 2016) ...................................................................................................... 1

*Bennett v. Securities and Exchange Commission,*
  844 F.3d 174 (4th Cir. 2016) ................................................................................................. 8, 11

*Bowen v. Michigan Academy of Family Physicians,*
  476 U.S. 667 (1986) ................................................................................................................... 13

*Council of Prison Locals v. Brewer,*
  735 F.2d 1497 (D.C. Cir. 1984) ............................................................................................ 1, 5, 6

*Davis v. Passman,*
  442 U.S. 228 (1979) ................................................................................................................... 13

*Elgin v. Department of Treasury,*
  567 U.S. 1 (2012) ....................................................................................................................... 10

*Estep v. United States,*
  327 U.S. 114 (1946) ................................................................................................................... 13

* *Free Enterprise Fund v. Public Company Accounting Oversight Board,*
  561 U.S. 477 (2010) ................................................................................................................. 1, 8

*Griffith v. Federal Labor Relations Authority,*
  842 F.2d 487 (D.C. Cir. 1988) .................................................................................................... 14

*Hill v. Securities and Exchange Commissions,*
  825 F.3d 1236 (11th Cir. 2016) .................................................................................................. 11

*Jarkesy v. Securities and Exchange Commission,*
  803 F.3d 9 (D.C. Cir. 2015) ............................................................................................... 9, 11, 12

*Lincoln v. Vigil,*
  508 U.S. 182 (1993) ........................................................................................ 14

*National Air Traffic Controllers Association v. Federal Service Impasses Panel,*
  2005 WL 418016 (D.D.C. Feb. 22, 2005) ...................................................... 7

\* *National Air Traffic Controllers Association v. Federal Service Impasses Panel,*
  606 F.3d 780 (D.C. Cir. 2010) ............................................................... *passim*

*National Air Traffic Controllers Association AFL-CIO v. Federal Service Impasses Panel,*
  437 F.3d 1256 (D.C. Cir. 2006) ..................................................... 5, 6, 7

*Thunder Basin Coal Co. v. Reich,*
  510 U.S. 200 (1994) ..................................................................................... 13

*Tilton v. Securities and Exchange Commission,*
  824 F.3d 276 (2d Cir. 2016) ........................................................................ 11

*Turgeon v. Federal Labor Relations Authority,*
  677 F.2d 937 (D.C. Cir. 1982) ...................................................................... 8

*U.S. Department of Treasury, U.S. Customs Service, v. Federal Labor Relations Authority,*
  43 F.3d 682 (D.C. Cir. 1994) ........................................................................ 9

\* *Webster v. Doe,*
  486 U.S. 592 (1988) ............................................................................. 2, 13, 14

**Statutes and Regulations**

5 U.S.C. § 7103(9) .............................................................................................. 9

5 U.S.C. § 7116(a) .............................................................................................. 9

5 U.S.C. § 7118(a) .............................................................................................. 9

5 U.S.C. § 7119(5)(C) ........................................................................................ 9

5 U.S.C. § 7119(c) .............................................................................................. 1

5 U.S.C. § 7123(a) ............................................................................................ 10

**Articles**

Laurence H. Tribe, *Jurisdictional Gerrymandering: Zoning Disfavored Rights Out of the Federal Courts,*
  16 Harv. C.R.-C.L. L. Rev. 129 (1981) ...................................................... 13

Richard H. Fallon, Jr., *Some Confusions About Due Process, Judicial Review, and Constitutional Remedies,*
  93 Colum. L. Rev. 309 (1993) ..................................................................... 13

## INTRODUCTION

Though it may not be as well known as other agencies, the Federal Service Impasses Panel wields significant, unchecked power over more than a million federal workers. The Panel is empowered to "take whatever action is necessary" to resolve impasses between unions and federal agencies, including imposing binding contract provisions on them. 5 U.S.C. § 7119(c). Its members are not directed or supervised by other federal officers. And its decisions are final and unreviewable—there "is no provision for [judicial] review of Panel orders, and Panel orders are not appealable even to the [Federal Labor Relations] Authority." *Council of Prison Locals v. Brewer*, 735 F.2d 1497, 1499 (D.C. Cir. 1984). Yet none of the Panel's ten members were confirmed by the Senate. The D.C. Circuit has held that even an arbitrator with more circumscribed authority, "called upon to resolve [] impasse[s]" on a narrower set of disputes, must be confirmed by the Senate because his decisions are both binding and unreviewable. *Ass'n of Am. Railroads v. U.S. Dep't of Transp.*, 821 F.3d 19, 37 (D.C. Cir. 2016). The constitutional defect here is far more apparent.

Yet the government contends that this Court may not even consider the Association's straightforward constitutional challenge to the Panel's authority. That sweeping position flouts binding precedent. In *National Air Traffic Controllers Association v. Federal Service Impasses Panel*, the D.C. Circuit held that district courts have jurisdiction over claims challenging the Panel's authority, so long as they do "not entail reviewing a decision of the Panel." 606 F.3d 780, 787 (D.C. Cir. 2010) ("*National Air II*"). And, in *Free Enterprise Fund v. Public Company Accounting Oversight Board*, the Supreme Court held that district courts properly exercise jurisdiction where a statutory-review scheme doesn't allow a party to "meaningfully pursue" its Appointments Clause claim against an agency body. 561 U.S. 477, 490 (2010). These two cases, both independently and together, make clear that this Court may hear the Association's constitutional claim.

In its motion to dismiss, the government brushes aside these two controlling precedents as based on "factors largely specific to the plaintiffs and the schematic particulars involved." Mot. to Dismiss 4. Translated into plain English, this seems to be a plea to limit the cases to their facts. That is not an appropriate response to binding but inconvenient precedent. In a sleight of hand, the government also invokes several cases barring jurisdiction over statutory challenges to the merits of specific Panel decisions. But those cases are far removed from this one, which raises a single Appointments Clause challenge and seeks no judicial review of any Panel order.

Accepting the government's position would impermissibly authorize the government to "strip the court of jurisdiction over issues concerning the reach of the FSIP's authority." *National Air II*, 606 F.3d at 788. Indeed, it would go beyond that—it would allow the government to prevent *any* Article III court from ever hearing a constitutional challenge to the Panel's authority. To "deny any judicial forum for a colorable constitutional claim" would itself raise "serious constitutional question[s]" that are best avoided. *Webster v. Doe*, 486 U.S. 592, 603 (1988).

## ARGUMENT

## I.     Under binding D.C. Circuit precedent, district courts have jurisdiction over claims challenging the Panel's authority, as opposed to the merits of the Panel's decisions.

This Court has already identified the distinction that disposes of the government's motion—the distinction between judicial review of a Panel decision, which is barred by statute, and declaratory relief with respect to the Panel's authority, which isn't. *See* Apr. 28 Hearing Tr. (ECF 13-1), at 6 (describing "the nature of the jurisdictional objection, which, as I understand it, is the statutory bar on judicial review of Panel decisions, which is not what I think I'm being asked to do here"). Without once acknowledging this distinction, the government devotes nearly 40 pages to obscuring it. Because the Association does not seek judicial review of any Panel decision or action, almost everything the government says ends up being beside the point.

A.   *National Air II* **controls this case.**

The government is right that "controlling authority" from the D.C. Circuit answers the specific jurisdictional question here. Mot. 11. But it identifies the wrong authority. In *National Air II*, the D.C. Circuit held that district courts may properly exercise jurisdiction over actions against the Impasses Panel, like this one, that do "not entail reviewing a decision of the Panel." 606 F.3d at 787. The government offers just two paragraphs (at 14–15) on *National Air II*, in which it seeks to cabin the decision to its facts. But the government never actually confronts the D.C. Circuit's holding or the analysis supporting that holding. It is worth focusing on both.

In *National Air II*, as here, "[t]he Union argue[d] that the district court has subject matter jurisdiction because it is seeking a declaratory judgment rather than review" of a decision of the Federal Service Impasses Panel. 606 F.3d at 786. And there, as here, the government "contend[ed] the court does not have jurisdiction because the Union is seeking review of just such a decision, review of which is precluded by a specific statute." *Id.* So the question was how to properly characterize the union's challenge: Did it seek review of a Panel decision? It was common ground there, as it is here, that "the district court lacks jurisdiction to review *decisions* of the FSIP." 606 F.3d at 787 (emphasis added). But, crucially, the D.C. Circuit explained, "the complaint in this case does not ask the court to review [any] of those decisions." *Id.* Unlike a prior case in which the union had complained that a particular Panel decision had violated specific statutory provisions, the complaint before the court sought a declaration concerning the Panel's authority as a general matter. Issuing the requested declaration, the Court explained, "would not require the district court to review the decision of the FSIP." *Id.*

So too here. The Association's lone constitutional claim alleges only that the Panel members were appointed in violation of the Appointments Clause. The Court need not review a single word of the Panel's decision to resolve that claim. And here, as in *National Air II*, the Panel

did not even "reach, let alone answer, the question" before the Court. *Id.*; *see* ECF 5-12 at 2 n.2. "Because the Union does not seek review of a decision of [the FSIP]," the D.C Circuit held, "the district court erred in dismissing the case for lack of jurisdiction." *National Air II*, 606 F.3d at 787. That holding is fatal to the government's motion to dismiss.

The government's only answer to *National Air II* is to suggest, based on the facts and procedural history of that case, that all of the D.C. Circuit's reasoning would have been inapplicable if the union had sought the same declaratory judgment "in the context of an ongoing labor dispute." Mot. 14.[1] But this invented limiting principle—the government repeats the phrase "ongoing labor dispute" four times in the course of this discussion—appears nowhere in the D.C Circuit's decision. Instead, the court's analysis turned more precisely on whether the complaint there was seeking judicial review of a Panel decision or action. Because the complaint there, as here, "would not require the district court to review the decision of the FSIP," 606 F.3d at 787, the court found the statutory bar on judicial review of Panel decisions inapplicable.[2]

Nor does the government even acknowledge the next part of *National Air II*'s analysis, which rejects a key proposition that the Panel continues to advance here: that "any question about the jurisdiction of FSIP—even one that does not entail reviewing a decision of the Panel—[must] be submitted to the FLRA in the garb of an unfair labor practice charge and resolved by the FLRA before a court may consider it." *Id.* To the contrary, the D.C. Circuit found no "reason to believe

---

[1] There, as here, the complaint sought both declaratory and injunctive relief. "That the Union also seeks an injunction does not alter our analysis of whether it is asking the district court to review an unreviewable decision," the D.C. Circuit explained, because "the injunction is merely a means by which to enforce the requested declaratory judgment." *National Air II*, 606 F.3d at 787 n.**.

[2] In any event, the government's assertion (at 14) that the complaint in *National Air II* involved no "ongoing labor dispute" distorts the facts. Although the union did ultimately settle its dispute through mediation, it did so only *after* it filed its lawsuit in district court. *See* 606 F.3d at 785–86. That the parties had settled their dispute played no part in the D.C. Circuit's analysis.

the Congress intended to keep the courts from ever considering a question about the jurisdiction of the FSIP until the FLRA has passed upon it." *Id.* at 788. "Indeed if every such question had to be framed as an unfair labor practice charge and resolved first by the FLRA, then it would be the General Counsel who, by her exercise of unreviewable discretion not to issue a complaint, could strip the court of jurisdiction over issues concerning the reach of the FSIP's authority." *Id.* "We do not believe," the court continued, that "Congress intended the General Counsel of the FLRA to exercise such control over our jurisdiction." *Id.*

Remarkably, the government spends more than eight pages (at 20–28) attempting to demonstrate the availability of meaningful judicial review—premised on the same speculative pathway the D.C. Circuit rejected—without once mentioning (let alone grappling with) *National Air II*. But, again, that decision is controlling on this point. Here, too, the complaint seeks a declaration "concerning the reach of the FSIP's authority"—albeit on the basis of the U.S. Constitution, not a statute. The government offers no reason why the D.C. Circuit's concern about jurisdiction-stripping in *National Air II* would be any less applicable to a constitutional objection to the very authority of the Panel to act. If anything, the opposite should be true.

## B. Cases involving statutory challenges to the merits of specific Panel decisions do not bear on the Court's jurisdiction here.

Disregarding *National Air II*, the government asserts that "a long, unbroken line of D.C. Circuit authority makes clear that under these circumstances . . . federal district courts lack jurisdiction over challenges brought by federal unions." Mot. 11. But this so-called "long" and "unbroken" line of precedent consists of just two cases: *Council of Prison Locals v. Brewer*, 735 F.2d 1497 (D.C. Cir. 1984), and *National Air Traffic Controllers Association v. Federal Service Impasses Panel*, 437 F.3d 1256 (D.C. Cir. 2006) ("*National Air I*"). Both of these cases, of course, pre-date *National Air II*. More importantly, both cases involved appeals of specific Panel decisions. They therefore shed no light

on whether this Court's jurisdiction is proper over claims, like the Association's Appointments Clause claim, that do not seek review of any Panel decision.

The government places dispositive weight on *Brewer*, asserting (at 12) that it "should control the outcome here." But the union there filed an action to invalidate the Panel's decision fixing contract terms as "arbitrary and not in accordance with law," in part because the Panel had not adequately "articulate[d] reasons or . . . ma[d]e findings" supporting those imposed terms. *Brewer*, 735 F.2d at 1501. In other words, as this Court has already recognized, the "plaintiff union [in *Brewer*] sought *review of the merits of the Panel's decision*." *AFGE v. FLRA*, 593 F. Supp. 1203, 1206 n.7 (D.D.C. 1984) (emphasis added). And in finding that the district court lacked jurisdiction over the action, the D.C. Circuit explained that "the statute gives every reasonable indication that *orders by the Impasses Panel* are final and nonreviewable." *Brewer*, 735 F.2d at 1499 (emphasis added). Thus, the government is simply wrong when it says that "little meaningful difference exists between the facts of Brewer and those in this case," and that this case is in "the same procedural posture." Mot. 12–13. Here, the Association does not challenge the merits of any specific order of the Panel. And that distinction means that *National Air II*, not *Brewer*, controls the jurisdictional inquiry here.[3]

The government's reliance on *National Air I* fares no better. Again, the union's lawsuit there sought to reverse a specific Panel decision finding that the Panel lacked jurisdiction over an impasse between the union and the Federal Aviation Administration. *See* 437 F.3d at 1261–62. As the district court observed, the claims in *National Air I* involved technical analysis of federal-labor law: "the unions essentially raise an 'obligation to bargain' issue, *i.e.*, a question of whether the exact issues

---

[3] The government is also wrong (at 12) when it says that nothing about the Association's "Appointments Clause challenge differentiates its claim from the [statutory] claim raised in *Brewer*." *Brewer* itself observed that the legislative history suggested Congress did not intend to "restrict[] judicial review . . . when constitutional questions were raised." 735 F.2d at 1500.

that led to the impasses constitute 'conditions of employment' within the meaning of 5 U.S.C. § 7102 and under the FAA." *Nat'l Air Traffic Controllers Ass'n v. FSIP*, 2005 WL 418016, at *4 (D.D.C. Feb. 22, 2005), *aff'd sub nom.* 437 F.3d 1256. What's more, the union there appears to have agreed that jurisdiction was only proper under *Leedom v. Kyne*, 358 U.S. 184 (1958), "an extremely limited exception to the nonreviewability of FSIP orders." *National Air I*, 437 F.3d at 1258. Thus, the D.C. Circuit had no occasion in *National Air I* to consider whether the statutory-review scheme bars judicial review of claims that do not challenge the merits of Panel orders. But it did four years later—in *National Air II*. And, as explained above, *National Air II* specifically rejected the government's reading of *National Air I* as too "broad[]."606 F.3d at 787.

Bizarrely, the government lumps in *American Federation of Government Employees v. Trump*, 929 F.3d 748 (D.C. Cir. 2019), with *Brewer* and *National Air I*, characterizing that decision as the D.C. Circuit's "most recent word on the statutory review scheme." Mot. at 15–16. Yet, in that case, several unions sued *the President* alleging that several recent executive orders concerning federal labor relations were unconstitutional and illegal. 929 F.3d at 753–54. Although the government somehow fails to mention it, *AFGE v. Trump* didn't involve the Federal Service Impasses Panel at all. The D.C. Circuit there held only that the Federal Service Labor-Management Relations Statute barred the unions from facially attacking the executive orders, and that they instead had to raise their challenges when the orders' provisions were implemented and therefore raised concrete disputes. *Id.* at 755–58. And *AFGE v. Trump* emphasized that the unions could then seek "direct review in the courts of appeals" under section 7123—a provision that the government itself acknowledges does not provide for review of Panel decisions. 929 F.3d at 752, 757. The government's insinuation (at 15–16) that *AFGE v. Trump* silently overruled *National Air II* without even mentioning the Federal Service Impasses Panel is baseless. In short, *AFGE v. Trump* says nothing about this Court's jurisdiction here.

## II.   As in *Free Enterprise*, the statutory scheme here offers the Association no meaningful judicial review of its Appointments Clause claim.

**1.** *Free Enterprise* provides the same answer to the jurisdictional question as *National Air II*. District courts have jurisdiction where the statutory scheme prevents someone from "meaningfully pursu[ing] their constitutional claims." 561 U.S. at 490. And forcing the person to "*incur* a sanction" just to access judicial review—thereby potentially risking "severe punishment"—does not count as "a 'meaningful' avenue of relief." *Id.* at 490–91. So too here. Still, despite the Supreme Court's clear command, the government insists that the Association can obtain meaningful review by "provoking SSA to file an unfair labor practice charge." Mot. 20–21. As we have already explained, this process is inadequate and speculative, for at least four reasons. *See* ECF 8 at 24–27.

*First*, the Social Security Administration would unilaterally decide whether to file an unfair-labor-practice charge; if it chose not to, the union would have no recourse.

*Second*, even if the SSA were to file a charge, the FLRA's General Counsel has "unreviewable discretion" to issue a complaint, and any decision not to do so cannot be reviewed by any administrative body or court. *Turgeon v. FLRA*, 677 F.2d 937, 940 (D.C. Cir. 1982).

*Third*, the General Counsel position is vacant—and has been so for almost three years.

*Fourth*, and finally, triggering an unfair labor practice would likely expose the Association and its leadership to substantial "penalties for noncompliance." *Bennett v. S.E.C.*, 844 F.3d 174, 186 (4th Cir. 2016). The government repeatedly brushes off these harms, asserting that at most that the Association might receive a cease-and-desist order. *See* Mot. 26–27. But the Association has already detailed the significant and irreparable consequences for the union and its members that will ensue in short order if this Court denies jurisdiction—consequences that will "effectively shut down" the union's operations. *See* ECF 8 at 31–35; ECF 5-14. If the Association's leadership were to refuse to comply with the Panel's restrictions—for example, by using more "official time" than the order

allows—it would risk discipline and even termination of its leaders, compounding the existential threat to the union. Despite the government's nonchalance, its position requires the Association to "'bet the farm' by subjecting [it]self to unnecessary sanction" to obtain the chance for review. *Jarkesy v. S.E.C.*, 803 F.3d 9, 20 (D.C. Cir. 2015). And that opportunity for review is even more speculative here than in *Free Enterprise*, because the SSA and the FLRA retain total control over the process.

The government's other hypothesized "mechanisms" for review are even further afield. The government speculates (at 21) that the Association itself could file an unfair-labor-practice charge against the Social Security Administration for implementing the Panel's order. But the statute simply does not allow a union to raise a constitutional challenge to the Panel's composition as an unfair labor practice. *See* 5 U.S.C. § 7116(a). Indeed, the SSA is *required* by law to impose the Panel's contract terms, which are binding on both parties. *See id.* §§ 7116(a)(6), 7119(5)(C). How could the Association claim that the SSA's compliance with the statute constitutes an unfair labor practice? And how would such a claim relate to the Appointments Clause? And even if the Association could bring such a claim, the decision whether to ultimately file a complaint remains with the General Counsel (who, of course, doesn't exist). The government does not—and cannot— explain how any General Counsel could determine that the Association's Appointments Clause challenge "state[s] an unfair labor practice" under the statute. *Id.* § 7118(a)(1).

The government's suggestion (at 21–22) that the Association raise its Appointments Clause claim in a grievance is the most absurd. Under the statute, a union can only file grievances about "matter[s] relating to the employment of any employee," "the effect or interpretation . . . of a collective bargaining agreement," or a violation of law "affecting conditions of employment." 5 U.S.C. § 7103(9)(B), (C). The statute simply does not permit challenging the constitutionality of the Panel's composition through a grievance. *See U.S. Dep't of Treasury, U.S. Customs Serv. v. FLRA* 43

9

F.3d 682, 689 (D.C. Cir. 1994) ("Congress obviously assumed . . . that an arbitrator would never have occasion to interpret a law that did not affect working conditions."). Further, as the government explains, the grievance procedures are set out "in the parties' existing collective bargaining agreement." Mot. 8. But the Panel is obviously not a party to the collective-bargaining agreement, and the government provides no basis for how an arbitrator would be able to decide (or even consider) a claim concerning the Panel's authority. Finally, as the government candidly concedes, "most Authority decisions involving arbitration are not reviewable in federal court." Mot. 8; *see* 5 U.S.C. § 7123(a)(1). The only ones that are reviewable are those that involve unfair labor practices—which ends up right where we started.

Given these hopelessly inadequate options, and contrary to the government's claims, the Association *does* "face the sort of untenable choice" that will "deprive it of meaningful judicial review under *Free Enterprise*." Mot. 27. Under the government's theory, the union and its members have to risk severe punishment with the futile hope that the SSA and FLRA will somehow allow it to raise its Appointment Clause claim in the administrative process. As the Supreme Court made clear in *Free Enterprise*, that is not the law.

**2.** Trying to escape *Free Enterprise*, the government asserts (at 25) that courts since "have consistently rejected attempts to allow Appointments Clause claims to proceed outside of a statutory administrative and judicial scheme." It identifies *Elgin v. Department of Treasury*, 567 U.S. 1 (2012), as a key turning point. But, as we have explained, *Elgin* is critically different from *Free Enterprise*—and this case. *See* ECF 8 at 28–31. Elgin could have sought *direct* review of the Merit Systems Protection Board's decision in his case in the Federal Circuit. 567 U.S. at 7. But he didn't; instead, he chose to file a declaratory action in district court. So too with all of the government's post-*Elgin* cases. *See* Mot. 25. In each one, the plaintiffs could clearly have obtained *direct* review of their constitutional claims in a court of appeals simply by appealing administrative enforcement

actions against them. *See, e.g. Bennett v. S.E.C.*, 844 F.3d 174, 186 (4th Cir. 2016); *Tilton v. S.E.C.*, 824 F.3d 276, 288 (2d Cir. 2016); *Hill v. S.E.C.*, 825 F.3d 1236, 1248 (11th Cir. 2016). None of these cases involved a statutory scheme that expressly forecloses direct appellate review. These cases therefore do not support the government's far different proposal here: that the Association must incur a separate sanction (for an unfair labor practice), and then seek attempt to judicial review through dead-end administrative proceedings by raising a constitutional objection that is wholly collateral to the initial Panel proceedings. *See* ECF 8 at 28–30.

*Jarkesy v. S.E.C.*, the government's primary authority for why district courts in its view cannot review claims like the Association's, in fact demonstrates why this case falls squarely within *Free Enterprise*'s jurisdictional holding. *See* Mot. 26–28. In *Jarkesy*, the petitioner filed a constitutional challenge against the SEC in this Court "days before" an administrative hearing on whether he had violated the securities laws. 803 F.3d at 13. In finding that *Free Enterprise* did not allow for jurisdiction, the D.C. Circuit noted that "Jarkesy [was] already properly before the Commission by virtue of his alleged violations of those laws." *Id.* at 20. "Indeed," the court observed, "the existence of the enforcement proceedings gave rise to Jarkesy's challenges," and Jarkesy's claims "ar[o]se from actions the Commission took in the course of [its enforcement] scheme." *Id.* at 20, 23. Thus, "Jarkesy would not have to erect a Trojan-horse challenge to an SEC rule or 'bet the farm' by subjecting himself to unnecessary sanction under the securities laws" to seek review, because review in the "court of appeals [wa]s available to hear those challenges" immediately after the Commission's final order. *See id.* at 20.

None of what the D.C. Circuit highlighted in *Jarkesy* is true here. The Panel proceedings have finished, resulting in a final order binding on the Association. The statute offers the Association no mechanism for direct judicial review of the Panel's order, either in this Court or in any court of appeals. The Association's constitutional claim does not arise from any particular

11

actions that the Panel took in the course of its proceedings—in fact, the Association first raised its Appointments Clause objection before the Panel had even exercised jurisdiction over the impasse. Put simply, the government essentially argues that the Association would have "to manufacture a dispute or provoke a sanction" just to have the possibility (as unrealistic as it may be) of judicial review. *Jarkesy* 803 F.3d at 20. As the D.C. Circuit recognized, "[t]he Supreme Court rejected" this argument in *Free Enterprise*. *Id.*[4]

### III.    Accepting the government's position—and thereby effectively preventing the Association from having its constitutional challenge heard in *any* judicial forum—would raise serious constitutional problems.

Even the government acknowledges that, under its theory, the Association's ability to access a court turns entirely on unreviewable agency decisions and discretion—whether the Social Security Administration chooses to file an unfair-labor-practice charge, for example, or whether the General Counsel chooses to issue a complaint. *See* Mot. 33. And the government cannot dispute that, with no General Counsel, there presently is no conceivable opportunity for the Association to ascend the unfair-labor-practice process to federal-court review. Thus, lurking behind the government's jurisdictional objection is a deeply troubling proposition—that the Federal Service Labor-Management Relations Statute, on its reading, prevents the Association from raising *any* constitutional claim against the Impasses Panel in *any* court.

This result, standing alone, requires rejection of the government's position. "[L]itigants who allege that their own constitutional rights have been violated, and who at the same time have no effective means other than the judiciary to enforce these rights, must be able to invoke the

---

[4] The government also argues that *Free Enterprise*'s second and third factors counsel against jurisdiction here. *See* Mot. 28–30 ("wholly collateral"), 30–32 ("agency expertise"). Because we have already explained why these factors weigh in favor of jurisdiction, we incorporate that briefing by reference to avoid repetition. *See* ECF 8 at 27–31.

existing jurisdiction of the courts for the protection of their justiciable constitutional rights." *Davis v. Passman*, 442 U.S. 228, 242 (1979). And "'[u]nder our system there is no warrant for the view that the judicial power of a competent court can be circumscribed by any legislative arrangement designed to give effect to administrative action going beyond the limits of constitutional authority.'" *Estep v. United States*, 327 U.S. 114, 127 (1946) (Murphy, J., concurring) (quoting *St. Joseph Stock Yards Co. v. United States*, 298 U.S. 38, 52 (1936)). "To hold otherwise is to substitute illegal administrative discretion for constitutional safeguards." *Id.* The government's position thus necessarily clashes with the minimal requirements of the Due Process Clause, the constraints on Congress's power to limit the jurisdiction of the federal courts under Article III, and the authority of the judiciary within our separation of powers to say what the law is.

For these reasons, the Supreme Court has repeatedly cautioned that "serious constitutional question[s]" would "arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim." *Webster*, 486 U.S. at 603; *see, e.g., Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 n.8 (1994); *Bowen v. Mich. Academy of Family Physicians*, 476 U.S. 667, 681 n.12 (1986). These cases "suggest that the Constitution requires judicial review of constitutional challenges to actions taken by non-judicial officials." Richard H. Fallon, Jr., *Some Confusions About Due Process, Judicial Review, and Constitutional Remedies*, 93 Colum. L. Rev. 309, 334 (1993). "[A]rticle III courts cannot be forced to 'close their eyes on the constitution, and see only Congress' law,'" for "Article III does not permit such evisceration of a federal judicial tribunal." Laurence H. Tribe, *Jurisdictional Gerrymandering: Zoning Disfavored Rights Out of the Federal Courts*, 16 Harv. C.R.-C.L. L. Rev. 129, 136 (1981) (quoting *Marbury v. Madison*, 5 U.S. 137, 178 (1803)). While it has generally avoided stating that rule outright, the Supreme Court "has *never* interpreted a statute to have this effect"—that is, to "deprive a petitioner of the ability to obtain judicial consideration of a credible claim that the agency action violates a petitioner's constitutional rights." Richard J. Pierce, Jr., *Administrative Law*

*Treatise* § 17.9 (4th ed. 2002) (emphasis added). Instead, the Court has repeatedly avoided the issue through statutory interpretation and has announced that, at the very least, "where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear." *Webster*, 486 U.S. at 603; *see Lincoln v. Vigil*, 508 U.S. 182, 195 (1993).The D.C. Circuit has likewise recognized that "[t]he maxim that congressional preclusion of judicial review must be 'clear and convincing' applies 'in a particularly rigorous fashion,' . . . when constitutional claims are at stake." *Griffith v. FLRA*, 842 F.2d 487, 494 (D.C. Cir. 1988).

This case need not raise the "serious constitutional question" that the Supreme Court has consistently avoided. Nowhere in its nearly 40 pages of dense briefing does the government point to evidence—let alone "clear and convincing" evidence—that Congress intended to preclude Article III courts' review of constitutional claims challenging the Impasses Panel. Nor could it: As the government itself acknowledges, the statute is silent as to judicial review concerning the Panel. In the end, this Court need not look anywhere besides *National Air II* to dispose of the government's motion. There, the D.C. Circuit made clear that district courts can hear claims challenging the extent of the Panel's *statutory* authority to resolve impasses. Yet the government's "argument would flip *Webster* on its head: Statutory arguments would be subject to full [federal-court] review even if constitutional arguments . . . are not." *Allen v. Milas*, 896 F.3d 1094, 1108 (9th Cir. 2018). This Court should reject that topsy-turvy conclusion.

## CONCLUSION

The defendants' motion to dismiss should be denied.

May 11, 2020

Respectfully submitted,

*/s/ Deepak Gupta*

MATTHEW W.H. WESSLER
(D.C. Bar No. 985241)
GUPTA WESSLER PLLC
1035 Cambridge Street, Suite One
Cambridge, MA 02141
(617) 286-2392
*matt@guptawessler.com*

DEEPAK GUPTA
(D.C. Bar No. 495451)
GUPTA WESSLER PLLC
1900 L Street, NW, Suite 312
Washington, DC 20036
(202) 888-1741
*deepak@guptawessler.com*

NEIL K. SAWHNEY
(admitted *pro hac vice*)
GUPTA WESSLER PLLC
100 Pine Street, Suite 1250
San Francisco, CA 94111
(415) 573-0336
*neil@guptawessler.com*

*Counsel for Plaintiff*