**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| ASSOCIATION OF ADMINISTRATIVE LAW JUDGES, INTERNATIONAL FEDERATION OF PROFESSIONAL AND TECHNICAL ENGINEERS, AFL-CIO, | ) ) ) ) ) | Case No. 1:20-cv-01026-ABJ |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| FEDERAL SERVICE IMPASSES PANEL, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM IN SUPPORT OF INTERVENOR-DEFENDANT SOCIAL SECURITY ADMINISTRATION'S OPPOSITION TO PLAINTIFF ASSOCIATION OF ADMINISTRATIVE LAW JUDGES' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT

## **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................3

    I.       Legal Background ...................................................................................................3

    II.     Factual and Procedural Background .................................................................6

STANDARD OF REVIEW .....................................................................................................7

ARGUMENT .........................................................................................................................7

    I.       Determining whether an officer of the United States is principal or inferior turns on whether the officer's work is "directed and supervised at some level" by one or more officers who are appointed by the President with the advice and consent of the Senate. ...................................................................8

    II.     Panel members are inferior officers because they are subject to at-will removal and general supervision by Senate-confirmed officers, and their decisions are subject to meaningful Authority review .....................................13

           A.     Panel members are inferior because they are removable at-will by the Authority, whose members are all Senate-confirmed officers. .......................14

           B.     The Authority's exercise of leadership and policy guidance over the Panel likewise renders the Panel's members inferior officers. ........................18

           C.     The Authority's ability to review, modify, and reverse Panel decisions affirms that Panel members are inferior officers................................................23

CONCLUSION ....................................................................................................................29

# TABLE OF AUTHORITIES

## Cases

*Am. Fed'n of Gov't Employees v. Fed. Labor Relations Auth.*,
  691 F.2d 565 (D.C. Cir. 1982)................................................................................................5

*Am. Fed'n of Gov't Emps. v. Trump*,
  929 F.3d 748 (D.C. Cir. 2019)................................................................................................2

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
  941 F.3d 1320 (Fed. Cir. 2019) ......................................................... 9, 12, 22, 23, 26

*Ass'n of Am. Railroads v. U.S. Dep't of Transp.*,
  821 F.3d 19 (D.C. Cir. 2016).......................................................................... 9, 23

*Aurelius Inv., LLC v. Puerto Rico*,
  915 F.3d 838 (1st Cir.), *cert. granted sub nom.*, 139 S. Ct. 2738 (2019) ...................................15

*Buckley v. Valeo*,
  424 U.S. 1 (1976).................................................................................................8

*Council of Prison Locals v. Brewer*,
  735 F.2d 1497 (D.C. Cir. 1984)........................................................................*passim*

*Dep't of Def. v. FLRA*,
  659 F.2d 1140 (D.C. Cir. 1981)..............................................................................3

*Edmond v. United States*,
  520 U.S. 651 (1997) ........................................................................................*passim*

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd*,
  561 U.S. 477 (2010) ........................................................................................*passim*

*Intercollegiate Broad. Syst., Inc. v. Copyright Royalty Bd.*,
  684 F.3d 1332 (D.C. Cir. 2012)...........................................................................passim

*Masias v. Sec'y of Health & Human Servs.*,
  634 F.3d 1283 (Fed. Cir. 2011) ............................................................................25

*Mori v. Dep't of the Navy*,
  731 F. Supp. 2d 43 (D.D.C. 2010), *dismissing appeal*, 2010 WL 5371504 (D.C. Cir. 2010)..................7

*Myers v. United States*,
  272 U.S. 52 (1926) ................................................................................... 16, 17

*Nat'l Air Traffic Controllers Ass'n AFL-CIO v. FSIP*,
  437 F.3d 1256 (D.C. Cir. 2006)...........................................................................24

*Overseas Educ. Ass'n v. Fed. Labor Relations Auth.,*
  824 F.2d 61 (D.C. Cir. 1987)..................................................................................................5

*Patent Office Prof'l Ass'n v. Fed. Labor Relations Auth.,*
  26 F.3d 1148 (D.C. Cir. 1994)............................................................................................4, 5

*Pro-Football, Inc. v. Harjo,*
  284 F. Supp. 2d 96 (D.D.C. 2003).........................................................................................7

**Administrative Decisions**

*American Federation of Government Employees, AFL-CIO, Local 3732,*
  16 FLRA 318 (Oct. 31, 1984)...............................................................................................27

*Buchanan, Puerto Rico & Antilles Consol. Educ. Ass'n, Dep't of Def. Domestic Dependent Elementary,*
  71 FLRA 127 (2019)..............................................................................................................24

*Commander Carswell Air Force Base, Tx. & Am. Fed'n of Gov't Emps., Local 1364,*
  31 FLRA 620 (1988).........................................................................................................26, 28

*Div. of Military & Naval Affairs, State of N.Y., Albany, N.Y. & N.Y. Council, Ass'n of Civilian Technicians,*
  8 FLRA 158 (1982)...............................................................................................................27

*Fed. Lab. Rel. Auth.,*
  7 FLRA 682 (1982)...............................................................................................................20

*Fed. Lab. Rel. Auth.,*
  31 FLRA 1294 (1988)...........................................................................................................20

*Interpretation & Guidance,*
  11 FLRA 626 (Mar. 17, 1983) .......................................................................................19, 27

*Interpretation & Guidance,*
  15 FLRA 564 (1984) ....................................................................................................5, 6, 25

*Nat'l Treasury Emps. Union,*
  32 FLRA 1131 (1988)..................................................................................................19, 20, 27

*U.S. Dep't of Def., Def. Logistics Agency & Am. Fed'n of Gov't Emps., Def. Logistics Agency Council
  of AFGE Locals,*
  18 FSIP 080 (2019)...............................................................................................................25

*U.S. Soc. Sec. Admin. Office of Hearings Operations,*
  20 FSIP 001 (2020) ..............................................................................................................6

**Constitutional Provisions**

U.S. Const., art. II, § 2, cl. 2. ...........................................................................................8, 16

**Statutes**

3 U.S.C. § 301 .................................................................................................................................15

5 U.S.C. §§ 7101-7135 ................................................................................................................ 1, 3

5 U.S.C. § 7101 ........................................................................................................................*passim*

5 U.S.C. § 7104 ..................................................................................................................................3

5 U.S.C. § 7105 ........................................................................................................................*passim*

5 U.S.C. § 7114 ........................................................................................................................... 3, 25

5 U.S.C. § 7116 ........................................................................................................................... 5, 25

5 U.S.C. § 7117 ...............................................................................................................................25

5 U.S.C. § 7118 ...............................................................................................................................25

5 U.S.C. § 7119 ........................................................................................................................*passim*

5 U.S.C. § 7119(c)(1)(1988) .............................................................................................................5

5 U.S.C. § 7119 *et seq.* ......................................................................................................................1

5 U.S.C. § 7134 ........................................................................................................................... 4, 22

5 U.S.C.A. § 7123 .............................................................................................................................6

**Rules**

Fed. R. Civ. P. 56(a) .........................................................................................................................7

**Regulations**

5 C.F.R. § 2429.4 ................................................................................................................. 9, 20, 27

5 C.F.R. § 2471.6 ......................................................................................................................... 4, 5

5 C.F.R. §§ 2424.20–2424.22 ........................................................................................................25

5 C.F.R. §§ 2471.1–.12 ....................................................................................................................4

45 Fed. Reg. 3485 (Jan. 17, 1980) ................................................................................................19

84 Fed. Reg. 63,789 (Nov. 12, 2019)............................................................................... 4, 14, 18, 20

**Other Authorities**

*Assignment of Certain Functions Related to Military Appointments*,
    29 U.S. Op. Off. Legal Counsel 132 (2005)............................................................................16

Presidential Succession and Delegation in Case of Disability,
    5 U.S. Op. Off. Legal Counsel 91 (1981) ...........................................................................16

*Whether the Special Master for Troubled Asset Relief Program Executive Compensation Is a Principal Officer*
    *Under the Appointments Clause*, 34 Op. Off. Legal Counsel (2010).........................................19

**INTRODUCTION**

The members of the Federal Service Impasses Panel (the "Panel"), an entity within the Federal Labor Relations Authority (the "Authority") established to help federal agencies and employee unions resolve collective bargaining negotiation impasses, are inferior officers of the United States. The Panel's enabling statute, 5 U.S.C. § 7119 *et seq.*—part of the broader Federal Service Labor-Management Relations Statute, 5 U.S.C. §§ 7101-7135 (the "Statute")—provides for Panel members' appointments to five-year terms by the President alone, without Senate advice and consent. *Id.* § 7119(c)(3). It makes them removable—again by the President—at will, at any time and for any reason notwithstanding their five-year terms. *Id.* Although Congress vested that removal authority in the President in the first instance, it did so under longstanding statutory authority allowing the President to delegate such functions to heads of departments, 3 U.S.C. § 301—and alongside a broad grant of power to the Authority to take all "necessary and appropriate" actions "to effectively administer the" Statute. *id.* § 7105(a). That same broad grant of power places the Panel under the leadership of the Authority, whose members are appointed by the President and confirmed by the Senate, and upon which the Statute confers the power to review Panel orders and decisions under appropriate circumstances.

These are the hallmarks of inferior-officer status under the Constitution's Appointments Clause. And if there was any doubt on that conclusion, the President's delegation of his removal authority over Panel members to the Authority through a November 2019 Presidential Memorandum has resolved it; by majority vote, the Authority's three Senate-confirmed members may remove Panel members from their positions at will, at any time and for any reason. Panel members are thus inferior officers under the control of the Authority, and the Appointments Clause therefore permits their appointment to be vested "in the President alone," as Congress has provided in 5 U.S.C. § 7119(c)(3).

The plaintiff in this case, the Association of Administrative Law Judges ("AALJ"), argues otherwise, and asks the Court to find that Panel members are instead principal officers of the United States whose appointments, lacking Senate advice and consent, thus violate the Appointments Clause. As a threshold matter, AALJ's claim—which arises in the context of an unfavorable Panel decision resolving an impasse between AALJ and the Social Security Administration ("SSA")—is jurisdictionally channeled entirely away from district court review under the Statute's administrative and judicial review scheme, and thus falls outside the Court's subject-matter jurisdiction. *Am. Fed'n of Gov't Emps. v. Trump*, 929 F.3d 748, 761 (D.C. Cir. 2019). But even if the Court were to conclude that AALJ's claim somehow evades the Statute's comprehensive review scheme, it should find no constitutional infirmity in the Panel members' appointments.

Under *Edmond v. United States*, 520 U.S. 651, 663 (1997), officers of the Unites States are deemed inferior rather than principal if their work is "directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate." *Edmond* identified several factors relevant to this analysis. First, an officer subject to removal by a Senate-confirmed officer is likely inferior—and indeed, at-will removal should be enough on its own to render the officer inferior. *See id.* Second, an officer subject to oversight by Senate-confirmed officer through policy guidance or other supervisory tools is more likely to be inferior. *Edmond*, 520 U.S. at 664. Finally, the ability of a Senate-confirmed officer to review the officer's decisions also points in favor of inferior-officer status. *Id.* at 665.

Each of these factors is met here. Most critically, Panel members are subject to at-will removal. That removal power is vested in the President by the Statute, but not exclusively so, and the President has delegated that removal power to the Authority. More broadly, the Panel's work is directed and supervised by the three Senate-confirmed officers who compose the Authority. For its part, the Authority has been given a comprehensive leadership mandate by the Statute within the federal labor

matters the Statute encompasses.  5 U.S.C. § 7105(a)(1).  To that end, the Authority may take any actions "necessary and appropriate" to effectuate the Statute's goals, *id.* § 7105(a)(2)(I)—chief among them those designed to ensure that the Statute's terms are interpreted effectively and efficiently, *id.* § 7101(b).  The Statute thus gives the Authority substantial discretion in determining how to oversee the Panel's work; the measures available include issuing policy statements and reviewing and reversing certain Panel decisions.

All of this compels the conclusion that Panel members are "directed and supervised at some level" by the Senate-confirmed officers comprising the Authority.  Panel members, in other words, are inferior officers who are constitutionally appointed by the President without Senate confirmation.  Defendants are thus entitled to summary judgment, and Plaintiff's motion for summary judgment should be denied.

## **BACKGROUND**

### I.     **Legal Background**

The Federal Service Labor-Management Relations Statute, 5 U.S.C. §§ 7101-7135 (the "Statute") governs labor relations within the federal civil service.  *See generally Dep't of Def. v. FLRA,* 659 F.2d 1140, 1144 (D.C. Cir. 1981) (summarizing statutory and legislative history).  The Authority, comprising three members "appointed by the President by and with the advice and consent of the Senate," 5 U.S.C. § 7104(b), is tasked with administering the Statute.  To that end, the Statute vests the authority with responsibility for "provid[ing] leadership in establishing policies and guidance relating to matters under this chapter, and," generally, "for carrying out the purpose of" the Statute.  *Id.* § 7105(a)(1).  The Statute requires, among other things, that federal agencies and employee unions negotiate in "good faith" over subjects covered by the duty to bargain.  *Id.* § 7114(a)(4).

The Panel is established under 5 U.S.C. § 7119(c)(1) as a multi-member "entity within the Authority" whose "function . . . is to provide assistance in resolving negotiation impasses between

3

agencies and exclusive representatives." *Id.*  The Panel is composed of a "Chairman and at least six other members, who shall be appointed by the President" without the advice and consent of the Senate.  *Id.* § 7119(c)(2).  "Any member of the Panel may be removed by the President" at will.  *Id.* § 7119(c)(3).  In November 2019, the President delegated his removal power over Panel members to the Authority through Presidential Memorandum.  Presidential Memorandum of Nov. 12, 2019, 84 Fed. Reg. 63,789 (Nov. 12, 2019).

The Panel members serve five-year terms with staggered start dates, although they are not required to serve as full-time federal employees.  *Id.* § 7119(c)(3), (4).  The Panel may appoint an Executive Director and other individuals necessary for the performance of its duties.  *Id.* § 7119(c)(4).  Those who are not federal employees are "entitled to pay at a rate equal to the daily equivalent of the maximum annual rate of basic pay then currently paid under the General Schedule for each day he is engaged in the performance of official business of the Panel, including travel time, and is entitled to travel expenses as provided under section 5703 of this title."  *Id.* § 7119(c)(4).  Finally, the Panel has authority to "prescribe rules and regulations to carry out the provisions of [the Statute] applicable to" the Panel.  *Id.* § 7134; *see* 5 C.F.R. §§ 2471.1–.12 (Panel regulations).

Again, the Panel's sole function is to assist agencies and unions with the resolution of impasses reached during collective bargaining, which it may do at the request of an agency employer or union. 5 U.S.C. § 7119(b).  When it receives such a request, the Panel must "promptly investigate any impasse presented to it," *id.* § 7119(c)(5)(A), and then "either (1) [d]ecline to assert jurisdiction in the event that it finds that no impasse exists or that there is other good cause for not asserting jurisdiction" or "(2) [a]ssert jurisdiction," 5 C.F.R. § 2471.6(a).  If the parties have not in fact reached an impasse, then the Panel lacks jurisdiction to act.  *Patent Office Prof'l Ass'n v. Fed. Labor Relations Auth.*, 26 F.3d 1148, 1153 (D.C. Cir. 1994) ("[B]efore the Panel can employ its power, *there must first be an impasse.* The Statute

allows the Panel, and by designation the arbitrator, 'to provide assistance in resolving *negotiation impasses* between agencies and exclusive representatives.'" (quoting 5 U.S.C. § 7119(c)(1) (1988)).

If an impasse exists, and the Panel asserts jurisdiction, then the Panel may "take whatever action is necessary and not inconsistent with [the Statute] to resolve the impasse," including holding hearings, taking testimony or depositions of persons under oath, and issuing subpoenas.  5 U.S.C. § 7119(c)(5).  At the conclusion of its proceedings, the Panel may recommend contract terms.  *Id.*  Or it may "impose[] settlement" through a decision and order setting forth the contract terms that the parties must incorporate into their agreement.  *Am. Fed'n of Gov't Employees v. Fed. Labor Relations Auth.*, 691 F.2d 565, 569 n.26 (D.C. Cir. 1982); *Interpretation & Guidance*, 15 FLRA 564, 567 (1984) ("It is well established that the procedures of the Panel are part of the collective bargaining process and that any agreement, mandated or otherwise, resulting therefrom is a part of the collective bargaining agreement."); 5 C.F.R. § 2471.6(a)(2)(ii).  Decisions of the Panel are "binding on [the] parties during the term of the agreement, unless the parties agree otherwise."  5 U.S.C. § 7119(c)(5)(C).

Panel decisions, though in general not directly appealable to the Authority, are subject to indirect Authority review in the context of an unfair labor practice proceeding or negotiability appeal.[1] *Council of Prison Locals v. Brewer*, 735 F.2d 1497, 1499–1500 (D.C. Cir. 1984); *Interpretation & Guidance*, 15 FLRA 564, 568 (1984).  Either party's refusal to abide by a Panel decision may constitute an unfair labor practice that triggers one of these proceedings.  5 U.S.C. § 7116(a)(6), (b)(6); *Interpretation & Guidance*, 15 FLRA at 567–68.  To resolve an unfair labor practice complaint, the Authority may hold

---

[1] As explained in Defendants' Motion to Dismiss, ECF No. 22, under the Statute's "two-track system for resolving" allegations of an unfair labor practice, such allegations may be presented directly to the Authority through a charge lodged with the General Counsel or may be resolved first through arbitration before being presented to the Authority on exceptions to the arbitration award.  *Overseas Educ. Ass'n v. Fed. Labor Relations Auth.*, 824 F.2d 61, 62 (D.C. Cir. 1987).  The differences in how the allegation ultimately arrives before the Authority in either proceeding are immaterial to the issue presented in this motion.  For ease of reference, the term "unfair labor practice proceeding" used herein refers to both methods of obtaining Authority review of an allegation of an unfair labor practice based on noncompliance with a Panel decision.

hearings, take testimony or depositions, and issue subpoenas.  *See* 5 U.S.C. § 7105(g)(1), (2).  And if the Authority finds that portion of the Panel decision contrary to law or outside the Panel's jurisdiction, it may set aside the decision in whole or in part.  *See, e.g.*, *Dep't of Def. Domestic Dependent Elementary*, 71 FLRA 127, 133 (2019) (rendering a portion of a Panel order unenforceable because "the Panel lacked the authority to resolve the Agency's negotiability arguments concerning" a specific provision in the parties' agreement).  On the other hand, if the Panel decision is consistent with applicable law, then the party who refused to abide by it will have committed an unfair labor practice. *Brewer*, 735 F.2d at 1500.

Finally, "[a]ny person aggrieved by any final order of the Authority" in an unfair labor practice proceeding or negotiability appeal may challenge the Authority's decision in a federal court of appeals. 5 U.S.C.A. § 7123(a).

## II.   Factual and Procedural Background

In 2019, AALJ and SSA began negotiations over a new collective bargaining agreement. Compl. ¶ 30, ECF No. 1.  After failing to agree on nine articles, SSA requested the Panel's assistance. *Id.* ¶¶ 30–31.

AALJ objected.  It argued that the Panel lacked jurisdiction over the parties' negotiation impasse on the same legal ground it asserts here: that Panel members are principal officers whose appointments without Senate confirmation are unconstitutional.  *Id.*  The Panel overruled AALJ's objection and asserted jurisdiction over the negotiation impasse.  *Id.* ¶ 32.

After AALJ unsuccessfully moved for a stay of Panel proceedings before the Authority, ECF No. 5-11, and then the United States Court of Appeals for the Fourth Circuit, Order, *Ass'n of Admin. Law Judges v. Fed. Labor Relations Auth.*, No. 20-1110 (4th Cir. Mar. 9, 2020), the Panel issued a decision resolving the nine disputed articles.  *See U.S. Soc. Sec. Admin. Office of Hearings Operations*, 20 FSIP 001 (2020).  Five days later, AALJ brought suit in this Court.  Shortly thereafter, it sought a preliminary

injunction against the enforcement of the Panel decision.  Its sole claim alleges that the Panel members are principal officers whose appointment without Senate confirmation is contrary to the Appointments Clause.  Compl. at 10.

## STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment."  *Pro-Football, Inc. v. Harjo*, 284 F. Supp. 2d 96, 112 (D.D.C. 2003) (citation omitted).  Rather, the dispute must regard a question of fact that is material, meaning that it is "capable of affecting the substantive outcome of the litigation."  *Id.* That is determined by "look[ing] to the substantive law on which each claim rests."  *Mori v. Dep't of the Navy*, 731 F. Supp. 2d 43, 45 (D.D.C. 2010) (citation omitted), *dismissing appeal*, 2010 WL 5371504 (D.C. Cir. 2010).  The dispute must also be genuine, meaning that it is "supported by sufficiently admissible evidence such that a reasonable trier-of-fact could find for the nonmoving party."  *Pro-Football*, 284 F. Supp. 2d at 112.

## ARGUMENT

Panel members are inferior officers who are constitutionally appointed by the President alone. The *Edmond* factors—removability, supervision, and the power to review and reverse decisions—establish that Panel members are inferior rather than principal officers.  The Authority possesses a powerful means of controlling the Panel and its members through the ability to remove any member at will; that alone is enough to conclude that Panel members are inferior officers.  But the Authority's additional oversight tools point toward the same conclusion.  The Statute gives the Authority vast discretion to oversee the Panel's decision-making by issuing policies and guidance and influencing the

Panel's decision-making procedures as necessary and appropriate.  Finally, the Authority reviews the

Panel's legal determinations under appropriate procedural circumstances, and it has the authority to

review its substantive determinations under such circumstances as well.  Thus, each *Edmond* factor

leads to the same result:  that Panel members are inferior officers.  AALJ's Appointments Clause

challenge thus is without merit, and summary judgment should be entered in the Defendants' favor.

To explain why that is so, we first detail the analysis adopted by the Supreme Court and the

United States Court of Appeals for the District of Columbia for determining whether an officer is

principal or inferior.  *See* Part I, *infra*.  Next, we explain why that precedent compels the conclusion

that Panel members exercise the duties of inferior rather than principal officers.  *See* Part II, *infra*.

## I.     Determining whether an officer of the United States is principal or inferior turns on whether the officer's work is "directed and supervised at some level" by one or more officers who are appointed by the President with the advice and consent of the Senate.

The Appointments Clause provides that the President "shall nominate, and by and with the

Advice and Consent of the Senate, shall appoint . . . Officers of the United States."  U.S. Const. art.

II, § 2, cl. 2.  That default rule comes with an important exception: "Congress may by Law vest the

Appointment of such inferior officers, as they think proper, in the President alone, in the Courts of

Law, or in the Heads of Departments."  *Id.*  Determining whether an officer is properly appointed

without Senate advice and consent thus depends on whether the officer is principal or inferior.

All officers exercise "significant authority pursuant to the laws of the United States."  *Edmond*,

520 U.S. at 662 (quoting *Buckley v. Valeo*, 424 U.S. 1, 126 (1976) (per curiam)).  What distinguishes a

principal from an inferior officer is whether the officer "has a superior."  *Edmond*, 520 U.S. at 662.

More specifically, the work of an inferior officer must be "directed and supervised at some level by

others who were appointed by Presidential nomination with the advice and consent of the Senate."

*Ass'n of Am. Railroads v. U.S. Dep't of Transp.*, 821 F.3d 19, 38 (D.C. Cir. 2016) (quoting *Edmond*, 520

U.S. at 663).

While there is no "exclusive criterion for distinguishing between principal and inferior officers for Appointments Clause purposes," *Edmond*, 520 U.S. at 661, the Supreme Court has "emphasized three factors[]" that guide the analysis. *Arthrex, Inc. v. Smith & Nephew, Inc.*, 941 F.3d 1320, 1329 (Fed. Cir. 2019). They are: "(1) whether an appointed official has the power to review and reverse the officers' decision; (2) the level of supervision and oversight an appointed official has over the officers; and (3) the appointed official's power to remove the officers." *Id.* This last factor carries particularly significant weight. As the Supreme Court has noted, "[t]he power to remove officers . . . is a powerful tool for control." *Id.* at 1333 (quoting *Edmond*, 520 U.S. at 664); *see also Intercollegiate*, 684 F.3d at 1338.

The Supreme Court's decision in *Edmond* illustrates how these factors should be assessed to determine whether an officer is principal or inferior. In *Edmond*, the Court determined that military judges on the Coast Guard Court of Criminal Appeals were inferior officers notwithstanding the significance of the authority they exercised in reviewing "those court-martial proceedings that result in the most serious sentences." 520 U.S. at 662. The military judges reviewed findings of guilt and ensured that sentences—including those resulting in the death penalty, dishonorable discharge, or confinement for a year or more—conformed to law. *Id.* And they were authorized to conduct their own weighing of the underlying factual evidence, without deferring to the trial judge's factual findings. *Id.* Those responsibilities made them officers of the United States. Whether they were principal or inferior, however, depended on whether they were supervised "at some level" by a Senate-confirmed officer. *Id.* at 652. They were, the Court held—for three primary reasons.

First, the military judges were removable from their judicial assignments without cause by the Judge Advocate General. *Id.* at 664. Second, the Judge Advocate General was responsible for "prescrib[ing] uniform rules of procedure" for the courts and "formulat[ing] policies and procedure in regard to review of court-martial cases." *Id.* (quotation omitted). And third, military judges' opinions were subject to review by the Court of Appeals for the Armed Forces. *Id.* at 655.

9

Notably, the scope of the Court of Appeals' review was not without limitations. Specifically, even when the Court of Appeals for the Armed Forces exercised review over a military judge's determinations, it would not reevaluate the underlying facts as long as "some competent evidence in the record establish[ed] each element of the offense beyond a reasonable doubt." *Id.*

But that limitation did not render the military judges principal officers for at least two reasons. First, the Supreme Court concluded, the review provisions adequately ensured that the military judges had "no power to render a final decision on behalf of the United States unless permitted to do so by other Executive officers." *Id.* at 665. Second—and significantly—the military judges were subject to supervision through at-will removal and policy guidance from superiors. *Id.* at 664. Accordingly, the Supreme Court concluded that the military judges were inferior officers, in spite of the limited reviewability of their weighty decisions.

The cases following *Edmond* further refine the Supreme Court's multi-factored test while emphasizing the significance of removal. In *Free Enterprise Fund*, for instance, the Supreme Court concluded that members of the Public Company Accounting Oversight Board were inferior officers because the Security and Exchange Commission—itself composed of Senate-confirmed officers—could remove Board members at will,[2] and the Commission exercised other more limited oversight authority over Board activities. *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 61 U.S. 477, 510 (2010). Those aspects of the Commission's supervisory powers were sufficient to render Board members inferior even though the statute allowed the Board to take certain significant actions without any Commission review. Specifically, the Board was "empowered to take significant enforcement actions, . . . largely independently of the Commission," and the Commission lacked statutory authority "to start, stop, or alter individual Board activities." *Id.* at 504. In spite of the Board's largely

---

[5] The Court had already invalidated a for-cause removal limitation on the Commission's ability to remove Board members. 561 U.S. at 484, 492-508.

unreviewable, independent actions, the Supreme Court had "no hesitation in concluding that under *Edmond* the [Public Company Accounting Oversight] Board members are inferior officers." *Id.* at 510. The Commission's power to remove Board members at will and to provide general policy oversight was enough to cinch the Board members' inferior-office status. *Id.*

Following *Edmond* and *Free Enterprise*, the D.C. Circuit addressed whether copyright royalty judges—the three voting members of the Copyright Royalty Board, an administrative body within the United States Library of Congress charged with setting rates for copyright royalty payments—were principal or inferior officers. *Intercollegiate*, 684 F.3d at 1340. Largely because a statutory provision permitted the Librarian of Congress to remove copyright royalty judges only "for cause," the court concluded that under the *Edmond* factors, the judges were principal officers as the Copyright Royalty Board was (at that time) "currently constituted[.]" *Id.* at 1334. Lacking Senate confirmation under the enabling statute, the copyright royalty judges were thus found to be improperly appointed. *Id.* at 1340.

But the D.C. Circuit had a straightforward remedial fix for that Appointments Clause problem: "To remedy the violation, we follow the Supreme Court's approach in *Free Enterprise* [. . . ], by invalidating and severing the restrictions on the Librarian of Congress's ability to remove the CRJs. With such removal power in the Librarian's hands, we are confident that the Judges are 'inferior' rather than 'principal' officers, and that no constitutional problem remains." *Id.* at 1334.

That was so even though the other two *Edmond* factors—reviewability and degree of supervision and oversight—tended to point in the opposite direction on balance. On the one hand, the judges were supervised to various degrees by the Librarian—a Senate-confirmed officer—and the Register of Copyrights, who was appointed by the Librarian. *Id.* at 1338. The Librarian, for instance, approved the copyright royalty judges' procedural regulations, issued ethical rules for the judges, and oversaw certain logistical aspects of their duties. *Id.* at 1338–39. The Register, in turn, interpreted

copyright laws and provided written opinions to the copyright royalty judges on "novel material question[s]" of law that the judges were bound to follow in issuing their rate determinations.  *Id.* at 1338.  Those oversight measures, the court found, placed "a non-trivial limit on the [judges'] discretion[.]"  *Id.* at 1339.  On the other hand, the judges were left with "vast discretion" to set royalty rates and terms that could cost industries "billions of dollars" and even their entire "fate[]."  *Id.* at 1338–39.  Those ratemaking determinations—"the most significant aspect of the" judges' duties— were not "reversible or correctable by any other officer or entity within the executive branch," but could only be modified if challenged in an Article III court. *Id.* at 1340.

Because the copyright royalty judges retained such vast discretion, their removability was the key to whether they were deemed principal or inferior officers.  The D.C. Circuit found the enabling statute constitutionally problematic as written because it restricted the Librarian's ability to remove the judges without a finding of good cause.  *Id.* at 1340.  But severing the good-cause restriction would solve the problem, the court concluded, even though the judges' decisions were subject to review only for legal error and their ratemaking determinations, which had the "greatest importance" to the industry they affected, remained untouched.  *Id.* at 1339–40.  Thus, it was ultimately the Librarian's "unfettered removal power" over the copyright royalty judges—after the good-cause removal provision has been severed—that satisfied the court "that the [judges'] decisions will be constrained to a significant degree by a principal officer" to render them inferior officers.  *Id.* at 1341, 1334.

Removability likewise played an important role in the Federal Circuit's recent decision in *Arthrex, Inc. v. Smith & Nephew, Inc.*, 941 F.3d 1320 (Fed. Cir. 2019).  In *Arthrex*, the court determined that Administrative Patent Judges of the Patent Trial and Appeals Board were inferior officers after it severed a statutory limitation on their removal.  *Id.* at 1332, 1338.  This severance was enough to make the Administrative Patent Judges inferior officers even though they were statutorily empowered to issue "final [written] decisions . . . on behalf of the United States," over which the Federal Circuit

concluded no "presidentially-appointed officer ha[d] independent statutory authority to review"—and even after the final decision issued, the court considered it impossible for a presidentially-appointed officer to modify or vacate the Judges' final decision. *Id.* at 1329. That is because, the court explained, the Judges were subject to important supervision in other ways. The Director of the United States Patent and Trademark Office (a Senate-confirmed officer) could provide policy direction, give Judges instructions on how to apply patent law to specific fact patterns, and could decide whether to institute an "*inter partes*" review proceeding to determine the patentability of certain claims. *Id.* at 1331–32. The Director's supervision was meaningful, the court determined, notwithstanding the finality and extremely limited reviewability of the Judges' decisions. *Id.* at 1329. The Director's ability to supervise the Judges, considered alongside the power of at-will removal (after the court severed the statute's removal limitation), rendered the Judges inferior officers. *Id.* at 1338.

At bottom, the availability of at-will removal is a "powerful tool for control," *Edmond*, 520 U.S. at 664, that is sufficient on its own to render an officer of the United States inferior rather than principal. Without the availability of at-will removal, of course, an officer may still be inferior if subject to other oversight through policy guidance and decisional review from a Senate-confirmed officer. *Id.* Where at-will removal is available, though, the question has always been resolved in favor of deeming an officer to be inferior.

## II.   Panel members are inferior officers because they are subject to at-will removal and general supervision by Senate-confirmed officers, and their decisions are subject to meaningful Authority review.

Against that jurisprudential backdrop, the structure of the Authority process and the Panel's role within it make clear that Panel members are inferior rather than principal officers. First and foremost, an officer's removability at will by a Senate-confirmed officer suffices to make the former officer inferior. And here, Panel members are removable at will by the Authority given the President's delegation of his statutory removal authority to the Authority. For that reason, it is largely immaterial

how much ability the Authority has to supervise various aspects of the Panel's work or review Panel decisions. But those factors weigh in favor of inferior-officer status, too. The Statute grants the Authority vast supervision and oversight over the Panel through its broad leadership mandate, and the Panel has the ability to review and reverse Panel decisions. The Authority therefore possesses more than enough tools to control the Panel and its members to render them inferior officers.

### A.   Panel members are inferior because they are removable at will by the Authority, whose members are all Senate-confirmed officers.

At-will removal is one "powerful tool" at the Authority's disposal for supervising the Panel and its members. *Edmond*, 520 U.S. at 664. The Statute makes Panel members removable at will. 5 U.S.C. § 7119(c)(3). That it expressly grants that removal power to the President in the first instance is of no moment. *Id.* In November 2019, the President delegated the "authority under 5 U.S.C. 7119(c)(3) to remove the Chairman and any other member of the [Panel] appointed by the President" to the Authority.[3] Presidential Memorandum of Nov. 12, 2019, 84 Fed. Reg. at 63,789. With that removal power in hand, the Authority exercises significant control over the Panel and its members' day-to-day work. *Edmond*, 520 U.S. at 664. And that, on its own, renders Panel members inferior officers.[4]

This delegation is consistent with the President's general statutory authority "to designate and empower the head of any department . . . to perform . . . any function which is vested in the President by law." 3 U.S.C. § 301. It is likewise consistent with the mandate that the Authority take such

---

[3] The delegation occurred well before the decision issued in this case. *See* ECF No. 5-12 (Panel decision issued April 15, 2020).

[4] This is not to say that officers must be removable by someone other than the President to be deemed inferior. At-will removal by a Senate-confirmed officer is a sufficient, but not necessary, basis for concluding that an officer is inferior. AALJ's out-of-context language from a recent First Circuit decision is not to the contrary. *See Aurelius Inv., LLC v. Puerto Rico*, 915 F.3d 838, 860 (1st Cir.), *cert. granted sub nom.*, 139 S. Ct. 2738 (2019) (finding that officers were principal when they were "answerable to and removable only by the President *and* [we]re not directed or supervised by others who were appointed by the President with Senate confirmation" (emphasis added)).

14

"actions as are necessary and appropriate to effectively administer" the Statute's provisions.  5 U.S.C. § 7105(a)(2)(I).

AALJ's assertions that the President's delegation is somehow unlawful and contrary to the Statute are meritless.  According to AALJ, the President had no authority to delegate his removal power to the Authority, because Congress expressly vested removal of Panel members in the President alone—and a memorandum from the President, AALJ says, can't override a statute.  AALJ's Mot. for Prelim. Inj. ("Pl.'s Mot.") at 20–21, ECF No. 8.  AALJ is wrong.  The President's removal delegation, rather than overriding the Statute, is a lawful exercise of the President's authorization from Congress to delegate to the "head of any department . . . any function which is vested in the President by law." 3 U.S.C. § 301.  So when Congress vested the President with the power to remove Panel members through this specific Statute, it had already vested him with the authority to delegate "any function," including removal, to a department head.  The delegation of removal authority was made against the backdrop, and with Congress's knowledge, of that general delegation authority.  Here, that means that the President may delegate the power to remove Panel members at will to the Authority.

Nor is the President's removal delegation contrary to the Appointments Clause itself, as AALJ also suggests.  Under the Clause, Congress may vest appointments of inferior officers in "the President alone, in the Courts of Law, or in the Heads of Departments."  U.S. Const. art. II, § 2, cl. 2.  Although Congress assigned the power to appoint Panel members to the President alone, it just as well could have assigned such power to the Authority—that is, a department head.  *Id.*; *see Free Enterprise*, 561 U.S. at 512-13 ("As a constitutional matter, we see no reason why a multimember body may not be the 'Hea[d]' of a 'Departmen[t]' that it governs.").  Accordingly, the Executive Branch has consistently concluded that the President may delegate his authority to appoint inferior officers to a department head, without running afoul of the Appointments Clause.  *See, e.g.*, *Assignment of Certain Functions Related to Military Appointments*, 29 U.S. Op. Off. Legal Counsel 132 (2005) ("Nothing in the text [of the

15

Appointments Clause] precludes Congress from vesting the power by law in the President while permitting him to delegate it to the head of a department subject to his supervision.").

The same logic supports the President's delegation of his congressionally assigned authority to remove inferior officers. As the Supreme Court emphasized in *Myers v. United States*, 272 U.S. 52, 119 (1926), there is a "well-approved principle of constitutional and statutory construction that the power of removal of executive officers [is] incident to the power of appointment." The Statute gives the President the power to appoint and remove Panel members, but Congress also gave the President the authority to delegate any of his functions to a department head. For the same reason that the President's delegation of appointment authority over an inferior officer to a department head does not run afoul of the Constitution, neither does his delegation of removal.

AALJ seeks to counter that unremarkable and longstanding proposition by citing to a 1981 Office of Legal Counsel Opinion, Presidential Succession and Delegation in Case of Disability, 5 U.S. Op. Off. Legal Counsel 91 (1981) ("Presidential Succession"), which, it says, concludes the contrary. But AALJ reads that 1981 OLC Opinion out of context, and misunderstands both it and the established jurisprudence it analyzes. The Opinion does note that "[t]he power to remove purely executive presidential appointees" is a nondelegable function of the President. Presidential Succession at 94–95 (citing *Myers*, 272 U.S. at 119). But AALJ should have read the citation to that general statement to better understand the meaning of the term "purely executive presidential appointees," which the Opinion itself does not define. Had it done so, AALJ presumably would have understood that the term encompasses only officers of the United States whom the President has appointed by and with the advice and consent of the Senate. Reading the cited passage from *Myers* makes that plain; it sets forth the decision's holding that, "under the Constitution[,] the President has the exclusive power of removing executive officers of the United States whom he has appointed by and with the advice and consent of the Senate[.]" 272 U.S. at 106. In fact, contrary to AALJ's contention, neither

*Myers* nor the 1981 OLC Opinion that cited it speaks to the President's ability to delegate the removal of inferior officers.

When it comes to inferior officers, in short, neither the Constitution nor the Statute here prohibits the President from delegating his removal authority to a department head.   AALJ's counterarguments thus miss the mark.

What is more, contrary to AALJ's contentions, the President's delegation of removal authority does not purport to alter the officer status that Congress intended Panel members to carry.  Rather, authorizing the Authority to exercise removal power over the Panel is entirely consistent with Congress's intent, as expressed in the Statute, to assign Panel members inferior-officer status by allowing for their appointment without Senate confirmation.  The President's delegation of authority to the Senate-confirmed officers Congress tasked with administering the Statute and overseeing the Panel's work is consistent with the statutory design, not counter to it.

Finally, AALJ asserts that in directing the Authority to "consider the extent to which decisions of members of the FSIP are consistent with the requirements of the [Statute]," the Presidential memorandum purports to bestow on the Authority review power over Panel decisions that the President himself does not possess in the first instance.  Pl.'s Mot. at 21.  As an initial matter, and as discussed further below, *infra* Section II.C., the Authority already possesses, and indeed exercises, the power to "consider the extent to which [Panel] decisions" are consistent with the Statute.  *See* 5 U.S.C. §§ 7101(b), 7105(a)(2)(I).  But in any event, in directing the Authority to consider the goals advanced by the Panel's decisions, the President did not vest the Authority with any new review power; he simply informed the Authority how it should exercise its delegated removal power.  Presidential Memorandum Section 1(b) ("*In exercising the authority delegated by this section*, the FLRA shall consider the extent to which decisions of members of the FSIP are consistent with the requirements of [the Statute] . . . ." 84 Fed. Reg. at 63,789 (emphasis added)).  Besides, AALJ's assertion that the President

himself lacks the ability to consider the merits of Panel decisions is illogical.  The President's ability to consider whether a Panel member's decisions are consistent with the Statute inheres in the President's ability to remove that Panel member for any reason whatsoever.  Nothing in the Statute limits what considerations the President may take into account when exercising his removal power.  And of course nothing prevents the President from offering guidance to the Authority on what considerations they should take into account when exercising their presidentially delegated at-will removal power.  AALJ's arguments to the contrary are simply not credible.

Because the President lawfully delegated his at-will removal power to the Authority, the Authority has a powerful tool for controlling Panel members that is sufficient on its own to render them inferior officers.

> **B.  The Authority's exercise of leadership and policy guidance over the Panel likewise renders the Panel's members inferior officers.**

The Authority's ability to remove Panel members at will is not the only *Edmond* factor that compels the conclusion that those members are inferior officers.  The Authority also possesses wide latitude under the Statute to oversee the Panel's work, which likewise supports the conclusion that Panel members are inferior officers.

The starting point for the Authority's general supervision over the Panel is the Statute's placement of the Panel as an "an entity within" the Authority.  5 U.S.C. § 7119(c)(1).  This placement creates a "strong presumption" that the Panel is subject to the supervision of the Authority, the department head.  *Whether the Special Master for Troubled Asset Relief Program Executive Compensation Is a Principal Officer Under the Appointments Clause*, 34 Op. Office of Legal Counsel at *11-12 (2010).  That presumption "may be overcome" when there is a "'specific and explicit [statutory] *reservation*'" to the contrary.  *Id.* at *12.  There is no such reservation here.

Quite the contrary, in fact:  The Statute consistently underscores the Authority's policy-setting and supervisory role over the Panel.  It tasks the Authority with "provid[ing] leadership in establishing

policies and guidance relating to matters under this chapter, and" makes the Authority "responsible for carrying out the purpose of" the Statute.  5 U.S.C. § 7105(a)(1); *see also* 5 C.F.R. § 2429.4 (Authority regulation providing that the Panel "may refer for review and decision or general ruling by the Authority any case involving a major policy issue that arises in a proceeding before [it]").  And it authorizes the Authority to "take such . . . actions as are necessary and appropriate to effectively administer the provisions of this chapter."  5 U.S.C. § 7105(a)(2)(I).  The chapter's provisions, of course, include those governing the Panel's impasse-resolution activities.

Relying on these statutory authorities, the Authority has issued statements of policy or guidance that govern the Panel's work.  *See, e.g.*, *Interpretation & Guidance*, 11 FLRA 626, 626 (Mar. 17, 1983) (clarifying that the Panel lacks authority to resolve duty-to-bargain questions arising after the Panel has asserted jurisdiction over the parties' impasse).  And the Authority's policy-setting responsibility under the Statute extends more broadly than simply empowering it to issue general statements of policy or guidance on its own initiative.  Processing of Cases; Final Rules, 45 Fed. Reg. 3485 (Jan. 17, 1980) (codified at 5 C.F.R. Ch. XIV).  The Panel itself may seek the Authority's specific guidance, in the context of an ongoing negotiation-impasse proceeding, by referring any "case involving a major policy issue that arises in a proceeding before" the Panel.  5 C.F.R. § 2429.4; *see, e.g.*, *Fed. Lab. Rel. Auth.*, 7 FLRA 682, 683 (1982) (Authority decision providing input on an issue of statutory interpretation at the Panel's request); *Fed. Lab. Rel. Auth.*, 31 FLRA 1294 (1988) (Authority decision declining to issue the general ruling the Panel requested, but providing some guidance for the Panel to consider in resolving the question regarding an agency's duty to maintain the status quo during bargaining).

Additionally, the Authority may affect the procedure of certain negotiation-impasse proceedings before the Panel by exercising its responsibility to "effectively administer the Statute" to stay certain Panel decisions entirely.  *See, e.g.*, *Nat'l Treasury Emps. Union*, 32 FLRA 1131, 1137–38

(1988) (finding that the Authority could stay a Panel order under its authorization to take any action "necessary and appropriate to effectively administer the" Statute and interpret the Statute "in a manner consistent with the requirement of an effective and efficient Government" under 5 U.S.C. §§ 7105(a)(2)(I) and 7101(b), respectively).

The President's delegation memorandum further underscores the Authority's supervisory role over the Panel by directing the Authority, "[i]n exercising the authority" to remove Panel members, to "consider the extent to which decisions of members of the [Panel] are consistent with the requirements of [the Statute], with particular attention to whether the decisions are consistent with the requirement of an effective and efficient Government, as those terms are used in 5 U.S.C. § 7101(b), in addition to any other factors that the FLRA may consider appropriate." 84 Fed. Reg. at 63,789. This directive affirms what the Authority itself understands about the Statute's open-ended language: By speaking in broad and general terms, Congress authorized the Authority to supervise the Panel's work—including in ways not expressly spelled out in the Statute—in a manner that fits both the circumstances before it and the requirement that the Authority ensure the Statute is administered consistent with the requirements of an "effective and efficient government." 5 U.S.C. § 7101(b); *see, e.g.*, *Nat'l Treasury Emps. Union*, 32 FLRA 1131, 1137–38 (1988) (staying a Panel decision pursuant to its authority under these provisions).

The Authority's leadership over the Panel, which it exercises by issuing policy and guidance statements and staying or overturning Panel actions, demonstrates that Panel members are inferior officers. *Edmond*, 520 U.S. at 664 (the Judge Advocate General's formulation of policies and procedures governing military judges' review of court-martialed cases weighed in favor of finding the military judges inferior); *Intercollegiate*, 684 F.3d at 1339 (the Librarian's ability to issue regulations and oversee logistical aspects of the Copyright Royalty Judges' duties weighed in favor of finding the Judges inferior). Add that to the Authority's power to remove Panel members without cause, and the

Authority's supervision over the Panel's work is more than sufficient to render the Panel members inferior officers.

In light of these means of supervising the Panel, it makes no difference whether Panel members may issue final decisions or the extent to which those decisions are reviewable by the Authority (although, as explained below, *infra* Part II.C., the Authority does exercise meaningful review of Panel decisions). AALJ says otherwise, asserting that Panel members exercise vast discretion in issuing substantive decisions that are not subject to Authority review whatsoever, Pl.'s Mot. at 17–18, but that argument vastly overstates the Panel's independence and would not be dispositive in any event. As discussed in more detail below, *see infra* II.C., the Authority certainly has power to review Panel decisions—it does so primarily in the context of unfair labor practice proceedings or negotiability appeals, but in other contexts as well. But setting aside AALJ's overstatements—and even assuming for the sake of argument that Panel decisions are entirely non-reviewable (but again, they are reviewable)—AALJ's argument still must fail.

It is true, as AALJ notes, that the *Intercollegiate* court viewed the copyright royalty judges' unreviewable discretion as a point in favor of principal-officer status. 684 F.3d at 1340. But that factor was no longer critical once the court severed the statute's for-cause removability limitation, giving the Librarian unbounded discretion to remove the judges at will. *Id.* ("[I]nvalidating and severing the restrictions on the Librarian's ability to remove the CRJs eliminates the Appointments Clause violation," even though "individual CRJ decisions will still not be directly reversible."). The Librarian's unfettered removal power, not to mention its ability to exercise other, more indirect oversight over the copyright royalty judges' work (*e.g.*, issuing opinions on novel questions of law), gave it sufficient control and oversight over the judges to make them inferior. *Id.* at 1338. That accords with the Supreme Court's decision in *Free Enterprise*, in which the Court concluded, with "no hesitation," that Public Company Accounting Oversight Board members were inferior officers

21

because they were removable at will and subject to general supervision, even though the Board was still "empowered to take significant enforcement actions, . . . largely independently of the Commission[.]"  561 U.S. at 510.

The same is true here.  Panel members may be removed by the Authority at will, and they receive guidance from the Authority in carrying out their day-to-day tasks related to the resolution of collective bargaining negotiation impasses.  This makes them inferior officers.

Finally, the Panel's authority to issue its own regulations does not render Panel members principal officers, despite AALJ's contention to the contrary.  *See* Pl.'s Mot. at 18-19.  *See* 5 U.S.C. § 7134 (authorization the Panel to promulgate "rules and regulations to carry out the provisions of" the Statute applicable to the Panel's work).  To support that contention, AALJ relies on out-of-context language from the Federal Circuit's decision in *Arthrex* to argue that the "'authority to promulgate regulations' identifies a principal officer."  Pl.'s Mot. at 19 (quoting *Arthrex*, 941 F.3d at 1332).  But *Arthrex* said no such thing.  Rather, *Arthrex* identified the Senate-confirmed Director's "authority to promulgate regulations governing the conduct of *inter partes* review" as just one of the "policy controls" at the Director's disposal in supervising the work of the Administrative Patent Judges at issue in that case.  941 F.3d at 1332.  That supervisory tool, along with several others, weighed in favor of finding that the Director's oversight over the Administrative Patent Judges made the Judges inferior officers.  *Id.*

In misconstruing this language in *Arthrex*, AALJ's argument again misses the main point of the *Edmond* analysis, and attempts to shift the focus away from the Authority's ability to supervise the Panel and instead toward the scope of the Panel's own authority.  But as *Edmond* explained, it is not "[t]he exercise of significant authority" that marks "the line between principal and inferior officer for Appointments Clause purposes, but rather" the extent to which the officer's "work is directed and supervised as some level by others who were appointed by Presidential nomination with the advice

22

and consent of the Senate."  520 U.S. at 662-63; *see also Ass'n of Am. Railroads*, 821 F.3d at 29 ("[A]s the Supreme Court's opinion in *Edmond* clarified, the degree of an individual's authority is relevant in marking the line between officer and nonofficer, not between principal and inferior officer.").  That the Panel may promulgate its own regulations may demonstrate that its members' possess a level of authority makes them officers as opposed to employees.  It has no bearing, however, on whether Panel members are principal as opposed to inferior officers; the Authority's ability to supervise the Panel and its members is the only relevant issue when it comes to determining officer status.  And here, as explained, the Authority has sufficient "policy controls," *Arthrex*, 941 F.3d at 1332, at its disposal to supervise the Panel's work to make them inferior officers.

> C.   **The Authority's ability to review, modify, and reverse Panel decisions affirms that Panel members are inferior officers.**

Although unnecessary to render Panel members inferior officers under *Edmond* in light of the Authority's at-will removal authority and its broad supervision authority over the Panel, the Authority's power to review the Panel's decisions weighs in favor of the same conclusion.  Panel decisions are subject to potential review, modification, and reversal by the Authority, primarily in the context of unfair labor practice proceedings and negotiability appeals, but in other contexts, too.  It matters not whether that review is plenary, despite AALJ's suggestions to the contrary.  Pl.'s Mot. at 24.  *See Edmond*, 520 U.S. at 665 (finding that military judges were inferior officers even though their findings of fact were left largely unreviewed by Senate-confirmed officers).  The Panel may review questions of law raised in Panel decisions, but it has authority under the Statute to review the substance of Panel decisions as well.  Therefore, this factor affirms what the other two already make clear:  that Panel members are inferior officers.

At the outset, AALJ's assertions that Panel decisions are "absolute" and "not reviewable by the FLRA or any other executive-branch agency," Pl.'s Mot. at 19, are unsupported and ought to be dismissed out of hand.  Panel decisions, to be sure, are "binding on [the] parties during the term of

the[ir] agreement," although the parties themselves may "agree otherwise."  5 U.S.C. § 7119(c)(5)(C).

And Panel decisions are not generally subject to Authority review on direct appeal.  *Brewer*, 735 F.2d

at 1499.  But they are subject to Authority review in the context of an unfair labor practice proceeding

or negotiability appeal.  *Nat'l Air Traffic Controllers Ass'n AFL-CIO v. FSIP*, 437 F.3d 1256, 1262 (D.C.

Cir. 2006).

A Panel decision makes its way to the Authority in either one of these proceedings if either

party—the union or the agency that would be bound by the decision—refuses to comply with any of

its provisions.  After the Panel issues its decision, the head of the agency bound by the Panel decision

has thirty days to approve or disapprove of any Panel-ordered provision; if the agency disapproves (or

approves but later fails to comply), then the union may file a negotiability appeal or an unfair labor

practice proceeding with the Authority to enforce the decision.  5 U.S.C. § 7114(c)(3); *Interpretation &*

*Guidance*, 15 FLRA at 568.[5]  Alternatively, if the agency head approves the Panel decision within the

allotted thirty days, but the union refuses to abide by it, then the agency may file an unfair labor

practice charge to enforce it.  *Brewer*, 735 F.2d at 1500.  In either proceeding, the Authority must

determine whether the Panel decision is consistent with governing law.  If it is, then the agency head's

disapproval constitutes an unfair labor practice, 5 U.S.C. § 7116(a)(6) (making it an unfair labor

practice "to fail or refuse to cooperate in impasse procedures and impasse decisions").  If it isn't, then

the Authority may modify or reverse the Panel decision, in whole or in part, *Interpretation & Guidance*,

15 FLRA at 568–69; 5 U.S.C. §§ 7117, 7118; 5 C.F.R. §§ 2424.20–2424.22; *Buchanan, Puerto Rico &*

*Antilles Consol. Educ. Ass'n*, 71 FLRA 127, 133–34 (2019).

In ruling on issues of law raised in these proceedings, the Authority may issue binding

precedent that limits the Panel's exercise of its discretion.  For instance, Authority precedent makes

---

[5] If the agency head does not affirmatively approve or disapprove any of the agreement's terms, the
agreement goes into effect once the thirty-day review period expires.  5 U.S.C. § 7114(c)(3).

clear that the Panel is prohibited from resolving certain disputes as to whether a contract term is negotiable within the meaning of the Statute. *See Commander Carswell Air Force Base, Tx. & Am. Fed'n of Gov't Emps., Local 1364*, 31 FLRA 620, 625 (1988) (holding that the Panel lacks authority to resolve disputes over the negotiability of a contract proposal unless Authority precedent deals with a substantially similar proposal). The Panel, for its part, recognizes that these Authority decisions set boundaries on the scope of its decision-making authority. *See, e.g., U.S. Dep't of Def., Def. Logistics Agency & Am. Fed'n of Gov't Emps., Def. Logistics Agency Council of AFGE Locals*, 18 FSIP 080 (2019) ("After the parties provided their initial written submissions, the Panel contacted the parties and informed them that some of the arguments discussed above appeared to set forth legal arguments" about the meaning of the parties' CBA provisions "that the Panel lacked jurisdiction to resolve.").

What's clear from all of this is that the Authority regularly reviews Panel decisions for their compliance with any relevant law in the context of the specific unfair labor practice and negotiability appeal proceedings. Even if the Statute's text does not explicitly provide the Authority with direct plenary review over Panel decisions, the scope of review the Authority plainly possesses more than suffices to deem Panel members to be inferior officers under the Statute's scheme.

After all, *Edmond* itself rejected any notion that plenary review by a Senate-confirmed officer is a requirement for inferior-officer status. The military judges in *Edmond* issued decisions that were subject to review within limits—"so long as there [was] some competent evidence in the record to" support the decision, "the Court of Appeals for the Armed Forces w[ould] not reevaluate the facts." *Edmond*, 520 U.S. at 665. Following *Edmond*, the Federal Circuit has stressed that "the fact that [] review is *limited* does not mandate that [the officers] are necessarily 'principal officers.'" *Masias v. Sec'y of Health & Human Servs.*, 634 F.3d 1283, 1295 (Fed. Cir. 2011) (emphasis added) (quoting *Edmond*, 520 U.S. at 665)). As the D.C. Circuit found in *Intercollegiate*, the ability of the Librarian to "provide substantive input on non-factual issues" relevant to Copyright Royalty Judges' determinations, "which

the Judges [we]re free to consult" in the Register, was sufficient when coupled with the "threat of removal" to deem the Judges inferior officers.  684 F.3d at 1341.  These mechanisms of control "constrain[ed]" the Judges' "power enough to" render them inferior, even though their decisions were not actually correctable or reversible.  *Id.* at 1340–41.  *Cf. Free Enterprise*, 561 U.S. at 490, 504 (Board members were inferior officers notwithstanding their authority to "take significant enforcement actions . . . largely independently of the Commission" and without guaranteed Commission review of their actions and decisions); *Arthrex*, 941 F.3d at 1329 (Administrative Patent Judges subject to removal at will were inferior officers even though they were statutorily empowered to issue "final [written] decisions . . . on behalf of the United States," over which no "presidentially-appointed officer ha[d] independent statutory authority to review," modify, or vacate).

But the Statute's open-ended language leaves ample room to conclude that the Authority's review power goes even further than simply reviewing questions of law and also extends to the substance of Panel provisions, as the circumstances require.  Again, the Statute mandates that the Authority provide leadership in administering the Statute, 5 U.S.C. § 7105(a)(1); ensure that its provisions are interpreted in a manner consistent with an effective and efficient government, *id.* § 7101(b); and take any such "actions as are necessary and appropriate to effectively administer the provisions of this chapter," *id.* § 7105(a)(2)(I).  Read together, these provisions provide the Authority broad leeway to consider the merits of Panel decisions as the circumstances require.  So does the Authority's ability to "hold hearings . . . administer oaths," take testimony or depositions, issue subpoenas, and "take any remedial action it considers appropriate to carry out the policies of" the Statute.  5 U.S.C. § 7105(g).

Considered as a whole, therefore, the Statute gives the Authority wide latitude to review Panel decisions under whatever standard is required to ensure the Panel's decision is consistent with the purposes of the Statute.  And the Panel has in fact exercised more exacting review of Panel decisions

and actions. In *American Federation of Government Employees, AFL-CIO, Local 3732*, 16 FLRA 318 (Oct. 31, 1984), for instance, the Authority adopted the administrative law judge's conclusion that the underlying Panel decision was lawful because, among other reasons, its proviso that the parties bargain past 5 p.m. was not "arbitrary or capricious." 16 FLRA at 326-27. Moreover, recognizing the flexibility the Statute provides in exercising review of Panel decisions, the Authority has left open the possibility that a more searching review on the merits may at times be warranted, even while declining to set a particular standard of review that should apply in every case. *See Div. of Military & Naval Affairs, State of N.Y., Albany, N.Y. & N.Y. Council, Ass'n of Civilian Technicians*, 8 FLRA 158, 158 (1982) ("The Authority finds it unnecessary, in view of the nature of the [appeal], to address further the [Administrative Law] Judge's discussion of the scope of the Authority's review of [Panel] decisions.").

What is more, as already explained, the Authority's array of additional oversight tools allows it to supervise and control the Panel's work in a variety of other ways. The Authority issues statements of policy and guidance, *e.g.*, *Interpretation & Guidance*, 11 FLRA 626, 626 (Mar. 17, 1983); accepts referrals from the Panel of any "case involving a major policy issue," 5 C.F.R. § 2429.4; and exercises its authority to stay Panel proceedings as the circumstances require. *Nat'l Treasury Emps. Union*, 32 FLRA 1131, 1137–38 (1988). And it issues precedential decisions, where warranted, that place limits on the Panel's exercise of jurisdiction over negotiation impasses. *See, e.g.*, *Commander Carswell Air Force Base*, 31 FLRA at 625. Those methods of supervising the Panel's work give the Authority sufficient control over Panel decisions and actions—particularly when considered alongside the Authority's at-will removal power—to render Panel members inferior.

Perhaps recognizing the significance of the review and supervisory tools at the Authority's disposal, AALJ completely ignores them, instead overemphasizing the statement in a single D.C. Circuit decision, *Council of Prison Locals v. Brewer*, that "Panel orders are not appealable even to the Authority." Pl.'s Mot. at 6 (quoting *Brewer*, 735 F.2d at 1499). That suggestion goes nowhere. *Brewer*

had nothing to do with the question presented here; it did not involve an Appointments Clause challenge. Beyond that, AALJ fails to mention what *Brewer* and the myriad cases before and after it also recognize. As those opinions explain, even if Panel decisions are not, as a default rule under the Statute, directly appealable to the Authority, they are nonetheless subject to Authority review in the context of unfair labor practice proceedings and negotiability appeals. *See Brewer*, 735 F.2d at 1500. The Authority's review in those proceedings gives it meaningful supervision over the Panel's work. That's the case regardless of whether the Authority cabins its review to legal determinations or exercises discretion to review the merits of any Panel provision for substantive reasonableness or arbitrariness, too. The Authority's additional supervisory tools augment that review power by giving the Authority the flexibility to guide the substance of Panel decisions and the procedures used to reach them.

Finally, in asking this court to declare this act of Congress unconstitutional, AALJ ignores that even if the Authority's scope of supervision and review were ambiguous, it still could not prevail so long as there is any "reasonable interpretation [of the Statute] available" that would avoid "render[ing] it clearly unconstitutional." *Edmond*, 520 U.S. at 658. At an absolute minimum here, there is plainly a construction of the Authority's supervisory and review powers that would avoid rendering the Statute unconstitutional. The Court may rely on Section 7101(b)'s mandate that the Statute be interpreted in a manner consistent with an "effective and efficient government"; Section 7105(a)(1)'s grant of "leadership" to the Authority "in establishing policies and guidance relating to matters under [the Statute"; and 7105(a)(2)(I)'s authorization for the Authority to take any actions that "are necessary and appropriate to effectively administer the provisions of [the Statute]," to conclude that the Authority has ample review power to influence Panel proceedings and decisions even in ways that are not expressly provided by the Statute. The Statute's broad leadership mandate, alongside the Authority's

at-will removal power, compels the conclusion that Panel members are inferior officers who are constitutionally appointed by the President alone.

## **CONCLUSION**

For the reasons set forth here, Panel members are inferior rather than principal officers. Their appointment to the Panel by the President without Senate advice and consent, as set forth in 5 U.S.C. § 7119(c)(2), thus comports with the Constitution's Appointments Clause. The Court should enter summary judgment in favor of the defendants.

Dated: May 11, 2020

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

CHRISTOPHER R. HALL
Assistant Branch Director

*/s/ Kyla M. Snow*
KYLA M. SNOW (Ohio Bar No. 96662)
Trial Attorney
U.S. Department of Justice, Civil Division
Federal Programs Branch
1100 L Street, NW
Washington, D.C.  20005
Email: kyla.snow@usdoj.gov
Phone: (202) 514-3259
Fax: (202) 616-8460
*Counsel for the Social Security Administration*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 11, 2020 a copy of the foregoing Response in Opposition to Plaintiff's Motion for Summary Judgment and Cross-Motion for Summary Judgment was filed electronically via the Court's ECF system, which effects service upon counsel of record.

/s/ Kyla M. Snow
KYLA M. SNOW (Ohio Bar No. 96662)
Trial Attorney, U.S. Department of Justice