**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ASSOCIATION OF ADMINISTRATIVE LAW JUDGES,  ) ) ) ) | |
| Plaintiff,                )   )  | Case No. 1:20-cv-01026-ABJ |
| v.                )   )  | |
| FEDERAL SERVICE IMPASSES PANEL, *et al.*,  ) ) ) | |
| Defendants.                )   )  ) | |

## <u>REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................................... 1

ARGUMENT ................................................................................................................................... 4

    I.    The Statute affords AALJ with meaningful judicial review in the context of an unfair labor practice proceeding, which is triggered by challenges to the lawfulness of a Panel decision and thus place AALJ directly within the administrative review scheme. ....................................................... 4

    II.   Binding precedent forecloses AALJ's attempt to create an extra-statutory exception for constitutional or declaratory judgment actions. ................................................................................. 15

    III.    Allowing AALJ's claim to proceed outside the statutory scheme would encourage claim-splitting and thus upset the careful remedial scheme that Congress established through the Statute. 21

CONCLUSION ............................................................................................................................. 24

# TABLE OF AUTHORITIES

## Cases

*AFGE v. Sec'y of the Air Force,*
716 F.3d 663 (D.C. Cir. 2013) ................................................................................................... 1

*AFGE v. Trump,*
929 F.3d 748 (D.C. Cir. 2019) ................................................................................ 6, 16, 17, 20

*Bennett v. SEC,*
844 F.3d 174 (4th Cir. 2016) ................................................................................................... 20

*Council of Prison Locals v. Brewer,*
735 F.2d 1497 (D.C. Cir. 1984) ....................................................................................... passim

*Elgin v. U.S. Dep't of Treasury,*
567 U.S. 1 (2012) ............................................................................................................. passim

*Free Enterprise Fund v. Public Company Accounting Oversight Board,*
561 U.S. 477 (2010) ......................................................................................................... passim

*FTC v. Standard Oil of Calif.,*
449 U.S. 232 (1980) ................................................................................................................ 12

*Hill v. SEC,*
825 F.3d 1236 (11th Cir. 2016) ............................................................................................... 21

*Jarkesy v. SEC,*
803 F.3d 9 (D.C. Cir. 2015) ............................................................................................. passim

*Nat'l Air Traffic Controllers Ass'n v. Fed. Serv. Impasses Panel,*
437 F.3d 1256 (D.C. Cir. 2006) ................................................................................... 9, 17, 18

*Nat'l Air Traffic Controllers Ass'n v. Fed. Serv. Impasses Panel,*
606 F.3d 780 (D.C. Cir. 2010) ........................................................................................ passim

*Overseas Educ. Ass'n v. Fed. Labor Relations Auth.,*
824 F.2d 61 (D.C. Cir. 1987) ..................................................................................................... 5

*Patent Office Prof'l Ass'n v. FLRA,*
26 F.3d 1148 (D.C. Cir. 1994) ................................................................................................ 24

*Steadman v. Gov'n, U.S. Soldiers' & Airmen's Home,*
918 F.2d 963 (D.C. Cir. 1990) ............................................................................... 2, 7, 9, 11, 21

*Thunder Basin Coal Co. v. Reich*,
   510 U.S. 200 (1994) ..................................................................................................*passim*

*Tilton v. SEC*,
   824 F.3d 276 (2d Cir. 2016) ..............................................................................13, 14, 20

*Weaver v. U.S. Info. Agency*,
   87 F.3d 1429, 1433 (D.C. Cir. 1996) ................................................................................9

## Administrative Law Cases

*Dep't of Defense Domestic Dependent Elementary*,
   71 FLRA 127 (2019) ..........................................................................................................24

*Dep't of Health and Human Servs.*, National Grievance before Arbitrator Robert A. Creo (Aug. 7,
   2018), https://www.nteu.org/~/media/Files/nteu/docs/public/hhs/2019/hhs-grievance-
   win.pdf?la=en .......................................................................................................................8

*Nevada National Guard*,
   7 FLRA 245 (1981) ............................................................................................................23

*U.S. Dep't of Def. Educ. Activity, Arlington, Va.*,
   56 FLRA 119 (2000) ..........................................................................................................23

## **INTRODUCTION**

The jurisdictional question presented in this case is not *whether* an Article III court may address the plaintiff Association of Administrative Law Judges' Appointments Clause challenge to the Federal Service Impasses Panel (the "Panel"), as AALJ would have it—it's which Article III court may do so, and when. Binding D.C. Circuit precedent addressing that question under the Federal Service Labor-Management Relations Statute, 5 U.S.C. § 7101 *et seq.* (the "Statute"), has already answered it: As with other claims of this sort, only an appropriate court of appeals may hear AALJ's Appointments Clause claim; and it may do so only after the claim follows the Statute's exclusive administrative and judicial review scheme, which channels all claims first to the Authority and then to the court of appeals. The only route around that scheme and into district court is through the "extraordinary circumstances" set forth in *Leedom v. Kyne*, which the D.C. Circuit has described as a "Hail Mary pass" that "rarely succeeds." *AFGE v. Secretary of Air Force*, 716 F.3d 633, 639 n.6 (D.C. Cir. 2013).

Rather than grapple with that clear authority or attempt to justify its effort to interrupt ongoing collective-bargaining negotiations and jump into district court under *Leedom*, AALJ tries two different tacks to get around those jurisdictional constraints. First, AALJ doubles down on its efforts to reframe a straightforward collective-bargaining dispute as something akin to the case before the Supreme Court in *Free Enterprise v. Public Company Accounting Oversight Board*, 561 U.S. 477 (2010), even advancing a new theory that a review scheme provides for "meaningful" judicial review only when it allows for separate, direct district-court review of incremental steps in a larger administrative review process. AALJ asserts that because it lacks access to direct review of the Panel's decision, it is forced to manufacture a new dispute before the Authority in order to obtain the judicial review it seeks.

This argument gets it wrong in at least two ways. For one, it treats what is in fact one step to finalizing what is often a long and complicated bargaining process—the resolution of a negotiation impasse—as the culmination of a distinct administrative process itself. But as Defendants' Motion to

Dismiss explains, Df.'s Mot. at 16-17, ECF No. 22, when a party believes that the Panel has erred in issuing a decision unfavorable to it, the Statue provides the unfair labor practice proceeding as the next step for resolving the parties' dispute over whether the Panel decision should be enforced.  Only after completion of the unfair labor practice proceedings does the Panel decision become final and enforceable through an Authority decision subject to review in an appropriate court of appeals.  5 U.S.C. § 7123(a).

For another, AALJ's argument flows from the mistaken belief that because the statutory review scheme here is indirect, and could culminate in finding that it has committed an unfair labor practice, *Free Enterprise* justifies an end-run around it.  But that kind of argument did not originate with *Free Enterprise*; rather, it was specifically addressed and rejected in *Free Enterprise*'s jurisdiction-channeling antecedent, *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 206-07 (1994).  In *Thunder Basin*, the Supreme Court addressed an argument substantially identical to AALJ's and held that the plaintiff mining company could not preempt an administrative-review process and jump into district court under a similar review-channeling scheme.  *Thunder Basin*'s progeny reiterate that conclusion, consistently rejecting attempts by claimants to go around multi-step administrative processes—even where they may be protracted, and even where they may result in sanctions along the way.  Such possibilities, and any other harms that may attend the administrative-review process, have never been enough on their own to conclude that a review scheme cuts off access to meaningful judicial review.  Consistent with that authority, AALJ cannot justify its failure to pursue the administrative options available to it within the Statute's review scheme.  *Steadman v. Governor, U.S. Soldiers' & Airmen's Home*, 918 F.2d 963, 966 (D.C. Cir. 1990).

As an alternative path around the statutory review scheme, AALJ attempts to craft a new species of claim that it says this Circuit treats differently: challenges seeking "declaratory relief" based on the Panel's "authority to act" rather than "review of the merits of" a Panel decision.  To advance

that argument, AALJ puts all its weight on *Nat'l Air Traffic Controllers Ass'n v. Fed. Serv. Impasses Panel*, 606 F.3d 780, 783 (D.C. Cir. 2010) ("*NATCA II*"). That case, however, presents a set of factual and procedural circumstances wholly removed from those presented here. AALJ's attempt to cordon off declaratory judgment actions, moreover, has been rejected by this Circuit as far back as *Council of Prison Locals v. Brewer*, 735 F.2d 1497, 1500 (D.C. Cir. 1984). What is more, creating an exception for AALJ's new category of claims would run counter to Supreme Court precedent that precludes jurisdictional line-drawing based on the type of constitutional claim asserted.

And for what it's worth, AALJ's attempt to leverage *NATCA II* into an entirely new route for bypassing the Statute's comprehensive review scheme here—in the context of an unfavorable Panel decision it wishes to have nullified—ignores the very same relief it originally sought in its effort to expedite briefing before this Court: a preliminary injunction. AALJ's retreat to an argument that it may obtain direct district court review because it seeks purely declaratory relief is thus fatally inconsistent with its own strategy in trying to jump into district court in the first place. And even if AALJ were to respond to this inconsistency by suggesting that it may seek both forms of equitable relief at the same time—one within the district court's jurisdiction, even if the other one is not—such a response would only underscore that what AALJ is doing is trying to improperly split its claims in an effort to manufacture district court jurisdiction while reserving a right to pursue other challenges to the Panel decision elsewhere. AALJ's arguments on this point are confusing at best, but however they are construed, they fail to manufacture the district court jurisdiction that it seeks.

Relatedly, AALJ's attempt to manufacture an Appointments Clause challenge from a single unfavorable Panel decision while at the same time disclaiming any intent to challenge the Panel decision itself would—if successful—paint its case into a different jurisdictional corner, one requiring dismissal for lack of Article III standing. AALJ insists that it seeks to challenge the Panel members' appointments without taking any issue with the Panel decision itself. Of course, AALJ cannot raise a

constitutional claim "in the air," untethered to an actual Panel decision; if the Panel decision did not exist, then AALJ would have no alleged injury in fact on which to base its challenge to the Panel members' appointments. Ultimately, though, none of this matters all that much. AALJ is using its Appointments Clause challenge as the vehicle by which it seeks to overturn the Panel decision with which it takes issue, which means that its sole claim here is jurisdictionally channeled under the statutory scheme, and thus falls outside of district court jurisdiction for that reason.

Finally, none of this means that AALJ has no way of litigating its claim in an Article III court at this very moment. All it must do is appeal the Authority's final order denying AALJ's request to stay the Panel decision here. *See* Df.'s Mot. at 22-23. Although Defendants pointed out that option in their Motion to Dismiss, *id.*, AALJ's Response is silent as to why it has failed to take that route and insists on pursuing its claim in this Court.

For all of these reasons, AALJ's complaint should thus be dismissed for lack of district court jurisdiction.

## ARGUMENT

Defendants' opening brief explained why the Statute channels judicial review entirely away from federal district court, thus compelling dismissal of AALJ's complaint for lack of subject-matter jurisdiction. AALJ's opposition fails to show otherwise.

I.  **The Statute affords AALJ with meaningful judicial review in the context of an unfair labor practice proceeding, which is triggered by challenges to the lawfulness of a Panel decision and thus place AALJ directly within the administrative review scheme.**

As Defendants explained in their opening brief, the Panel decision at issue here is just one step in the collective bargaining process established by the Statute. Df.'s Mot. at 17. Though a Panel decision becomes final and binding on the parties during the term of their agreement, the parties may "agree otherwise." 5 U.S.C. § 7119(c)(5)(C). Additionally, the Panel decision is subject to review if the parties disagree as to its lawfulness. The statutory mechanism for adjudicating such challenges is

through the "two-track" system for resolving unfair labor practice disputes, sending all such claims to the (1) General Counsel for prosecution before the Authority or (2) an arbitrator whose decision is subject to Authority review.  Df.'s Mot. at 6-9; *Overseas Educ. Ass'n v. Fed. Labor Relations Auth.*, 824 F.2d 61, 62 (D.C. Cir. 1987).  Either way, the proceedings culminate in a final order by the Authority that is subject to judicial review before a court of appeals.  5 U.S.C. § 7123(a).

AALJ seeks this Court's intervention in its ongoing collective bargaining dispute with SSA by homing in on one piece of the negotiations—the Panel proceedings—and attempting to redefine the Panel's decision as the culmination of the entire bargaining process.  As Defendants explained in their Motion to Dismiss, Df.'s Mot. at 16-17, Panel proceedings are simply one (potential) step toward a finalized CBA.  They may put an end to a negotiation impasse over the specific provisions presented to it, but they do not result in a finalized CBA.  Rather, Panel decisions (when issued) are simply a component of the CBA ultimately agreed to by the parties, and parties often "renegotiate all or parts of the provisions ordered" by the Panel before finalizing the CBA.  *Dep't of the Air Force Air Force Materiel Command*, FLRA ALJ Dec. Rep. No. 137 (Oct. 22, 1998).

Accordingly, under the Statute's comprehensive negotiation and review scheme, any disputes over the lawfulness of a Panel decision or its implementation into a finalized CBA are to be resolved by the Authority in the context of an unfair labor practice dispute.  5 U.S.C. § 7116.  That's because the Panel has no independent authority to enforce its own decisions.  Procedures of the Panel, 48 Fed Reg. at 19,693 (May 2, 1983) ("[T]he Panel lacks enforcement authority over its decisions[.]").  Instead, only the Authority is empowered to enforce panel decisions through an order issued at the end of an unfair labor practice proceeding.  *See id.*

Here, any CBA between SSA and AALJ incorporating Panel provisions—in whole or in part, modified or unmodified—remains yet to be finalized.  AALJ has rejected SSA's requests for ratification of other previously agreed-upon CBA articles not part of the Panel's decision, contending

that the Panel-ordered provisions are themselves unlawful.  *See* Ex. A, ECF No. 22-1.  Instead of following the unfair labor practice process to resolve AALJ's allegations regarding the lawfulness of the Panel decision, AALJ initiated this lawsuit essentially asking this Court to intervene.  *See id.* Although AALJ insists this lawsuit is entirely unconnected to the parties' underlying dispute over the merits of the Panel decision, its Complaint and Motion for Preliminary Injunction indicate otherwise. In this Court, AALJ has consistently complained that the "*ultra vires*" and "extreme restrictions" set forth in the Panel order would "effectively shut down" AALJ's operations.  Pl.'s Mot. at 3, ECF No. 8.  The substance of the Panel's restrictions, according to AALJ's President, would "eviscerate [AALJ's] ability to perform representational duties *required by law*, deny [its] members *their rights to receive representation by the Association*, [and] force [AALJ] to hire a single outside business manager" because of the Panel's restrictions on official time.  *Id.* (quoting Declaration of Melissa McIntosh ¶ 1, ECF No. 5-14).

AALJ has a means of vindicating the rights it claims the Panel decision eviscerates.  If SSA implements Panel terms into the CBA that AALJ believes "interfere with . . . the exercise" of its employees' "right[s] under [the Statute]," 5 U.S.C. § 7116(a)(1), then AALJ may challenge the implementation by bringing that claim to the Authority in an unfair labor practice proceeding.  Indeed, that's exactly what the D.C. Circuit contemplated in *AFGE v. Trump*, 929 F.3d 748, 7555-61 (D.C. Cir. 2019), in finding the unions' claims that the "executive orders and their various provisions violate particular requirements of the Statute"—including "the right to bargain collectively as guaranteed by the Statute"—and the Constitution must be litigated in the context of concrete bargaining disputes, including the unfair labor practice proceeding.

In fact, AALJ's President previously acknowledged that it could vindicate any rights violated by the implementation of the Panel decision through an unfair labor practice proceeding.  *See Administrative Law Judge Association Says Effort to Force Partial contract is 'Union Busting'*, GOV'T EXEC.,

https://www.govexec.com/management/2020/04/administrative-law-judge-association-says-effort-force-partial-contract-union-busting/164434/ ("Within the context of federal sector labor law, your options are this: an unfair labor practice complaint, and there's a grievance.").  The core of AALJ's complaint is not that the unfair labor practice procedures under the Statute are unavailable.  It's that they will take too long.  *See id.* ("If we filed a grievance, it could take over a year, and if we file an unfair labor practice [allegation], it will sit indefinitely, because there is no [FLRA] general counsel."); *see also* Df.'s Mot. at 26 (complaining of the time it could take to follow the unfair labor practice proceeding).

Were AALJ to follow the unfair labor practice option before it, AALJ could raise any of the above challenges to the lawfulness of the Panel decision, or SSA's decision to implement it, while also pressing its Appointments Clause challenge to the Panel's authority.  The Authority could then rule on the Appointments Clause claim.  *SSA & AALJ*, 71 FLRA No. 123, ECF No. 5-11 ("[T]he Union's assertion of constitutional challenges to the Panel's jurisdiction . . . can be raised before the Authority through the . . . statutory [unfair labor practice] proceedings.").  And if it doesn't the court of appeals certainly could.

In its Motion to Dismiss, Defendants laid out the many options that AALJ has at its disposal for seeking administrative and judicial review of its objections to the lawfulness of the Panel decision, both as to its substance and as to the Panel's authority to act at all.   Df.'s Mot. at 20-22, ECF no. 22.  Although AALJ calls it "[r]emarkable" how many pages Defendants devote to discussing them, Pl.'s Opp. at 9, ECF No. 25, that just goes to show how varied those options are.  In its Response, AALJ unsuccessfully attempts to show that a few of those options are "inadequate and speculative," but it entirely ignores several more of them.  *Id.* at 9-10.  In the end, none of AALJ's attempts to poke holes in the statutory scheme demonstrate that it will be "invariably" cut off from judicial review, *Elgin v. Dep't of Treasury*, 567 U.S. 1, 20 (2012), or justify AALJ's failure to pursue the administrative process as this Circuit requires, *Steadman*, 918 F.2d at 965.

At the outset, AALJ says that the decision whether to file an unfair labor practice charge lies exclusively in the hands of SSA and "if it chose not to" file a charge, "the union would have no recourse." Pl.'s Opp. at 12. As just discussed, that assertion is untrue. The Statute provides a basis for AALJ itself to file an unfair labor practice charge. Df.'s Mot. at 20-22. Additionally, AALJ may pursue the same claims through arbitration. Df.'s Mot. at 8-9. It is of no relevance whether the arbitrator has any authority to rule on the constitutionality of the Panel's composition, as AALJ stresses. Rather, as *Jarkesy* instructs, "it is of no dispositive significance whether the agency has the authority to rule on constitutional claims so long as the claims can eventually reach an article III court fully competent to adjudicate them." *Jarkesy v. SEC*, 803 F.3d 9, 19 (D.C. Cir. 2015) (internal quotation marks omitted). Moreover, AALJ concedes that Authority decisions involving arbitration are reviewable if they involve statutory unfair labor practices. Pl.'s Opp. at 10. This route too thus provides AALJ with access to an Article III court that may rule on its constitutional claim.[1] And under the grievance process, the General Counsel plays no part, so AALJ cannot point to either the General Counsel's discretion or the absence of a Senate-confirmed General Counsel in support of its jurisdictional argument, as it has tried to do.

Finally—perhaps because there is no good response—AALJ completely ignores the most obvious, immediate, and straightforward route to judicial review that Defendants pointed out in their opening brief. AALJ may petition the court of appeals for review of the Authority's final order denying AALJ's request to stay the Panel decision here. Df.'s Mot. at 22; *see* ECF No. 5-11. In fact, because this route to judicial review is available right now, AALJ's decision to ignore it in its Response

---

[1] AALJ doesn't explain the basis for its contention that the Panel would need to be a party to the underlying CBA for the arbitrator to address the Panel's authority in issuing a decision. That view is counter to practice. *See, e.g., Dep't of Health and Human Servs.*, National Grievance before Arbitrator Robert A. Creo (Aug. 7, 2018) (finding that the agency's imposition of a ground-rules Panel decision on the union, after the agency head disapproved of the decision, was an unfair labor practice).

is all the more conspicuous.  Instead of fighting about jurisdiction before this Court, AALJ could be well on its way to litigating the merits of its Appointments Clause challenge before a court of appeals as we speak.

But whichever route to judicial review in a court of appeals might make the most sense to it as an objective matter, AALJ hinges its arguments for judicial review before this Court on just one aspect of one of those potential routes: the General Counsel's discretionary role in unfair labor practice proceedings before the Authority.  But AALJ offers no answer to the cases requiring exhaustion of the unfair labor practice proceedings notwithstanding the General Counsel's prosecutorial discretion. *See* Pl.'s Mot. at 32-36.  And AALJ points to no case holding that Congress's placement of a discretionary decision-maker within the statutory review scheme means, by default, that the scheme cuts off all access to meaningful judicial review, much less to a degree sufficient to bypass the jurisdictional channeling scheme set forth in *Thunder Basin*.

Indeed, as explained in Defendants' opening motion, *id.*, the speculative possibility that the General Counsel might, in the exercise of her discretion, cut off AALJ's path to judicial review has been consistently rejected as a basis for allowing claimants a path around a statutory review scheme, even when the claims asserted are constitutional in nature.  *See Steadman*, 918 F.2d at 965; *see also Weaver v. U.S. Info. Agency*, 87 F.3d 1429, 1433 (D.C. Cir. 1996) ("Although the CSRA gives the [Office of Special Counsel] discretion whether to seek corrective action, our circuit's law affords employees in Weaver's position a right to federal court review of their constitutional claims at the end of the line."). It may be that if AALJ's "constitutional claim survives an unsuccessful journey through the administrative process" that "the federal courts" may be "open."  *Steadman*, 918 F.2d at 968 (citing *Griffith v. Fed. Labor Relations Auth.*, 842 F.2d 487 (D.C. Cir. 1988)).  Until then, AALJ has no basis for taking a shortcut to district court.  That is precisely the lesson of *NATCA I* and *NATCA II*.  *See infra* Part II; *see also* Df.'s Mot. at 14.

Without much to say in response to all of this, AALJ digs in on its efforts to fit its claim within a *Free Enterprise* framework by advancing a novel reading of the *Thunder Basin* analysis in *Jarkesy* and *Free Enterprise*, which finds no support in either decision or in any of the "post-*Elgin* cases," Pl.'s Opp. at 10, discussed in Defendants' opening brief. AALJ essentially contends that the review scheme was adequate in *Jarkesy* because the petitioner there, who was subject to ongoing enforcement proceedings by the Securities and Exchange Commission, could appeal any resulting adverse order of the Commission directly to a court of appeals. Pl.'s Opp. at 10-11. AALJ asserts that here, by contrast, the scheme is inadequate because it "offers the Association no mechanism for *direct judicial review* of the Panel's order, either in this Court or in any court of appeals." Mot. at 11 (emphasis added). Because it cannot obtain direct review of the Panel decision, AALJ says, it is just like the petitioners in *Free Enterprise*, who would have been required to either manufacture a new dispute through a "Trojan Horse" challenge or "bet the farm" by violating a Board rule—at the risk of potentially existential sanctions—just to seek judicial review within the statutory scheme.

But that argument depends on a distorted reading of *Jarkesy*'s language that AALJ pulls out of context from the D.C. Circuit's discussion about whether the claim at issue in that case was "wholly collateral" to the statutory review scheme. 803 F.3d at 22-28. Key to the court's determination that the claims in *Jarkesy* were not "wholly collateral" was the fact that the petitioner's claims arose from the administrative actions taken against him and were "at bottom an attempt to reverse the agency's decisions." *Id.* at 23 (internal quotation marks and citation omitted). Finding that to be the case, *Jarkesy* held that the petitioner was required to follow the statutory review scheme. Absent from *Jarkesy*'s analysis is any consideration of whether the review scheme permitted a plaintiff to seek direct or indirect judicial review.

Nor was it any indirectness of the review procedures at issue in *Free Enterprise* that gave the petitioners there the ability to seek district court review. As Defendants explained in their opening

brief, Df.'s Mot. at 25-26, 29, the distinctive feature of the statute in *Free Enterprise* was that it omitted the petitioners from its review scheme entirely, leaving them without any avenue to challenge the Board action taken against them. *Free Enter.*, 561 U.S. at 490. The *Free Enterprise* petitioners, as *Jarkesy* put it, were "not *in* [the statute's] review scheme at all." *Jarkesy*, 803 F.3d at 23. That meant that their only route to Commission and then judicial review would have been to manufacture an entirely new and unrelated dispute—challenging a different Board rule at random or intentionally incurring a new Board sanction that was subject to Commission review—in order to place themselves within the statute's review provisions. *Id.* at 490.

The lesson to take from these cases is this. The central inquiry under *Thunder Basin* is not whether a statute provides a *direct* route to judicial review of any agency action—it's whether the statute provides *a* route to review that may end, if the claim travels that far, in an Article III court. If it does, then claimants must pursue the administrative remedies provided by the scheme. *Steadman*, 918 F.2d at 965. It matters not how winding the route may be, *Am. Fed'n of Gov't Employees v. Sec'y of Air Force*, 716 F.3d 633, 639 (D.C. Cir. 2013), or whether, in following it, the claimant may be forced to suffer through the "expense and annoyance" of protracted proceedings, *Jarkesy*, 803 F.3d at 26 (citation omitted), or receive a sanction at their culmination, *Thunder Basin*, 510 U.S. at 206-07.

This unremarkable proposition comes from *Thunder Basin* itself. In *Thunder Basin*, the plaintiff mine operators asserted statutory and constitutional challenges to a Mine Safety and Health Administration regulation requiring them to post information about their employees' representatives on site. *Id.* at 203-05. The Mine Act empowered the Secretary of Labor to issue citations for all violations of the Act, including a mining company's failure to post the required information, and the Secretary's decision to issue a citation could be challenged before the Federal Mine Safety and Health Review Commission. *Id.* at 204. The Commission, in turn, could impose any "civil penalties proposed by the Secretary," *id.* at 208, as well as other substantial sanctions, including criminal penalties, *id.* at

11

204 n.4.  The Mine Act provided for judicial review of any final Commission decision before a court of appeals following completion of the administrative review process.  *Id.* at 204.

Seeking to bypass that scheme, the mine operators in *Thunder Basin* filed suit in district court challenging the Mine Act's posting requirement after receiving a letter from the Secretary instructing them to comply with the Act, but before any enforcement proceedings had commenced before the Commission.  *Id.* at 204-05.  Much as AALJ argues here, the mine operators argued there that they should be excused from following the statutory review scheme, and permitted instead to bring their action in district court, because the scheme effectively forced them to choose between "violating the Act and incurring possible escalating daily penalties, or, on the other hand, complying with the designations and suffering irreparable harm."  *Id.* at 205 (internal footnote omitted).

The Court rejected the notion that those harms sufficed to place the mine operators outside the statutory review scheme.  *Id.* at 216-18.  Finding that Congress had intended the Mine Act's review scheme to be exclusive, the Court held that the mine operators could pursue their challenges to the posting requirement only after receiving a citation from the Secretary that was subsequently enforced against them by way of a final Commission order.  *Id.* at 207-08.  That was so even though the "civil penalties unquestionably may become onerous if petitioner chooses not to comply" with the Act, the Court emphasized, because such assessments would "become final and payable only after full review by both the Commission and the appropriate court of appeals."  *Id.* at 218.  Additionally, the Court concluded that the mine operators' assertions that complying with the Mine Act's requirements would cause irreparable harm were "entirely hypothetical on the record before [the Court]."  *Id.* at 217.

Consistent with *Thunder Basin*, courts have uniformly rejected any notion that the "expense and disruption of" following "protracted adjudicatory proceedings" provides justification for going around the statutory review scheme and commencing suit in district court.  *Jarkesy*, 803 F.3d at 26 (quoting *FTC v. Standard Oil Co. of Calif.*, 449 U.S. 232, 244 (1980)).  Any harms associated with such

proceedings, such decisions have held, may be "vindicated by a reversal of any" adverse agency action on judicial review. *Id.* at 27 (citation omitted).

This is true even in the "post-*Elgin* cases," Pl.'s Opp. at 10, cited in Defendants' opening brief. Take the Second Circuit's decision in *Tilton v. SEC*, for instance. 824 F.3d 276 (2d Cir. 2016). The plaintiff in *Tilton* was subject to an administrative enforcement action brought by the Security and Exchange Commission before an SEC Administrative Law Judge ("ALJ"). *Id.* at 278. As *Tilton* explained, the administrative proceedings were "subject to two layers of review: A party that loses before the ALJ may petition for *de novo* review by the Commission, and a party that loses before the Commission may petition for review by a federal court of appeals." *Id.* But the plaintiff in *Tilton* sought to challenge the appointment of the ALJ after receiving the ALJ's adverse ruling, arguing that the ALJ was an officer of the United States whose appointment was invalid under the Appointments Clause. *Id.* at 279. The plaintiff sought to do so by bringing a challenge to the ALJ's decision directly to district court rather than proceeding through the statutory scheme, which channeled the plaintiff's challenge to the Commission and then a court of appeals. *Id.*

There, as AALJ has done here, the plaintiff argued that he should be permitted to bring his challenge to the ALJ's appointment at an "intermediate stage[]," *id.* at 284 (citation omitted), because being forced to go through the second layer of the administrative proceedings by petitioning for review of the ALJ's order before the Commission would cause him to suffer "grave constitutional injury that could not be redressed after the fact," just like the petitioners in *Free Enterprise, id.* at 283.

*Tilton* rejected that argument as grounds for bypassing the administrative review scheme. The court recognized that "a litigant in this kind of case must expend financial and emotional resources to complete a proceeding that may ultimately prove constitutionally infirm." *Id.* at 285. And while "[s]ubsequent judicial review c[ould] not restore those resources," the court explained, "it c[ould]

13

vacate the resulting judgment and remand for a new proceeding.  That post-proceeding relief, although imperfect, suffices to vindicate the litigant's constitutional claim."  *Id.*

What was true for the litigants in *Thunder Basin* and *Tilton* is true for AALJ in this case.  AALJ argues that if it refuses to comply with the Panel decision and SSA files an unfair labor practice charge, it may "risk discipline and even termination of its leaders[,]" and its operations may be "effectively shut down." Pl.'s Opp. at 8-9.  But such hypothetical concerns, like those in *Thunder Basin*, fail to justify a short-cut around the statutory scheme.  Nor does the possibility that AALJ might incur a "separate sanction" by the Authority—that is, a finding that it committed an unfair labor practice— justify bringing its claim to district court.  Just like the sanctions incurred by the mine operators in *Thunder Basin* and the petitioner in *Tilton*—and indeed, the sanctions faced by virtually any litigant forced to follow a statutory review scheme—any unfair labor practice finding here (and attendant cease-and-desist order) may be reverse by a court of appeals on judicial review of the Authority's order.[2]  Finally, AALJ's complaints that the administrative proceedings here may be "protracted," Pl.'s Mot. at 26, is just "part of the social burden of living under government," *Jarkesy*, 803 F.3d at 26, and is likewise insufficient to excuse its efforts to get out from under the statutory scheme.

If that were not enough, the very "shortcomings" of the unfair labor practice procedure that AALJ complains of were considered and rejected by the D.C. Circuit in *Brewer* as a permissible basis for bypassing the Statute's review scheme.  *Brewer* "recognize[d] . . . the shortcomings of the unfair labor practices proceeding as the exclusive means for assuring judicial review of Panel orders," including the potential adverse consequences for a union of "defy[ing] an existing labor contract— even if the relevant contract term were imposed by a Panel order."  735 F.2d at 1502 n.9.  It

---

[2] Of course, if AALJ itself files an unfair labor practice charge against the agency for unilaterally implementing an allegedly unlawful contract, AALJ would not risk having to incur a sanction or any discipline of its members.  But again, having not pursued its administrative remedies, AALJ must rest on hypothetical speculations about how the administrative review process might play out.

nonetheless held that the unfair labor practice procedure, while perhaps less than ideal, affords litigants meaningful review of Panel decisions: "Perhaps Congress wished to pay this price in return for swift and final Panel authority.  In any event, our decision," that parties may not bypass the unfair labor practice process in seeking to overturn orders of the Panel, "adheres to the language and legislative history of the Act."  *Id.*

## II.    Binding precedent forecloses AALJ's attempt to create an extra-statutory exception for constitutional or declaratory judgment actions.

As Defendants explained in their opening brief, AALJ's contention that its Appointments Clause challenge to the Panel decision may proceed in district court, wholly bypassing the statutory review scheme created by Congress, runs contrary to over thirty years of D.C. Circuit precedent.  In *Brewer*, in particular, the D.C. Circuit carefully analyzed the text and legislative history of the Statute and concluded that the unfair labor practice procedure was "the exclusive means" for parties seeking to nullify or overturn Panel actions.  735 F.2d at 1499.  Indeed, the question was not close: "A clearer suggestion that Congress intended no appeal from Panel orders would be difficult to imagine." *Id.*  "In light of our examination of the statute and its legislative history, we agree with the district court that this specific review procedure, established by the statute, forecloses the assumption of general federal question or mandamus jurisdiction."  *Id.*

But AALJ reads *Brewer* narrowly as precluding only lawsuits that seek to "review of the merits of" a Panel decision, while leaving room for more artfully-pleaded claims like AALJ's that are styled as constitutional challenges to the Panel's "authority to act" rather than to a decision itself.  Pl.'s Opp. at 6.  That argument misreads *Brewer*.  The union there, it is true, claimed that the Panel's decision was arbitrary and not in accordance with law "since it include[d] no explanation for the actions taken by the Panel." *Brewer*, 735 U.S. at 1501.  But the union in *Brewer* brought another claim as well, which AALJ ignores.  It also claimed "that the Panel's order exceed[ed] its statutory authority" because the Panel "may not direct parties to agree to proposals or make concessions."  *Id.*   In other words, the

union's suit challenged "the Panel's authority" to take certain actions, just as AALJ says it seeks to do here. Pl.'s Opp. at 2. So *Brewer* made clear that whether the union attacked the substance of the Panel decision or the Panel's authority to act in the first instance, the union was required in either case to proceed the same way: through the statutory scheme, which "foreclose[d] the assumption of general federal question or mandamus jurisdiction." *Brewer*, 735 F.2d at 1500.

Then, just last year, the D.C. Circuit confirmed that similar types of broad constitutional and statutory challenges that do not involve the particulars of any administrative determination must follow the Statute's exclusive review scheme. *See AFGE v. Trump*, 929 F.3d 748 (D.C. Cir. 2019). In *AFGE v. Trump*, seventeen federal unions challenged a series of executive orders, asserting that "the President has no authority 'at all' to issue executive orders in the field of federal labor relations," and that the orders violated both the Constitution and the Statute. *Id.* at 753-54. Under AALJ's theory here, these are precisely the types of declaratory-relief claims that should be allowed to proceed through direct district court challenges—constitutional challenges to the President's authority to take certain actions that do not require reviewing the merits of any particular administrative action. Yet the D.C. Circuit rejected that proposition, holding that these broad-scope constitutional and statutory claims to authority of Executive Branch officials to take certain actions must also be channeled through the Statute's exclusive review scheme: "The unions must pursue their claims through the scheme established by the Statute, which provides for administrative review by the FLRA followed by judicial review in the courts of appeals." *AFGE v. Trump*, 929 F.3d at 754.

AALJ attempts to limit *AFGE v. Trump* to its facts, arguing that "*AFGE v. Trump* didn't involve the Federal Service Impasses Panel at all." Opp. Br. at 7. But the fact that AALJ's challenge involves a Panel decision while *AFGE v. Trump* involved challenges to executive orders amounts to a distinction without a difference. *AFGE v. Trump* held broadly that any challenges to policies set forth by the executive orders—including the President's authority to issue the orders in the first instance—

could not be brought directly in federal district court, but were instead required to follow the statutory review scheme.  So too here.  AALJ's challenge to any position adopted in the Panel decision—for example, limits on AALJ's aggregate use of official time for certain purposes[3]—or on the Panel's authority to issue its decision in the first instance cannot be asserted before a district court.  Instead, those challenges must proceed through the statutory scheme, with review channeled through the Authority and from there to a court of appeals.

With nothing left to go on, AALJ places almost exclusive reliance on "*NATCA II*".  Pl.'s Opp. at 3-7.  AALJ argues that, by allowing the suit in *NATCA II* to proceed in district court, the D.C. Circuit created a broad exception to the Statute's review scheme for declaratory judgment suits that are pleaded as challenges to "the Panel's authority as a general matter," as opposed to suits that are styled as challenges to "the merits of [a] specific order of the Panel."  Pl.'s Opp. at 3, 6.

Once again, AALJ's argument misreads *NATCA II* as establishing rules of *pleading*, not rules of *jurisdiction*.  In fact, despite AALJ's contrary assertions, Pl.'s Opp. at 3, the underlying claim in the D.C. Circuit decision that preceded *NATCA II*, *Nat'l Air Traffic Controllers Ass'n AFL-CIO v. FSIP*, 437 F.3d 1256 (D.C. Cir. 2006) ("*NATCA I*"), was the same as in *NATCA II*: both sought a declaratory judgment that the Panel had jurisdiction to resolve impasses between the Federal Aviation Authority ("FAA") and its labor unions, and an injunction to implement that declaratory judgment. *NATCA I*, 437 F.3d at 410; *NATCA II*, 606 F.3d at 785.  There was no difference between the claims presented; the lawsuits were substantially the same.

In *NATCA I*, of course, the D.C. Circuit held that the union could not pursue its challenge to the Panel's action in district court, but rather was required to proceed through the Statute's review scheme.  437 F.3d at 1264-65.  The different jurisdictional outcome derived from one primary

---

[3] Indeed, the Panel based its official time determination on one of the executive orders at issue in *AFGE v. Trump.  See* ECF No. 5-12 at 12-17.

distinction.  That is, in *NATCA I*, the union had not yet completed the administrative review process when it brought suit in district court.  *NATCA I*, 437 F.3d at 1265 ("In short, if the Unions' interpretation of the disputed statutory provisions is correct, then it is clear that they have viable unfair labor practice charges that can be raised with and addressed by the FLRA").  By contrast, in *NATCA II*, the administrative review process had been completed.  The union had filed an unfair labor practice complaint regarding the FAA's refusal to bargain.  *NATCA II*, 606 F.3d at 785.  After a Regional Director declined to issue a complaint, the union appealed to the General Counsel, who denied the union's appeal and subsequent motion for reconsideration.  *Id.*  Because the administrative process had been completed, the relief sought in *NATCA II* did not extend to any order that had been issued or could be issued by the Panel.  Indeed, in *NATCA II*, the Panel "did not reach, let alone answer, the question whether it has jurisdiction over impasses between the FAA and the Union."  *Id.* at 787.  Thus, "[n]othing the district court" could do would have affected any decision or order by the Panel. *Id.*

Here, by contrast, the opposite is true: AALJ's alleged injury arises not from the Panel's existence in the abstract, or from the manner in which Panel members are appointed, but rather from an order by the Panel rejecting its position on disputed collective-bargaining terms.  Along the same lines, the relief AALJ seeks is to nullify the Panel's unfavorable decision, even if the sole "vehicle" by which it seeks that relief—before this Court, at least—is its Appointments Clause challenge.  Compl. at 11 (asking the Court to "[d]eclare that any *decisions issued*," including—presumably—the decision issued here, "are null and void in violation of the U.S. Constitution" and to "[e]njoin the Panel . . . from issuing, giving effect to, or otherwise enforcing" its "decision[s] or order[s]."").  And AALJ has not completed the administrative process under the statutory scheme by pressing its claim before the Authority through an unfair labor practice dispute or an arbitration grievance.  Indeed, AALJ offers no answer why it should be excused from doing so.  Thus, by contrast to *NATCA II*,

any relief that AALJ might obtain through a merits decision in its favor from an Article III court that has jurisdiction over its claim under the Statute—not a federal district court—would encompass the vacatur or reversal of the Panel decision that prompted its challenge.

By the same token, AALJ's strategy for seeking district court review here under its reading of *NATCA II* appears to suggest improper claim-splitting. *See* Part III, *infra*. AALJ obviously believes that it has been injured by the Panel's decision and views it, at some level, as erroneous; otherwise it would not have brought this challenge. Yet in trying to thread its jurisdictional needle here, AALJ renounces any intent to challenge the merits of the Panel's decision. Pl.'s Opp. at 5-7. Elsewhere, AALJ has signaled that it intends—or at least reserves the right—to continue challenging the decision on its merits. *See* ECF No. 5-5. It cannot have it both ways, though. Either it must assert all of its claims against the Panel's decision or it must disclaim its intent to assert those that it does not assert now. And by its own announced reading of *NATCA II*, the only forum where AALJ can assert all of those claims is before the Authority, and from there (if necessary) to the court of appeals.

Additionally, another way to understand *NATCA II*'s holding, and an even greater difference between that case and this one, is based on the jurisprudential distinction between administrative action and administrative inaction, as underscored in *ACT 2002*. In *ACT 2002*, the court discussed a "rule giving federal courts authority to review agency decisions that erroneously disclaim jurisdiction to enforce the law." *ACT 2002*, 283 F.3d at 342-343 (internal quotation marks omitted) (*citing Montana Air Chapter No. 29 v. FLRA*, 898 F.2d 753 (1990), *International Longshoremen's Ass'n v. National Mediation Board*, 785 F.2d 1098, 1100 (D.C.Cir.1986), and *Adams v. Richardson*, 480 F.2d 1159, 1162 (D.C.Cir.1973)). According to that rule, "agency nonenforcement decisions, normally unreviewable, may be reviewed if they rest on the agency's erroneous belief that it lacks jurisdiction." *Id.* (internal citation omitted). In *ACT 2002*, the D.C. Circuit held that that rule did not apply where "the Authority neither disclaimed jurisdiction nor declined to enforce" the Statute but, "[o]n the

contrary . . . affirmatively exercised its statutory jurisdiction." 283 F.3d at 343.   In *NATCA II*, however, the Panel repeatedly declined to exercise jurisdiction over the parties' dispute based on the belief that the Panel lacked jurisdiction, under the Statute, to resolve the particular type of negotiation impasse the union had asked it to resolve.  *NATCA II*, 606 F.3d at 787.

The same distinction applies here.  The Panel did not disclaim jurisdiction over AALJ's bargaining dispute—it exercised its jurisdiction in a way that AALJ says is unconstitutional.  Such disputes must be channeled through the unfair labor practice procedure.  *Cf. Schwarz Partners Packaging, LLC v. NLRB*, 12 F. Supp. 3d 73, 87–88 (D.D.C. 2014) (holding, in case bringing Appointments Clause challenge, "it is well-settled . . . that the indirect method of review through defending against unfair labor practice claims is the sole method of review for NLRB certification decisions under the [National Labor Relations Act].").

In the end, AALJ's proposal that the Court carve out a jurisdictional rule for declaratory judgment actions challenging the Panel's authority has no support on which to lean.  Neither *Brewer* nor *NATCA II*, nor *AFGE v. Trump*—nor any other case falling within that more-than thirty-year span—sanction the particular exception that AALJ puts forth.  Rather, each case affirms that litigants must follow to completion the administrative remedies provided by the statutory scheme.

Those holdings are consistent with the large collection of cases dealing with similar statutory review schemes that channel jurisdiction away from district court.  *See, e.g., Am. Fed'n of Gov't Emps. v. Trump*, 929 F.3d at 758-59 ; *Jarkesy*, 803 F.3d at 19-20 (lawsuit charging that administrative proceeding violated  Fifth Amendment Due Process Clause and the Equal Protection Clause rights precluded by exclusive statutory review scheme); *Tilton*, 824 F.3d at 288-89 (claim that SEC administrative proceeding was unconstitutional because the presiding ALJ's appointment violated Appointments Clause was precluded by statutory review scheme); *Bennett v. SEC*, 844 F.3d 174, 182 (4th Cir. 2016) (suit seeking declaratory judgment that ALJ appointed in violation of Appointments Clause and Article

II of the Constitution precluded by statutory review scheme); *Bank of Louisiana v. Fed. Deposit Ins. Corp.*, 919 F.3d 916, 926-27 (5th Cir. 2019) (Equal Protection Clause challenge to FDIC's decision to initiate enforcement proceedings precluded by exclusive statutory review scheme); *Bebo v. SEC*, 799 F.3d 765, 769-75 (7th Cir. 2015) (Appointments Clause challenge to authority of ALJ to preside over enforcement hearing and facial attack Section 929P(a) the Dodd–Frank Wall Street Reform and Consumer Protection Act of 2010 precluded by statutory review scheme); *Hill v. SEC*, 825 F.3d 1236, 1243 (11th Cir. 2016) (Appointments Clause challenge to authority of ALJ to preside over enforcement hearing precluded by statutory review scheme).

In the face of this authority, AALJ offers no "strong countervailing rationale" that would justify "unsettl[ing] the presumption of administrative review" of its claim. *Jarkesy*, 803 F.3d at 17.[4]

**III.    Allowing AALJ's claim to proceed outside the statutory scheme would encourage claim-splitting and thus upset the careful remedial scheme that Congress established through the Statute.**

Finally, AALJ's jurisdictional theory, if accepted, would encourage "bifurcation of claims," *Steadman*, 918 F.2d at 965, allowing those based on the Statute to proceed before the Authority while those based on the Constitution—or at least the Authority's authority to act under the Constitution— to go straight to district court.  The result is that litigants bringing certain types of constitutional challenges would be able to "circumvent Congress' careful work in crafting the intricate remedial

---

[4] Finally, if AALJ genuinely means what it says about knowingly forfeiting any intent to challenge the merits of the Panel's decision, Pl.'s Opp. at 2, then its challenge would fall outside of this Court's jurisdiction for lack of Article III standing.  AALJ seems to suggest that it can challenge the Panel members' appointments "in the air," untethered to the actual decision the Panel issued here, Pl.'s Mot. at 11-12, (which AALJ has elsewhere characterized as having caused it injury, Compl. ¶¶ 36-40, ECF No. 1; Pl.'s Mot. at 9-13).  That is wrong.  If AALJ has a colorable injury traceable to the Panel decision, then it may be able to demonstrate standing to assert this sort of challenge in the proper forum under the Statute.  But then it could not credibly and consistently say that its challenge is truly independent of the Panel decision, as it believes it must under its reading of *NATCA II*, and it would be required under the Statute to channel its challenge through the Authority and from there to the court of appeals.

scheme of the [Statute]." *Id.* For that reason, this Circuit has consistently required claimants to "first seek relief from the [Authority]." *Id.*

Similar concerns animated the Supreme Court's decision in *Elgin* to decline to adopt a "jurisdictional rule based on the nature of" the claim alleged. 567 U.S. at 17. "[T]he possibility of parallel litigation regarding the same agency action before the [agency] and the district court," and the resultant "potential for inconsistent decisionmaking and duplicative judicial review" such a rule would encourage would undermine the very purpose behind Congress' creation of a comprehensive review scheme. *Id.* at 14.

Those same concerns counsel against accepting the jurisdictional rule AALJ urges the Court to adopt here. One need look no further than this very case to understand how such concerns may play out. In AALJ's objections to the Panel's assertion of jurisdiction it claimed not only that the Panel members were unconstitutionally appointed but also that the Panel was "not statutorily constituted,"[5] and that the "matter [wa]s not ripe for review because the parties [we]re not at an impasse because the Agency engaged in bad faith bargaining." ECF No. 5-5 at 24. Those are claims that may be asserted within the statutory unfair labor practice scheme. Should those proceedings commence while this suit proceeds in district court, then AALJ would be on track to obtain an Authority ruling addressing those claims, and any others it wishes to press in the administrative proceedings, which would then be subject to review in a court of appeals. In the meantime, this Court may resolve AALJ's Appointments Clause claim, which could likewise be reviewed by a court of appeals. This risk of parallel litigation undermines AALJ's request to carve out a new rule for constitutional claims going to the Panel's authority.

---

[5] The American Federation of Government Employees brings that very claim in its district court litigation currently pending before the Honorable Richard J. Leon. Am. Compl., ECF No. 14, AFGE v. FSIP et al., No. 1:19-cv-01934-RJL.

What is more, AALJ's distinction offers no guidance to litigants to "about the proper forum for the [party's] claims at the outset of the case." *Elgin*, 567 U.S. at 15. AALJ's theory requires identifying a distinct category of claims—AALJ terms them "declaratory relief" claims that involve "the Panel's authority" Pl.'s Opp. at 2—that may proceed separately in district court, outside the statutory review process. But that broad category of claims offers little clarity at the outset for litigants and courts alike.

Consider the challenge in *Brewer* to the Panel's ability to "compel either party to agree to a proposal or make a concession" in collective bargaining. 735 F.2d at 1501. Was that a challenge to "the Panel's authority"? Or must statutory, but not constitutional, challenges to "the Panel's authority" be channeled through the statutory review scheme? What types of constitutional claims count as challenges to "the Panel's authority"? After all, the Authority has on several occasions considered whether Panel orders comply with the Constitution in unfair labor practice proceedings. *See U.S. Dep't of Def. Educ. Activity, Arlington, Va.*, 56 FLRA 119, 120, 122 (2000) (sustaining agency's objection "that enforcing the Panel's Order would violate the Appropriations Clause, the doctrine of separation of powers and the doctrine of sovereign immunity contained in the United States Constitution."); *Nevada Nat'l Guard*, 7 FLRA 245, 259–61 (1981) (considering at length an agency's contention that a Panel order "which has the effect of overriding the military determination concerning technician attire" was consistent with Article I, Section 8, clauses 15 and 16 of the U.S. Constitution). Did these constitutional challenges implicate "the Panel's authority," or do they belong to some other, undefined species of constitutional claim?

In truth, there are no good answers to any of these questions. Just as in *Elgin*, "a jurisdictional rule based on the nature of [a] constitutional claim would deprive" the aggrieved party, the Panel, the Authority, and the district court of clear guidance about "the proper forum for" the claim "at the outset of the case." *Elgin*, 567 U.S. at 15. The better rule is that challenges to actions taken by the

Panel must proceed in the manner directed by Congress—through the Authority via the unfair labor practice procedure, and then to the appropriate court of appeals under 5 U.S.C. § 7123. *Brewer*, 735 F.2d at 1500. Just as in *Elgin*, the relief that the AALJ seeks—nullification of Panel orders—is the sort of relief the Authority frequently grants in reviewing Panel-imposed contractual terms in the unfair labor practice context. *See, e.g.*, *Dep't of Def. Domestic Dependent Elementary & Secondary Sch. Fort Buchanan, P.R.* 71 FLRA 127, 134 (2019) (Authority review of Panel-imposed contractual terms was triggered by agency's refusing to implement them, leading to an unfair labor practice charge and ultimately a decision from the Authority vacating the Panel-imposed terms.); *Patent Office Prof'l Ass'n v. FLRA*, 26 F.3d 1148, 1153 (D.C. Cir. 1994) (rejecting enforcement of contract provisions imposed by an interest arbitrator acting on delegated authority from the Panel, where the arbitrator, and, consequently, the Panel lacked jurisdiction to impose those provisions). Like any other litigant, AALJ must proceed through the statutory review scheme to obtain this type of relief.

## CONCLUSION

For the foregoing reasons, the Court should dismiss AALJ's claim for lack of jurisdiction.

Dated: May 14, 2020

Respectfully submitted,

*/s/ Noah Peters*
NOAH PETERS (#19472)
Solicitor

JOSEPH H. HUNT
Assistant Attorney General

REBECCA J. OSBORNE
Deputy Solicitor

CHRISTOPHER R. HALL
Assistant Branch Director

SARAH C. BLACKADAR
Attorney
Federal Labor Relations Authority
1400 K Street, NW
Washington, D.C. 20424
Phone: (202) 218-7908
Fax: (202) 343-1007
*Counsel for the Federal Service Impasses Panel and Mark Anthony Carter*

*/s/ Kyla M. Snow*
KYLA M. SNOW (Ohio Bar No. 96662)
Trial Attorney
U.S. Department of Justice, Civil Division
Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Email: kyla.snow@usdoj.gov
Phone: (202) 514-3259
Fax: (202) 616-8460
*Counsel for the Social Security Administration*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 14, 2020 a copy of the foregoing Reply Brief in Support of

Defendants' Motion to Dismiss was filed electronically via the Court's ECF system, which effects

service upon counsel of record.

_/s/ Kyla M. Snow_
KYLA M. SNOW (Ohio Bar No. 96662)
Trial Attorney, U.S. Department of Justice