UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ASSOCIATION OF ADMINISTRATIVE LAW JUDGES, <br><br> Plaintiff, <br><br> v. <br><br> FEDERAL SERVICE IMPASSES PANEL, *et al.*, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Civil Action No. 20-1026 (ABJ)

**MEMORANDUM OPINION**

In this lawsuit, plaintiff, the Association of Administrative Law Judges, challenges the constitutional legitimacy of the Federal Service Impasses Panel. *See* Complaint [Dkt. # 1] ("Compl.") ¶¶ 41–44. Defendants, the Federal Service Impasses Panel and its Chairman, Mark Carter, and intervenor-defendant, the Social Security Administration, have moved to dismiss the complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Defs.' Mot. to Dismiss [Dkt. # 22] ("Defs.' Mot."). Defendants argue that the judicial review procedures set out in the statute concerning labor relations with the government bar any review of plaintiff's claims by the district court. *Id.* at 6. Because the application of binding D.C. Circuit precedent requires the Court to agree that it lacks subject matter jurisdiction over this dispute, it will grant the motion to dismiss.

## BACKGROUND

**I.     Statutory Framework**

The Federal Service Labor-Management Relations Statute, 5 U.S.C. §§ 7101–35 ("the statute" or "FSLMRS"), enacted under Title VII of the Civil Service Reform Act of 1978, governs labor relations between federal government agencies and their employees. *See Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 929 F.3d 748, 752 (D.C. Cir. 2019) ("*AFGE*"), citing *Bureau of Alcohol, Tobacco & Firearms v. Fed. Labor Relations Auth.*, 464 U.S. 89, 91 (1983). The statute ensures the "right of employees to organize, bargain collectively, and participate [in] labor organizations of their own choosing." 5 U.S.C. § 7101(a)(1). To that end, the statute called for the creation of several entities and positions, including the Federal Labor Relations Authority, its General Counsel, and the Federal Service Impasses Panel. *Id.* §§ 7104, 7119.

The Federal Labor Relations Authority ("Authority" or "FLRA") is comprised of three members who provide "leadership . . . and guidance relating to matters" under the statute. 5 U.S.C. § 7105(a). They are appointed by the President, with the advice and consent of the Senate, for a term of five years.[1]  *Id.* § 7104(b), (c), (f)(1). Among other duties, the Authority is assigned to resolve "issues relating to the duty to bargain in good faith," "conduct hearings and resolve complaints of unfair labor practices," and "take such other actions as are necessary and appropriate to effectively administer the provisions of [the statute]." *Id.* § 7105(a)(2). The Authority is assisted in its duties by the General Counsel. *See id.* § 7004. Among his duties, the General Counsel is called upon to "investigate alleged unfair labor practices," "file and prosecute complaints," and exercise "other powers" prescribed by the Authority. *Id.* § 7104(f)(2).

---

1      Members of the Authority may only be removed "upon notice and hearing and only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 7104(b).

The Federal Service Impasses Panel ("Panel"), an entity within the Authority, includes a Chairman and at least six other members, who are appointed by the President.[2] 5 U.S.C. § 7119(c)(2). The Panel is intended "to provide assistance in resolving negotiation impasses between agencies and exclusive representatives." *Id.* § 7119(c)(1). Upon the presentation of an impasse, the Panel shall "recommend . . . procedures for the resolution of the impasse" or "assist . . . through whatever methods and procedures" in resolving the impasse. *Id.* § 7119(c)(5)(A). If the parties do not arrive at a settlement after the Panel provides assistance, the Panel may take action to resolve the impasse, including holding hearings, taking testimony under oath, and imposing contract terms on the parties. *See id.* § 7119(c)(5)(B); *Nat'l Fed'n of Fed. Emps. v. FLRA*, 789 F.2d 944, 945 (D.C. Cir. 1986). The statute provides that unless the parties agree otherwise, the Panel's final decision is binding. 5 U.S.C. § 7119(c)(5)(C).

The D.C. Circuit has explained that, therefore, a Panel decision is ordinarily "final and nonreviewable." *Council of Prison Locals v. Brewer*, 735 F.2d 1497, 1499 (D.C. Cir. 1984). But a Panel decision may be reviewed by the Authority if there is an allegation of an unfair labor practice.[3] *See* 5 U.S.C. § 7118(a)(7). If an unfair labor practice is alleged, the Authority, assisted by the General Counsel, may issue an order reviewing a Panel decision in the context of an unfair labor practice proceeding. *Id.* Once the Authority has issued an order resolving that proceeding,

---

2   The Chairman and members are to be appointed by the President "solely on the basis of fitness to perform the duties and functions involved, from among individuals who are familiar with Government operations and knowledgeable in labor-management relations." 5 U.S.C. § 7119(c)(2).

3   Failure or refusal to cooperate with the Panel or refusal to comply with its decisions may constitute an unfair labor practice. *Id.* § 7116(a)(6), (8), (b)(6), (8).

the parties may seek review directly with the federal courts of appeals. *See id.* § 7123(a); *Brewer*, 735 F.2d at 1500.[4]

## II.    Factual Background

Plaintiff, the Association of Administrative Law Judges ("AALJ"), is the "national federal-sector labor union serving as the exclusive bargaining unit for approximately 1,200 federal administrative law judges who work at the Social Security Administration [("SSA")] throughout the United States." Compl. ¶ 28. Over the course of several months in 2019, the AALJ and the SSA negotiated the terms of a successor collective bargaining agreement. *Id.* ¶ 30. The parties agreed on numerous articles in the contract, but were unable to reach agreement on nine of them. *Id.* During the negotiations, the parties sought the assistance of the Federal Mediation and Conciliation Service, which then certified that the parties were at impasse on the remaining nine articles. *Id.*; Defs.' Mot. at 9.

In October 2019, the SSA requested that the Panel assert jurisdiction over the dispute. Compl. ¶ 31. Plaintiff objected to the Panel's jurisdiction, claiming that the Panel lacked authority to issue a decision because the members' appointment violated the Appointments Clause of the Constitution. *Id.*; *see* U.S. Const. art. II, § 2, cl. 2. Specifically, plaintiff complained that the Panel's members had been appointed without the required advice and consent of the Senate. Compl. at 1.

On January 9, 2020, the Panel notified the parties via email that it would assert jurisdiction over the impasse. Compl. ¶ 32. On January 10, 2020, plaintiff filed a motion with the Authority

---

4    Alternatively, a party may submit an unfair labor practice complaint to an arbitrator. *Id.* § 7121 (a). The arbitrator's decision is then subject to review by the Authority, and a determination by the Authority is then reviewable by the appropriate court of appeals. *Id.* § 7122(a).

to stay the proceedings before the Panel, pending resolution of its jurisdictional objections. *Id.* ¶ 33. Despite plaintiff's objections, on January 24, 2020, the Panel issued a letter to both parties officially asserting jurisdiction over eight of the nine issues at impasse and ordering the parties to attempt to resolve the ninth. *Id.* ¶ 34; Defs.' Mot. at 9. None of the Panel's communications addressed AALJ's jurisdictional objections. Compl. ¶ 34.

On January 30, 2020, the AALJ filed suit in the Fourth Circuit Court of Appeals asking the court to review the Panel's assertion of jurisdiction, and to stay the Panel's proceedings until the jurisdictional issue was resolved. *See* Defs.' Mot. at 9–10. The circuit court dismissed the petition and denied the request for a stay. *See id.*

On March 31, 2020, the Authority also denied the AALJ's request for a stay, concluding that because Panel orders are "not directly reviewable" by the Authority, a stay was not appropriate. Compl. ¶ 35; *see* 71 F.L.R.A. No. 123 (March 31, 2020). On April 15, 2020, the Panel issued its final decision on the impasse. Compl. ¶ 36. It rejected all of the plaintiff's jurisdictional objections and adopted the SSA's proposals "on the majority of the key disputed terms." *Id.* ¶¶ 38–37.

### III. Procedural Background

On April 20, 2020, five days after the Panel ruled on the impasse, the AALJ filed a complaint in this Court asserting jurisdictional and constitutional challenges to the Panel's authority. *See* Compl. at 1. On April 24, 2020, plaintiff filed a motion for a preliminary injunction, Mot. for Prelim. Inj. [Dkt. # 5] (Corrected) [Dkt. # 8], which the Court consolidated with the merits pursuant to Federal Rule of Civil Procedure 65(a)(2). *See* Minute Order (Apr. 28, 2020).

On May 4, 2020, the Social Security Administration filed an unopposed motion to intervene as a defendant [Dkt. # 18], which was granted. Minute Order (May 5, 2020).

On May 6, 2020, defendants filed a motion to dismiss for lack of subject matter jurisdiction. *See* Defs.' Mot. at 1. Plaintiff opposed the motion, Pl.'s Opp. to Mot. to Dismiss [Dkt. # 25] ("Pl.'s Opp."), defendants replied, Defs.' Reply to Pl.'s Opp. [Dkt. # 30], and this motion is ripe for decision.[5]

## STANDARD OF REVIEW

In evaluating a motion to dismiss under either Rule 12(b)(1) or Rule 12(b)(6), the Court must "treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citation omitted), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011), quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005) (applying principle to a Rule 12(b)(1) motion). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (rule 12(b)(6) case); *Food and Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) (rule 12(b)(1) case).

Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002). Federal courts are courts of limited

---

5  The Court deemed the motion for preliminary injunction to be plaintiff's motion for summary judgment, Minute Order (Apr. 28, 2020), which the parties also briefed. *See* Defs.' Opp. and Cross-Mot. for Summ. J. [Dkt. ## 23 and 24]; Intervenor-Def.'s Mot. for Summ. J. [Dkt. # 26]; Pl.'s Reply and Cross-Opp. to Def.'s Mot. for Summ. J. [Dkt. # 31]; Def.'s and Intervenor-Def.'s Reply [Dkt. # 32].

jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

When considering a motion to dismiss for lack of jurisdiction, unlike when deciding a motion to dismiss under Rule 12(b)(6), the court "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

## ANALYSIS

The Federal Service Labor-Management Relations Statute makes Panel decisions "binding on [the] parties . . . unless [they] agree otherwise." 5 U.S.C. § 7119(c)(5)(C). Although the statute provides for judicial review of decisions by the Authority, *id.* § 7123, there is no provision for judicial review of Panel decisions. *See id.; Antilles Consol. Educ. Ass'n v. FLRA*, 977 F.3d 10, 14 (D.C. Cir. 2020) (holding that Panel orders "are not directly reviewable in court"). Further, the statute "forecloses the assumption of general federal question or mandamus jurisdiction" for the purpose of reviewing Panel decisions. *Brewer*, 735 F.2d at 1499. A dissatisfied party may "obtain

judicial review by violating a Panel order and then seeking review of any ensuing [Authority] order finding an unfair labor practice." *Antilles Consol. Educ. Ass'n*, 977 F.3d at 14, citing 5 U.S.C. § 7123(a); *Brewer*, 735 F.2d at 1500.

Defendant asserts that given these provisions, a district court does not have jurisdiction over this case. It moves to dismiss for lack of subject matter jurisdiction because in its view, the complaint seeks review of a Panel decision, albeit indirectly, outside of the exclusive statutory scheme. Defs.' Mot. at 1–2. Plaintiff submits that the statute's provisions do not apply because it is not seeking review of a specific Panel decision; rather, it is contesting the Panel's overall authority under the Constitution, raising "a single Appointments Clause challenge and seek[ing] no judicial review of any Panel order." Pl.'s Opp. at 2. It argues that the Court has jurisdiction under *National Air Traffic Controllers Ass'n v. Federal Service Impasses Panel ("NATCA II")*, in which the D.C. Circuit held that district courts have jurisdiction over claims challenging the Panel's authority, so long as they do "not entail reviewing a decision of the Panel." 606 F.3d 780, 787 (D.C. Cir. 2010); Pl.'s Opp. at 3.

Defendants insist that plaintiff is required to present its claim to the agency first and then appeal the agency's decision to the Circuit, notwithstanding the nature of the claim. They point to case law that suggests this principle applies even if what plaintiff is trying to do is challenge the agency's constitutional authority to render the decision in the first place – as opposed to the merits of the decision – and even if the agency tribunal would demur on the grounds that it lacked authority to rule on that issue, because plaintiff could then bring the matter to the Circuit. *See* Defs.' Mot. at 16, citing *AFGE v. Trump*, 929 F. 3d 748, 758 (D.C. Cir. 2019).

When a statute specifically provides for administrative and judicial review "it is ordinarily supposed that Congress intended that procedure to be the exclusive means of obtaining judicial

8

review." *City of Rochester v. Bond*, 603 F.2d 927, 931 (D.C. Cir. 1979).  To determine whether a statutory scheme is the exclusive means of obtaining judicial review, courts consider whether (i) congressional intent is "fairly discernible in the statutory scheme," and (ii) the claims are "of the type Congress intended to be reviewed within [the] statutory structure." *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207, 212 (1994).

Here, plaintiff does not dispute the obvious congressional intent to provide for exclusivity.  The statute "provides the exclusive procedures by which federal employees and their bargaining representatives may assert federal labor-management relations claims."  *Am. Fed'n Gov't Emps. v. Sec'y of the Air Force*, 716 F.3d 633, 636 (D.C. Cir. 2013) ("*Air Force*"); *see* 5 U.S.C. §§ 7116–19, 7121–22.  Thus, the first element of the *Thunder Basin* inquiry is satisfied.

The parties dispute how to apply the second principle identified in *Thunder Basin*:  whether plaintiff's claims are "of the type Congress intended to be reviewed within [the] statutory structure."  510 U.S. at 207, 212; *see also AFGE*, 929 F.3d at 755; *Jarkesy v. SEC*, 803 F.3d 9, 15 (D.C. Cir. 2015).  A statute does not preclude judicial review if "(1) a finding of preclusion might foreclose all meaningful judicial review; (2) the claim[s] [are] wholly collateral to the statutory review provisions; and (3) the claims are beyond the expertise of the agency."  *AFGE*, 929 F.2d at 755, citing *Arch Coal, Inc. v. Acosta*, 888 F.3d 493, 500 (D.C. Cir. 2018).  These factors are not "three distinct inputs [of] a strict mathematical formula," but they serve as "general guideposts useful for channeling the inquiry."  *Jarkesy*, 803 F.3d at 17.

While the Court might have been inclined to conclude that the fundamental constitutional claim at issue here was not what Congress had in mind when it established review procedures for the resolution of individual labor disputes, there is Circuit authority that governs that determination

9

and compels a finding that plaintiff's claims are "of the type Congress intended to be reviewed" within the statutory structure for purposes of the *Thunder Basin* analysis.  510 U.S. at 212.

*AFGE v. Trump* was a case brought by a federal employee union in 2019 challenging three executive orders affecting federal collective bargaining negotiations.  929 F.3d at 753.  The district court held that it had subject matter jurisdiction over the matter, rejecting the argument that jurisdiction belonged exclusively to the Authority and then the Court of Appeals.  *Id.* at 754.  It then decided the case on the merits, holding that nine provisions of the challenged executive orders violated the statute, enjoining the executive branch from implementing them.  *Id.*  On appeal, the D.C. Circuit reversed.  *Id.* at 761.

Analyzing each of the *Arch Coal* factors, the D.C. Circuit first held that "meaningful judicial review" was available "even though AFGE and its local unions could not obtain immediate review of their 'pre-implementation' claims" before the Authority or obtain their preferred form of relief.  *Id.* at 756, citing *Air Force*, 716 F.3d 637–38 (explaining that an aggrieved union may raise a claim with the Authority as a negotiability dispute under 5 U.S.C. § 7117(c), a grievance proceeding under 5 U.S.C. § 7121, or a unfair labor practice claim under 5 U.S.C. §§ 7116(a), 7118(c), which can then be appealed to the appropriate circuit court).  Accordingly, the Court found the unions could obtain judicial review "by litigating their claims through the statutory scheme in the context of concrete bargaining disputes."  *Id.* at 757.  The Court went on:

> [W]e need not map the precise contours of the FLRA's authority to adjudicate the claims in this case.  For even if the FLRA could not address the claims, circuit courts could do so on appeal from the FLRA.  The statutory scheme provides that the courts of appeals "shall have jurisdiction of the [FLRA] proceeding and of the question determined therein" and "may make and enter a decree affirming and enforcing, modifying and enforcing as so modified, or setting aside in whole or in part the order of the [FLRA]." 5 U.S.C. § 7123(a), (c).  Also, the courts of appeals generally may not

> consider objections that were not at least "urged" before the FLRA. *Id.* § 7123(c).

*Id.* at 758.  The Court specifically noted that it is not unusual for an appellate court reviewing an agency decision to consider a constitutional challenge to a federal statute that the agency found it lacked authority to decide. *Id.*, citing *Elgin v. Dep't of Treasury*, 567 U.S. 1, 18 n.8 (2012); *see also Jarkesy*, 803 F.3d at 19 (holding that because plaintiff's constitutional claims can eventually reach an Article III Court, "it is of no dispositive significance whether the [agency] has the authority to rule on them in the first instance during the agency proceedings").

The *AFGE* opinion also makes it clear that a union must start at the administrative level even if it is seeking a form of review or relief that is unavailable under the statute. *AFGE*, 929 F.3d at 756–57, citing *Air Force*, 716 F.3d at 639 (district court lacked jurisdiction even though the union sought to challenge a particular regulation on a "nationwide" basis under the APA rather than "on a concrete 'local-by-local' basis" through the Authority).  The Circuit emphasized that in the *Air Force* case, "[t]he statutory scheme provided no way to assert such a 'nationwide' attack, but that did not mean [the plaintiff] could resort to the courts." *Id.*, citing *Air Force*, 716 F.3d at 638.

As for the second consideration, the Court found that "for many of the same reasons," the plaintiffs' claims were not "wholly collateral" to the statutory scheme. *AFGE*, 929 F.3d at 759.  While the second *Arch Coal* factor seems to ask a different question, the Circuit observed that the factor is "related" to whether "meaningful judicial review" is available; according to the *AFGE* opinion, the two are sometimes analyzed together, and this consideration is examined by asking whether a plaintiff seeks the same relief it could seek in the agency proceeding. *Id.* at 759–60, citing *Jarkesy*, 803 F.3d at 22–23 and *Elgin*, 567 U.S. at 22.  After that discussion, the Court

concluded that the claims about the challenged executive orders were not "wholly collateral" because they were the type of claim "regularly adjudicated" in the statutory scheme. *Id.* at 760.

Finally, it found that the claims fell within the expertise of the agency because "[m]any of the claims" allege that the executive orders directed agencies to refuse to bargain over mandatory subjects or take actions inconsistent with the duty to bargain in good faith, in violation of the statute. *Id.* The Court held these were the type of matters the Authority determined in the "ordinary course of business." *Id.*, citing *Jarkesy*, 803 F.3d at 28.

Applying the precedent set by the Court of Appeals in *AFGE,* the Court concludes that plaintiff's claims fall within the statutory scheme and that it lacks subject matter jurisdiction. Another court in this district has recently come to the same conclusion. *See Nat'l Veterans Affairs Council v. Fed. Svc. Impasses Panel*, 1:20-cv-00837-CJN (D.D.C. Feb. 10, 2021).

I.      **Meaningful judicial review is not foreclosed.**

Plaintiff asserts that the Court has jurisdiction because the FSLMRS prevents parties from "meaningfully pursuing their constitutional claims." Pl.'s Opp. at 8, citing *Free Enterprise*, 561 U.S. at 490. This contention echoes the union's position in *AFGE,* where the employees' organization argued that because constitutional "systemwide" or "nationwide" challenges could not be brought and resolved through administrative review on a case-by-case basis, the statute did not provide for meaningful judicial review. *See* 929 F. 3d at 755–57. But the statute does provide for review of Panel decisions through the unfair labor practice procedures, and that process eventually leads to the Court of Appeals. *See* 5 U.S.C. § 7123(a). This means, according to the decision in *AFGE,* that meaningful judicial review *is* available, even if the statute makes it "impossible to obtain particular forms of review or relief." *AFGE*, 929 F.3d at 756–57 (emphasis omitted); *see id.* at 754 (unions "must pursue their claims through the scheme established by the

statute, which provides for administrative review by the [Authority] followed by judicial review in the courts of appeals").

Under the terms of the statute, plaintiff may obtain judicial review of its constitutional claim by violating the Panel's order, then seeking review of the Authority's ensuing order finding that it had engaged in an unfair labor practice. *Antilles Consol. Educ. Ass'n*, 977 F.3d at 14. Plaintiff argues that being relegated to this procedure forecloses meaningful judicial review because it "forc[es] a person to 'incur a sanction,'" and "potentially risk 'severe punishment.'" Pl.'s Opp. at 8 (emphasis omitted), quoting *Free Enterprise*, 561 U.S. at 490–91. In *Free Enterprise*, though, the plaintiff would have had to risk being convicted of a federal crime punishable by up to twenty years of imprisonment or a $25 million fine before he could seek judicial review, 561 U.S. at 485–86, so the situations are not analogous. The Court agrees that the unfair labor practice procedure is time consuming and ill-suited to resolving the discrete constitutional claim raised, but jumping through those hoops will not place plaintiff in jeopardy of punitive sanctions. *See F.E. Warren Air Force Base Cheyenne, WY*, 52 F.L.R.A. 149, 160-61 (1996) (stating that remedies for unfair labor practices must be non-punitive, and that "traditional" remedies include "a cease-and-desist order accompanied by the posting of a notice to employees").

Plaintiff also argues that the procedure cannot be found to offer meaningful review because if it were to defy the Panel in order to trigger an unfair labor practice allegation, it would be the agency's General Counsel who would have to decide to bring a complaint, and the General Counsel might, in his discretion, decline to do so. Pl.'s Opp. at 8. But this argument is speculative, and the statute provides an alternative avenue for plaintiff to obtain review in any event. It may submit an unfair labor practice action to an arbitrator, whose decision is reviewable by the Authority, and then by a court of appeals. *See* 5 U.S.C. §§ 7122(a), 7123(a). Accordingly, while judicial review

may be delayed, it is not foreclosed. *See Nat'l Veterans Affairs Council*, 1:20-cv-00837-CJN; *Air Force*, 716 F.3d at 638 ("[I]t is the comprehensiveness of the statutory scheme involved, not the adequacy of specific remedies thereunder, that counsels judicial abstention.").[6] Thus, meaningful judicial review of the claim is not foreclosed. *AFGE*, 929 F.3d at 755; *see also id.* at 756–57 (a broad constitutional attack on the Panel may not be used to "circumvent the scheme established by the Statute").

## II. Plaintiff's claims are not wholly collateral.

The *AFGE* decision also requires the Court to find that plaintiff's claims are not "wholly collateral" to the statutory scheme. *AFGE*, 929 F.3d at 755. Courts consider whether claims are "wholly collateral" by determining whether a party's claims are "aimed to obtain the same relief [it] could seek in the agency proceeding." *Jarkesy*, 803 F.3d at 23, citing *Elgin*, 567 U.S. at 22; *see also NATCA II*, 603 F.3d at 787. Specifically, courts consider whether a complaint "identifies," or a court's decision would "reverse," a specific decision of the Panel. *See NATCA II*, 603 F.3d at 787. If the complaint identifies, and the Court's decision would impact, a specific Panel decision, the claims are not wholly collateral, and "[t]here can be no doubt . . . [this] [C]ourt lacks jurisdiction." *Id.* If the complaint "identifies no specific decision of the [Panel]," the challenge may be subject to review in a district court. *Id.*

Plaintiff relies on *NATCA II*, a case that preceded *AFGE*, for the proposition that claims not seeking review of a Panel decision are wholly collateral and subject to a district court's jurisdiction. Pl.'s Opp. at 3, citing 606 F.3d at 787 ("In [*NATCA II*], the D.C. Circuit held that

---

6     Plaintiff also argues that the General Counsel position is currently unfilled, Pl.'s Opp. at 8, but that is a temporary circumstance and not a statutory impediment to review.

district courts may properly exercise jurisdiction over actions against the Impasses Panel, like this one, that do 'not entail reviewing a decision of the Panel.'"). However, *NATCA II* is distinguishable from this case for two reasons. First, and importantly, *NATCA II*, involved a challenge to "ongoing policy" of the Panel, and the specific impasse in question "was resolved" prior to seeking review in the district court. 606 F.3d at 786, n.*. Second, the case did not involve any challenge, either directly or indirectly, to a specific Panel decision. *See id.* at 787. In fact, in *NATCA II*, there was no specific Panel decision referenced in the complaint. *Compare id.* at 786, *with* Compl. ¶¶ 36–40 (referencing the April 15, 2020 Panel decision affecting plaintiff, including specific details of the decision that are unfavorable to plaintiff).

Here, plaintiff asserts that its challenge involves a "lone constitutional claim" alleging Panel members were appointed in violation of the Appointments Clause. Pl.'s Opp. at 3. But the plaintiff devotes a significant portion of the complaint to discussing a specific, and unfavorable, Panel decision – the April 15, 2020 decision.[7] *See* Compl. ¶¶ 36–40. Furthermore, the complaint asks the Court to declare Panel decisions "null and void" and to "[e]njoin the Panel . . . from issuing, giving effect to, or otherwise enforcing a Panel decision." *Id.* at 11.[8]

---

7       Notably, this suit was filed five days after the Panel's decision. Compl. at 1.

8       For the same reasons, plaintiff's attempt to distinguish *Brewer*, 735 F.2d at 1498, and *Nat'l Air Traffic Controllers Ass'n v. Fed. Serv. Impasses Panel*, 437 F.3d 1256, 1262–63 (D.C. Cir. 2006) ("*NATCA I*"), fail. Those cases held that Congress precluded direct judicial review of Panel decisions, and plaintiff attempts to distinguish them on the grounds that they involved appeals of specific Panel decisions, while this one does not. *See* Pl.'s Opp. at 5–6. But plaintiff ultimately seeks the invalidation of the Panel's April 15, 2020 decision. *See* Compl. ¶¶ 36–40; *id.* at 11; Mot. for Prelim. Inj. (Corrected) [Dkt. # 8] at 1 (stating that plaintiff "urgently seeks an injunction to prevent implementation of extreme, draconian restrictions imposed on the Association on April 15 by the Federal Service Impasses Panel").

Given the relief the union is seeking, plaintiff's challenge can be fairly characterized as a "vehicle by which" plaintiff seeks invalidation of a Panel decision, rather than a "lone constitutional claim." *Jarkesy*, 803 F.3d at 23.  If the Court were to grant the relief plaintiff requests, it would reverse and invalidate the April 15, 2020 Panel decision in circumvention of the statutory scheme.  This means that under circuit precedent, the claims are not wholly collateral to the statutory review scheme for purposes of the second prong of *Thunder Basin*.  *Id.*, citing *Elgin*, 567 U.S. at 22; *see also* 5 U.S.C. §§ 7118, 7123(a); *NATCA II*, F.3d at 787.[9]

**III.   Agency expertise**

Finally, plaintiff asserts that its claims are "beyond the expertise" of the Authority.  Pl.'s Mot. at 12, n.4, cross-referencing Pl.'s Mot. for Prelim. Inj. (Corrected) [Dkt. # 8] at 27-31, citing *Arch Coal*, 888 F.3d at 500.  And there is no question that it is federal district courts, and not the Authority, that spend their days resolving constitutional claims.  But the Authority's expertise on constitutional issues "is not determinative." *Jarkesy*, 803 F.3d at 28–29, citing *Elgin*, 567 U.S. at 22–23.  "[S]o long as a court can eventually pass upon the [constitutional] challenge, limits on an agency's own ability to make definitive pronouncements . . . do not preclude requiring the challenge to go through the administrative route." *Id.* at 18, citing *Elgin*, 567 U.S. at 17–18.[10]

---

9   The Court of Appeals noted in *Jarkesy* that "[t]he result might be different if a constitutional challenge were filed in court before the initiation of any administrative proceeding (and the plaintiff could establish standing to bring the judicial action)." 803 F.3d at 23, citing *Free Enterprise*, 561 U.S. at 490, but that may provide little comfort given the rigors of the prerequisites for Article III standing.

10   The Court notes that the Authority has some experience considering constitutional claims. *See, e.g., U.S. Dep't of Def. Educ. Activity, Arlington, Va.*, 56 F.L.R.A. 119, 120, 122 (2000) (determining that a Panel order "would violate the Appropriations Clause, the doctrine of separation of powers and the doctrine of sovereign immunity contained in the United States Constitution").

In sum, then, the Court must find that plaintiff's claims are "of the type Congress intended to be reviewed within [the] statutory structure." *Thunder Basin Coal Co.*, 510 U.S. at 207, 212; *see also AFGE*, 929 F.3d at 755; *Jarkesy*, 803 F.3d at 15.  They "fall within the exclusive statutory scheme," and plaintiff "may not bypass [the statute] by filing suit in [this Court]." *AFGE*, 929 F.3d at 761.  Accordingly, the Court does not have jurisdiction over this matter.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss for lack of subject matter jurisdiction [Dkt. # 22] is GRANTED.  Further, plaintiff's motion for preliminary injunction/summary judgment [Dkt. # 5], defendants' cross-motion for summary judgment [Dkt. # 23], and intervenor-defendant's cross-motion for summary judgment [Dkt. # 26] are DENIED as moot.  A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  May 19, 2021